```
 1                          UNITED STATES DISTRICT COURT
                            EASTERN DISTRICT OF NEW YORK
 2

 3    ------------------------------------X
                                          :
 4    UNITED STATES OF AMERICA,           :
                                          :   18-CR-00204 (NGG)
 5                                        :
                    v.                    :
 6                                        :   225 Cadman Plaza East
      KEITH RANIERE,                      :   Brooklyn, New York
 7                                        :
                            Defendant.    :   September 13, 2018
 8    ------------------------------------X

 9
          TRANSCRIPT OF CRIMINAL CAUSE FOR SCHEDULING CONFERENCE
10                BEFORE THE HONORABLE VERA M. SCANLON
                     UNITED STATES MAGISTRATE JUDGE
11
      APPEARANCES:
12

13    For the Government:        MOIRA PENZA, ESQ.
                                 TANYA HAJJAR, ESQ.
14                               United States Attorneys Office
                                 Eastern District of New York
15                               271 Cadman Plaza East
                                 Brooklyn, New York 11201
16
      For the Defendant:         MARC AGNIFILO, ESQ.
17                               PAUL DEROHANNESIAN, ESQ.
                                 Brafman & Associates
18                               767 Third Avenue
                                 New York, New York 10017
19
      For Allison Mack:          WILLIAM F. MCGOVERN, ESQ.
20                               SEAN STEPHEN BUCKLEY, ESQ.
                                 Kore & Kim, LLP
21                               800 Third Avenue
                                 New York, New York 10022
22
      For Kathy Russell:         JUSTINE A. HARRIS, ESQ.
23                               AMANDA RAVICH, ESQ.
                                 Sher Tremonte, LLP
24                               90 Broad Street
                                 23rd Floor
25                               New York, New York 10004



      Proceedings recorded by electronic sound recording, transcript
      produced by transcription service.
```

```
                                                                        2

     APPEARANCES (Continued)

     For Lauren Salzman:       HECTOR DIAZ, ESQ.
                               Quarles & Brady, LLP
                               Two North Central Avenue
                               Phoenix, Arizona 85004

     For Nancy Salzman:        ROBERT SOLOWAY, ESQ.
                               Rothman Schneider Soloway &
                                 Stern, P.C.
                               100 Lafayette Street
                               Suite #501
                               New York, New York 10013

     For Clare Bronfman:       SUSAN R. NECHELES, ESQ.
                               KATHLEEN ELIZABETH CASSIDY, ESQ
                               Hafetz & Necheles, LLP
                               10 East 40th Street, 48th Floor
                               New York, New York 10016


     Court Transcriber:        RUTH ANN HAGER, C.E.T.**D-641
                               TypeWrite Word Processing Service
                               211 N. Milton Road
                               Saratoga Springs, New York 12866
```

3

1  (Proceedings began at 4:02 p.m.)
2            THE COURT:  Okay.  So you're sent here from Judge
3  Garaufis because you had another conference.  Does somebody
4  have the full name of the case?  For the Government, do you
5  have it?  Can you just read it for the record?
6            MR. AGNIFILO:  Good afternoon.
7            MS. PENZA:  I --
8            THE COURT:  Anybody?
9            MS. PENZA:  Yeah, sure.  It's -- I mean, I can do it
10 from memory.
11           MR. AGNIFILO:  I have a copy of the indictment if
12 that helps somebody.
13           MS. PENZA:  United --
14           THE COURT:  Sure.
15           MS. PENZA:  I'll go ahead and read it into the
16 record.
17           THE COURT:  If you have it, give it to the
18 Government.  Thanks.
19           MS. PENZA:  <u>United States v. Keith Raniere, Clare</u>
20 <u>Bronfman, Allison Mack, Kathy Russell, Lauren Salzman and</u>
21 <u>Nancy Salzman</u>.  And it's 18-CR-00204, before Judge Garaufis.
22           THE COURT:  Okay.  So I have -- I know some of you
23 but I haven't met you all.  Do your appearance for the record
24 and the client who you're representing and if your client is
25 here, and if your client is not here, are they waiving the

4

1  appearance.  And you -- it's easier I think if everybody sits.
2  There are a lot of people in the room.  It's a little hard to
3  see everybody, so --
4           MS. PENZA:  Fair enough, Your Honor.  Moira Kim
5  Penza and Tanya Hajjar for the United States.  Good afternoon.
6           THE COURT:  Good afternoon.
7           MR. AGNIFILO:  Good afternoon, Your Honor.  My name
8  is Marc Agnifilo, Paul Derohannesian.  We represent Keith
9  Raniere, who's incarcerated.  We explained to Mr. Raniere that
10 we're going to have procedures -- proceedings before the
11 mag -- Your Honor --
12          THE COURT:  Um-hum.
13          MR. AGNIFILO:  -- and he waived any proceedings
14 before Your Honor.
15          THE COURT:  Okay.
16          MR. MCGOVERN:  Phil McGovern.  I'm joined by my
17 colleague Sean Buckley and we're also joined in court today
18 with our client Allison Mack.
19          THE COURT:  Okay.
20          MS. HARRIS:  Good afternoon, Your Honor.  Justin
21 Harris.  I'm here with my colleague Amanda Ravich and we
22 represent Kathy Russell who's here today, Your Honor.
23          THE COURT:  Okay.
24          MR. DIAZ:  Good afternoon, Your Honor.  Hector Diaz.
25 I represent Lauren Salzman who's seated here at the back.

```
                                                                  5
 1              THE COURT:  Okay.
 2              MR. SOLOWAY:  Good afternoon, Your Honor.  Robert
 3   Soloway.  I represent Nancy Salzman.  She's excused today
 4   pursuant to an order of Judge Garaufis.  So she's not here;
 5   Nancy.
 6              THE COURT:  Okay.
 7              MS. NECHELES:  Good afternoon, Your Honor.  Susan
 8   Necheles and I'm here with my colleague Kate Cassidy and we
 9   represent Ms. Bronfman, who's here today.
10              THE COURT:  All right.  So I have really the only
11   introductory sense of all of your issues having read the case
12   law on the docket.  So this conference is a short conference
13   to just talk about the very, very immediate schedule.  I know
14   the project is to set a lot -- a somewhat longer schedule with
15   regard to discovery.  Can you -- let's hear very briefly from
16   the Government what your take-out was from your conference of
17   the district judge and then the defendant's counsel just about
18   the plan going forward.  I got the quick update from my law
19   clerk who was able to attend.  And then we'll talk about our
20   next appearance where we can block out more time and go
21   through the issues.
22              MS. PENZA:  Your Honor, so the -- when we appeared
23   before Judge Garaufis today the Government told Judge Garaufis
24   that we anticipated discovery would continue on a rolling
25   basis but that we would not be able to complete the discovery
```

6

that was in our possession until mid-December, which was our best estimate right now, understanding though that there are some -- there are privilege issues that we believe are going to -- that are something that we are going to need to prioritize and depending on privileged litigation and how much time is spent on that and what the disputes are. That could be one piece that changes that estimate as it stands. That's our best estimate right now.

And so my understanding is Judge Gara -- the defendants had wanted a discovery deadline, which the Government objects to in the abstract, and certainly they had proposed a November 1, 2018 deadline which we do not believe is any way feasible given the amount of evidence in this case. We're talking 10 to 12 terabytes of evidence.

Our further understanding is the Government has not agreed to meet-and-confer with the entire group of defendants based on a number of issues, including the fact that each defendant -- or not each defendant, but each defendant as to whom there are -- it has been property seized that they are asserting a personal interest in. They have not agreed to have that material turned over in full to the other defendants.

THE COURT: Right.

MS. PENZA: They've raised privacy issues and privilege issues which is their right, but that obviously

7

1  delays the schedule for us and it also creates difficulties in
2  having meets-and-confers.  We're not going to discuss with one
3  defendant things that another defendant has said or their
4  privacy interests and it doesn't make sense to do so.  Either
5  they're willing to waive them or not, so --
6             THE COURT:  Do you have an objection to meet-and-
7  conferring basically seriatim with each of the defendants and
8  their counsel?
9             MS. PENZA:  No, and we've already been willing to do
10 that and have made ourselves available for months in order to
11 do that.
12            THE COURT: All right.  Okay.  That's Government.
13 All right.  This is -- go ahead.  If you could just for the
14 record say your name.
15            MS. NECHELES:  Yes.  Susan Necheles for
16 Ms. Bronfman.  Your Honor, I think what the objection is, is
17 the Government seized materials and pursuant to the search
18 warrants -- and they seized materials from each of our
19 clients.  Pursuant to the search warrant they only have the
20 right to seize certain things.  So you take a computer, then
21 you require to search it and only seize the things that are
22 listed on the search warrant.
23            We won't have an objection with discussing this all
24 in front of anybody and I don't think anybody has an
25 objection.  We would like to know what the Government has

8

seized. So I don't understand the idea that it all has to be discussed separately. To be able to discuss the types of things, who did you seize materials from -- we're all going to get whatever was seized from anybody's search, you know, of the computer and that the Government was entitled to seize.

So the question is, who did you seize things from, what email accounts, what computers or other devices and what's the schedule for producing them. Have you done the search as you were required to do by the warrant and when will you be producing all of that to all of us because we're all entitled to that material. That is all Rule 16 material that's material to the defense. If the Government is going to be searching through it, we're all entitled to it.

So none of this -- we object to the Government seizing or taking from my client things that they have no right to seize. We're just saying, follow the search warrant; follow the law and produce to us and tell us a schedule for this. And that's all we've been asking for in the meet-and-confer. I will note that until today in court the Government never said to us that they would be willing to meet with us separately even though we have repeatedly asked for meetings. They've just refused to meet with us.

But in any case, I don't think it's so productive to go backwards and discuss that. What we are looking to do now is we would ask that for the next court appearance that the

9

1  Government come with a list of what is it that you have, an
2  indexing, what is it that you have that you will be producing
3  in discovery and when.
4         And these are just basically the guidelines.  We're
5  asking them to comply with the guidelines that have been set
6  forth by the Department of Justice and adopted by the judges
7  and the courts with saying, this is how you do production for
8  electronic devices.  That's all we're asking for and what
9  we've been asking for and so we ask that before the next court
10 appearance that the Government do that, that they provide some
11 sort of index and then let us do it and so we can talk about
12 what format will it be produced in, how quickly can we get it
13 done.  And I just feel like it would expedite everything.  We
14 could all work together in a timely manner that has been
15 suggested by the Department of Justice.
16         THE COURT:  What's the Government's issue?
17         MS. PENZA:  Your Honor, I want to be crystal clear.
18 The Government has never suggested that it has not begun
19 searches or that it has not been following through with the
20 proper execution of the warrant.
21         What -- Your Honor, what I think is important to
22 recognize here is that there are different -- different
23 defendants have different assertions.  I understand the
24 defendants may want to -- when they want to, they want to do
25 this all together, but then as soon as the Government comes up

10

1  with a plan that says, this is one way to take care of some of
2  the concerns you have about expediting discovery, then it's,
3  we don't want the other person to have the material.
4        So it's a -- there's a little bit of a Catch-22
5  here, Your Honor.  And so what I want to make crystal clear
6  that the Government understands its obligations and is
7  complying with them.  This is electronic discovery.  It takes
8  a long time.  We have a vendor engaged.  We have been working
9  diligently since these searches were executed to conduct
10 searches, continue the processing and then to enable it to be
11 produced in a way that the defendants themselves have asked
12 for it to be produced.  When we initially produced certain
13 material in a way that did not have metadata and was not Bates
14 stamped because that was the way we were able to do it in-
15 house, we received objections as to that.
16       So the Government cannot officially undergo two
17 simultaneous processes, doing it one way to get it out the
18 door plus trying to do it in a way with metadata and Bates
19 stamps.  We are now doing it the way that we believe is proper
20 and right and is the way that the defendants want it.
21       THE COURT:  Okay.  So why is there no I'll call it
22 high-level conversation with all counsel as defendant's
23 counsel had just spoke suggested.  So at least you can see at
24 whatever, 10,000 feet what you have in common and --
25       MS. PENZA:  They have that, Your Honor.

```
                                                                11
 1              THE COURT:   -- go from there.
 2              MS. PENZA:   Because it's all -- this is all
 3   nonsense --
 4              THE COURT:   They have that?
 5              MS. PENZA:   -- that they don't understand that, Your
 6   Honor.
 7              THE COURT:   Wait, wait.  Stop with the -- (a) don't
 8   interrupt.  You don't need to turn around and face her.  You
 9   can talk to me.  And let's just -- this is going to be a long
10   relationship here, so everybody be calm.
11              MS. PENZA:   Your Honor --
12              THE COURT:   Go ahead.
13              MS. PENZA:   I just want to make clear.  We -- the
14   Government listed out for defense counsel the items that we at
15   this point at this juncture of the case that we are willing to
16   disclose to counsel are in our possession.  We listed them
17   out.  There was broad categories for two residences or
18   properties that were searched.  We sent electronic --
19   electronic devices from those properties.  The search warrant
20   returns from those properties list out each device.  We also
21   provided pictures from the searches of the individual devices.
22   That is the material that we're talking about on a rolling
23   basis.  As we have produced discovery we have identified what
24   the devices are.
25              So there really is no mystery here.  We've said
```

```
                                                                 12
 1   exactly what the things are that we are talking about, so this
 2   idea of an index is just additional work for the Government
 3   that makes no sense.
 4              MS. NECHELES:  Your Honor, if I could --
 5              THE COURT:  There has never been an all-counsel
 6   meeting and no meet-and-confer?
 7              MS. PENZA:  No.
 8              THE COURT:  Okay.  Go ahead.
 9              MS. NECHELES:  So, Your Honor, I understand that
10   there were two residences searched and that's not really what
11   we're talking about.  There were also -- when the Government
12   spoke in court they said that there were 60 devices.  I
13   understood that to mean 60 devices and email accounts.  We
14   don't know what those are.  I know what some of them are and
15   they're not included in those residences.  I know at least
16   three other email accounts that had been seized where I don't
17   have any sense has a search been done, what will be the time
18   that -- that's all we're asking for.
19              I'm just -- I understand -- I'm not asking about
20   those two residences.  Yes, I understand those two residences
21   were searched.  I don't have a timetable for when the
22   Government expects to be producing those.  If we could have
23   these kind of discussions and have the kind of discussions
24   that are recommended by the Department of Justice that way
25   before they produce stuff we could be talking about what kind
```

```
 1   of format we needed to produce in, how could we do this
 2   efficiently.  We're just trying to get this done as quickly as
 3   possible.
 4           And we suggest that doing it in the way suggested
 5   by -- people have thought about this -- by the Department of
 6   Justice in the electronic surveil --
 7           THE COURT:  Okay.
 8           MS. NECHELES:  -- or product -- discovery
 9   production.
10           THE COURT:  All right.  What's the Government's
11   objection to starting with an all-counsel conversation and
12   then coming back to me with --
13           MS. PENZA:  Well, I can --
14           THE COURT:  Hang on.  A somewhat more agreed-upon
15   list of disputes?
16           MS. PENZA:  Well, I can tell you right now that
17   dispute is one that we are unwilling to engage and so right
18   now --
19           THE COURT:  What does that mean, you're "unwilling
20   to engage"?
21           MS. PENZA:  So what I'm telling you, Your Honor, is
22   that we have already disclosed those things that are products
23   of searches that we are willing to disclose.  We are not --
24   this is an ongoing investigation, Your Honor.  We've already
25   stated in front of Judge Garaufis that we expect there to be
```

14

1   additional charges.  These defendants have had disclosed to
2   them search warrant applications that are relevant to their
3   defendants and that at this point we are ready to disclose on
4   the devices that we intend to disclose from those -- from
5   that.
6           We are not in a place where we are willing to
7   disclose everything based on -- potentially based on charges
8   that have not been brought, for example.  And so the idea that
9   we for something that is not even relevant to Ms. Bronfman,
10  but she would have to know that it was a product of a search,
11  for example, so she thinks she knows about other email
12  accounts.
13          So, yes, the Government has provided in full certain
14  email accounts, email accounts to which none of the defendants
15  can assert a privacy interest.  And so we're -- there is
16  nothing further to do to that end.  So to the extent they want
17  the Government to go back and say, we executed a search on X
18  email account, that's inappropriate.  If the product of one of
19  the Government's searches is within Rule 16 or one of the
20  other Government's obligations we are producing that material
21  and we have identified what we are currently willing to do on
22  that front.
23          MR. AGNIFILO:  Your Honor, can I just --
24          THE COURT:  All right.  Defense counsel, yeah.
25          MR. AGNIFILO:  Marc Agnifilo for Keith Raniere.  I

1  have a proposal and the proposal -- we -- the defense lawyers
2  all want to meet together with the Government.  We think it
3  would be productive.  I've never known of a case in 28 years
4  where that hasn't been productive.
5          THE COURT:  Um-hum.
6          MR. AGNIFILO:  And so what my proposal is, as soon
7  as possible, including as soon as we leave Your Honor's
8  courtroom, I would suggest that all parties get together.
9  Whatever -- if there's some perception of an objection on the
10 part of a defense lawyer to that which has never been made in
11 terms of a meeting, I've never heard about it, but there is no
12 objection.  We want that.  That's what we need.
13         I mean, we are -- we -- it's an unusual case in the
14 sense that the defense wants a trial as soon as possible.  We
15 want a January 7th trial date.  We want to stick to that.  My
16 client is in jail.
17         THE COURT:  Right.
18         MR. AGNIFILO:  And they won't consent to his release
19 on any conditions.  So for the Government to now say, we don't
20 want to give you all the discovery; we just want to keep your
21 client in jail as long as we'd like to keep your client in
22 jail, doesn't really sound like really what should be
23 happening, yet it is happening.
24         So my proposal is really pretty straightforward.  I
25 think a lot of these problems can be solved and we don't have

16

1  to come to Your Honor with every little detail if we can sit
2  down together and figure out what the problems are.  And if
3  they want to make a protective order and they say, we have
4  this discovery, it's relevant to trial, it's not relevant to
5  trial but we want to protect it for X, Y and Z reason, they
6  have that ability and at least then we're dealing with
7  something that we know.  Right now we don't know what we need
8  to know and so we just need to have these meetings to clarify
9  things to go forward.
10              THE COURT:  All right.  Is counsel correct, there's
11 no defense objection --
12              MR. AGNIFILO:  No.
13              THE COURT:  -- to -- well, for everybody else, do
14 you all agree with that statement?
15              UNIDENTIFIED VOICE:  No objection.
16              THE COURT:  I think you should have the meet-and-
17 confer.  I don't think you even know what you disagree about.
18 So today is the 13th.  The possibilities would be tomorrow,
19 Monday, Tuesday, but I don't -- and I could see you Tuesday
20 afternoon, but that depends.  That's the -- for some that may
21 be the beginning of a holiday or I could see you Thursday
22 afternoon, so between --
23              MR. AGNIFILO:  We can do it tomorrow.  I mean, I
24 think all the defense lawyers can do it --
25              THE COURT:  Everybody?  How about the Government?

```
                                                              17
 1              MS. NECHELES:  They can't.  We can come right now.
 2              MR. AGNIFILO:  We can do it now.  We can do it right
 3  now.
 4              THE COURT:  I don't care when you -- I just want it
 5  to happen before I talk to you again.
 6              MR. AGNIFILO:  The only reason I'm proposing that is
 7  one of the defense lawyers is from Arizona and so he's here
 8  now, so it would be really very convenient.
 9              THE COURT:  Okay.  So we could come back 1:30 on
10  Monday.
11              UNIDENTIFIED VOICE:  I'm not available on Monday.
12              THE COURT:  Okay.  Do you have --
13              UNIDENTIFIED VOICE:  But it's -- and I don't have my
14  co-counsel for Nancy Salzman's schedule.  He may be.
15              THE COURT:  Okay.
16              UNIDENTIFIED VOICE:  But I know I am not.  Oh, no.
17  No, he's not even -- he's traveling with me on this case.  I
18  just realized why I'm not available, so we can't be here on
19  Monday for Nancy Salzman.
20              UNIDENTIFIED VOICE:  You said, Your Honor, free on
21  Tuesday?
22              THE COURT:  Okay.  I could do 12 -- probably 12:15
23  on, but I don't know -- I don't need to know anyone's personal
24  schedule.  I think that's the beginning of Yom Kippur.
25              MS. NECHELES:  Yom Kippur starts at like --
```

18

1    UNIDENTIFIED VOICE:  Sundown.
2    MS. NECHELES:  Sundown.  But it -- if we start at
3 12:00 and we're out of here by around 3:00 that should be --
4    THE COURT:  Does that work?
5    MS. NECHELES:  -- okay, Your Honor.  That would work
6 for me at least.
7    UNIDENTIFIED VOICE:  That's good for me, too, Judge.
8 Thanks.
9    UNIDENTIFIED VOICE:  Yeah, that's good.
10   THE COURT:  All right.  So can everybody be back
11 here 12:15 on Tuesday?
12   UNIDENTIFIED VOICE:  Yes, Judge.
13   THE COURT:  And we'll go to 3:00 if we need to.
14 Government?
15   MS. PENZA:  Yes, Your Honor.
16   MR. DIAZ:  Your Honor, I'm the lawyer from Arizona
17 and I was --
18   THE COURT:  You want to call in?
19   MR. DIAZ:  If the court would allow me to call in --
20   THE COURT:  That's fine. Okay.  All right.  So in
21 the order it will have chamber's number.  All right.  So you
22 need to meet-and-confer before then if you -- well, this is --
23 let me just see.  I don't know what's a big enough room for
24 you all to meet in.  It's not that big.  Okay.  Just hold on.
25   MR. AGNIFILO:  We mostly get along, so we can

19

```
 1  probably do it in a medium-sized room.
 2            THE COURT:  I'll just see of any of the other
 3  courtrooms are open and we'll just ask -- we'll ask one of the
 4  judges if we can borrow their courtrooms.  Just everybody sit
 5  tight.  All right.  Anything else to put on the record for
 6  today?  Okay.
 7            MS. PENZA:  Not for the Government.
 8            MR. AGNIFILO:  No, nothing from --
 9            THE COURT: Defense?  No.  All right.  So Tuesday at
10  12:15 back here and -- I'm sorry.  I don't have everybody's
11  name yet, so -- Arizona, your -- what's your name again?
12            MR. DIAZ:  Your Honor, it's Hector Diaz.
13            THE COURT:  Okay.
14            MR. DIAZ:  And that's for Lauren Salzman.
15            THE COURT:  Okay.  All right.  And your clients are
16  obviously welcome.  If you want to waive -- you know, in
17  consultation you want to waive their appearance it's okay.
18  All right.  I think we're done.  You're going to sit tight.
19  We'll try to find you a room to meet in and we're finished
20  with today's appearance.
21  (Proceedings concluded at 4:27 p.m.)
22                         *  *  *  *  *
23
24
25
```

```
                                                                    20

  1           I certify that the foregoing is a court transcript
  2   from an electronic sound recording of the proceedings in the
  3   above-entitled matter.
  4                        /s/ Ruth Ann Hager
  5                        _____
  6                        Ruth Ann Hager, C.E.T.**D-641
  7   Dated:  September 14, 2018
```