# Hafetz & Necheles llp

ATTORNEYS AT LAW

10 East 40th Street, 48th Floor
NEW YORK, N.Y. 10016
TELEPHONE: (212) 997-7400
TELECOPIER. (212) 997-7646

December 4, 2018

**VIA ECF**
Honorable Vera M. Scanlon
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

   Re: *United States v. Raniere, et al.*, 18-cr-204 (NGG)

Dear Judge Scanlon:

  We write on behalf of defendants Clare Bronfman, Keith Raniere, and Nancy Salzman, in response to the government's letter regarding privilege dated November 27, 2018 (ECF No. 206).

  I.  Background

  Defendants Bronfman, Raniere, and Nancy Salzman have each had materials seized by the government pursuant to search warrants over which they maintain an attorney-client privilege.[1] These materials are substantial – particularly with respect to defendant Bronfman.

- *Bronfman* – To date, over 16,000 emails have been segregated from the search warrant return as potentially privileged Bronfman materials contained within her email account. This number only includes the potentially privileged emails seized pursuant to a warrant executed on Bronfman's gmail account in March 2018.  As the government recently disclosed, within the last few weeks, a second search warrant was executed on her gmail account, covering a much longer time period than the first warrant.  Accordingly, we expect that the number of additional potentially privileged hits in that second search warrant return will be comparable to, if not more than, the 16,000 emails from the first

---

[1] While discussions to date have focused on the attorney-client privilege, to our knowledge, no party nor any attorney has waived work-product protection with respect to any of the documents that are the subject of this letter.  Defendants also assert work product protection to the extent it applies to the documents seized by the government pursuant to search warrants.

1

HAFETZ & NECHELES LLP

return.

- *Raniere* – Defendant Raniere has received notice from the government that they have identified approximately 300 items from his email account as potentially privileged. However, this too, represents only the potentially privileged items contained within the first search warrant return.  As an additional search warrant was recently executed on his email account, we anticipate production of additional potentially privileged items.

- *Nancy Salzman* – The government has not yet produced to Nancy Salzman's counsel any potentially privileged items from the devices seized from her home, indicating that the government has to date either not loaded or not searched these items (or both) for potentially privileged materials.  The government also recently obtained a new search warrant for the devices seized from Nancy Salzman's house.

For the past several months, counsel for these three defendants have been in communication with Assistant United States Attorney Shannon Jones, the privilege review attorney (henceforth "firewall team"), in order to facilitate the firewall team's segregation of potentially privileged materials and review of those materials.

To that end, defendants have provided the firewall team with whatever information has been requested, including providing detailed lists of attorneys and the scope and dates of their respective representations.  Most recently, and in accordance with this Court's November 6, 2018 Order, defendants Bronfman and Raniere provided detailed charts to the firewall team on November 9, 2018 addressing the firewall team's questions about the scope and subject matter of the various attorney representations. (A redacted version of those charts is being provided to the prosecution team under separate cover.)

As Your Honor outlined at the November 6 conference, "the firewall AUSA" was to review the defendants' updated materials after November 9 and meet and confer with defendants to work through any issues and attempt to identify disputes.  AUSA Moira Penza confirmed at the status conference that it was in fact her "firewall colleague who's going to be having these conversations . . . on the substantive matters."  (Transcript of Record 33-34, Nov. 6, 2018.)  Since the November 6 conference, AUSA Jones has made discrete inquiries of defense counsel by email, all of which were responded to in a timely manner.  The first time defendants became aware of the supposed discrepancies between the information provided by defendants and information provided by counsel for NXIVM[2] was when the government's letter was filed with

---

[2] Separately, the government has been engaged in discussions with counsel for NXIVM regarding documents responsive to a grand jury subpoena directed to NXIVM that have been withheld for privilege.  Pursuant to that separate process, counsel for NXIVM was asked to create a privilege log of documents that have been withheld.  There is no need for the firewall team's involvement in the privilege issues surrounding the subpoenaed documents, because the government does not possess the privileged documents in question and thus there is no possibility of the prosecution team being tainted by privileged information possessed by the government, as there is with the information seized from the defendants by the government pursuant to search warrants.

HAFETZ & NECHELES LLP

the Court on November 27.  The firewall team never identified any discrepancies to the defendants, and has not challenged any of the information provided by defense counsel on November 9.

      II.     The Parties' Differing Views of How to Proceed with the Privilege Review Process

Defendants have proposed to the government the following procedures for resolving any disagreements arising from the firewall team's review of the potentially privileged seized materials:

1. The firewall team will continue its review of the potentially privileged materials, addressing any questions about the scope of privilege asserted to the defense teams, who will promptly respond to the firewall team's inquiries;

2. The firewall team will identify any particular documents or categories of documents it believes are not privileged to defense counsel;

3. Defense counsel will respond to the firewall team's identification of particular documents or categories of documents by either (a) agreeing that the documents are not privileged and can be passed to the prosecution team for a responsiveness review, or (b) disagreeing and continuing to assert privilege;

4. The firewall team will move before Magistrate Judge Scanlon for an *in camera* review of any documents or categories of documents that are in dispute after step (3) as to which it determines to litigate privilege.

The government, on the other hand, proposes that the *prosecution team* will litigate "whether a privilege exists, the scope of the privilege and whether a privilege has been waived" and that the prosecution team will do so without reviewing the contents of the communications in question. (Government's Letter, ECF No. 206, at 2).

Defendants' proposed procedures would strike the appropriate balance between the interest of the parties and the Court in efficiently resolving any privilege disputes and protecting defendants' privileged materials and information from disclosure to the prosecution team.

First, from a practical standpoint, defendants believe that in the vast majority of instances, litigating whether a privilege exists, the scope of that privilege, and whether there has been a waiver, would depend on the specific facts and contents of the documents.  It is impractical, and would waste the Court's time, to try to litigate the scope of privilege in the abstract when such issues may be able to be resolved by conversations between the firewall team and defense counsel, who will both have access to the documents in question, and thus will likely be able to efficiently resolve most disputes without resorting to litigation.  Where litigation is

HAFETZ & NECHELES LLP

necessary, it could more efficiently be conducted between the firewall team and defendants with reference to the contents of the documents.

More fundamentally, the government's proposal will result in disclosure to the prosecution team of the information that defense counsel has provided to the firewall team and also creates a substantial risk that privileged information will be disclosed as well. Firewall teams are disfavored to begin with, due to the valid concern of defendants that their privileged information may be leaked, inadvertently or not, to the prosecution team. Many courts have been reluctant to engage firewall teams for this very reason, only using them as a last resort when the government is already in possession of potentially privileged material. *In re Search Warrant for Law Offices Executed on March 19, 1992*, 153 F.R.D. 55, 59 (S.D.N.Y. 1994) (noting "that reliance on the implementation of a Chinese Wall, especially in the context of a criminal prosecution, is highly questionable, and should be discouraged."); *United States v. Taylor*, 764 F. Supp. 2d 230, 234 (D. Me. 2011) ("there is a healthy skepticism about the reliability of a filter agent or Chinese or ethical wall within a prosecutor's office, a skepticism perhaps prompted by the famous failures of such a procedure"). Even the "appearance of Justice must be served, as well as the interests of Justice" in the criminal context and "[i]t is a great leap of faith to expect that members of the general public would believe any such Chinese wall would be impenetrable . . . notwithstanding our own trust in the honor of an AUSA." *In re Search Warrant*, 153 F.R.D., at 59.

Although defendants agree that the firewall team in this case is a necessary and practical solution to the fact that the government is already in possession of a significant amount of defendants' privileged materials, defendants do not believe that a procedure which allows for information to flow back and forth between the prosecution and firewall teams – creating a significant risk of tainting the prosecution with privileged information – is appropriate. Those concerns are particularly acute in this case, where the Superseding Indictment contains allegations involving the same litigations described in the information defense counsel provided to the firewall team and which are the subject of many of the privileged emails. *See* Superseding Indictment, ECF No. 50, ¶6(b) (alleging that defendants used "litigation to intimidate and attack" as part of the means and methods of a criminal enterprise), ¶22 (alleging that Raniere and Nancy Salzman conspired to "alter, destroy, mutilate and conceal" video recordings "with the intent to impair such objects' integrity and availability for use in" the *NXIVM Corp., et al. v. Ross Institute*, et al., 06-cv-1051 (D.N.J.) litigation).[3] In particular, the government's proposal would cause the firewall team to reveal to the prosecution team information provided by defendants about defendants' role in and communications regarding some of the same litigation that is the subject of the criminal charges against them. Disclosure of this information to the prosecution team, even if not covered by the attorney-client privilege, implicates defendants' Fifth Amendment rights against self-incrimination. In the context of requiring defendant to provide expert disclosure of mental health information relevant to the punishment phase of a capital case to a government taint team, Judge Garaufis recognized the

---

[3] There is particularly no need to take the risk of allowing for a permeable wall between the firewall and prosecution teams here, where the government has informed us that the firewall team will only resolve issues of pure privilege, leaving questions of responsiveness to the prosecution team.

HAFETZ & NECHELES LLP

inherent "concern[] with a potential breakdown of the firewall (whether intentional or unintentional), [and] the need to protect the Defendant's constitutional rights," *United States v. Wilson*, 493 F. Supp. 2d 348, 357 (E.D.N.Y. 2006), and ordered the appointment of a taint attorney from another district to ensure that no information passed from the firewall team to the prosecution team. *Id.*

To address such concerns in the context of a privilege review, courts throughout the country have implemented procedures similar to those proposed by defendants above. *See United States v. Winters*, 2006 U.S. Dist. LEXIS 70488, at *5-6 (S.D.N.Y. Sep. 27, 2006); *In re Investigation of Bay Ingram*, 915 F. Supp. 2d 761, 763 (E.D. La. 2012); *United States v. Pedersen*, No. 12-00431, 2014 U.S. Dist. LEXIS 106227, at *93-94 (D. Or. Aug. 4, 2014). In these cases, the firewall team reviews the potentially privileged materials, raising any questions about the scope of privilege asserted to the defense teams; the firewall team identifies any particular documents it determines are not privileged to defense counsel; defense counsel responds to the firewall team's identification of documents by either (a) agreeing that the documents are not privileged and can be passed to the case team, or (b) disagreeing and continuing to assert privilege. Courts then address any disagreements by reviewing the documents *in-camera* and/or by entertaining argument from counsel with the most knowledge about the issues—defendants' counsel and the firewall team.

The government looks to *United States v. Juan Angel Napout*, 15-cr-252 (PKC) (RML), to support its view that it is permissible for the prosecution team to argue these privilege disputes. Yet, in that matter the court also held an ex-parte hearing with the firewall team to address attorney-client protections, sealing the resulting Order to only those attorneys. *United States v. Napout*, No. 15-252, 2018 U.S. Dist. LEXIS 105328, at *38 (E.D.N.Y. June 22, 2018) ("holding a sealed hearing with [defendant], his attorneys, and the government's privilege team, the Court issued an order, dated November 11, 2017, denying [defendant]'s motion to exclude the messages"); (*see also* ECF No. 796.) Even for the hearing referenced in the Government's Letter before Magistrate Judge Robert M. Levy, the only information given to the prosecution team was a chart indicating the attorney name, domain name, firm name and dates of representation. (*See* ECF No. 420, Exhibit H.) Defendants have previously provided the prosecution team with much of this information and are providing contemporaneously with this letter a redacted version of the current privilege charts displaying the same updated information in these categories as the firewall team possesses.

III.    The Government's Complaints About Defendants' Assertions of Privilege Could Efficiently Be Resolved by Defendants' Proposed Procedure

The inconsistencies identified in the November 27 letter by the prosecution team are exaggerated and could most likely be resolved by a meet-and-confer among the firewall team and the parties. For example, the government claims that Bronfman identifies Jonathan Ware as an attorney who represented NXIVM and with whom she had privileged communications in her capacity as a representative of NXIVM. On the other hand, the government claims, counsel for NXIVM has identified Bronfman in her personal capacity as the privilege-holder of

5

HAFETZ & NECHELES LLP

communications between Bronfman and Ware on NXIVM's server. [4]

It is not correct that Bronfman only identified Jonathan Ware as an attorney with whom she communicated in her capacity as a representative of NXIVM.  As shown in the privilege chart sent on November 9, Bronfman *also* identified Ware as an attorney with whom she dealt on behalf of several entities of which she is the sole owner or director. [5]  The privilege log provided by NXIVM's counsel does not conflict with these representations, and in fact shows that the privilege asserted over documents on NXIVM's servers includes communications with Ware in several capacities: as an attorney for NXIVM, for Bronfman personally, and for other entities of which Bronfman was the owner or director.  The government's assertion that counsel for NXIVM, "informed the government that . . . Mr. Ware did not represent Nxivm" misrepresents the contents of NXIVM counsel's privilege log.  (Government's Letter, ECF No. 206, at 1.)

Defendants' proposal does not amount to a suggestion that we litigate privilege on a document-by-document basis.  Rather, we propose that the firewall team and defense counsel work together to resolve any outstanding issues regarding the scope of privilege, and that the parties then litigate any remaining areas of dispute with respect to particular documents or categories of documents that the firewall team determines to challenge privilege on.  We oppose the prosecution team's proposal in which it plays a key role in determining which privileges to challenge, litigates those challenges, and in the process obtains discovery from defendants regarding litigations that are part of the prosecution team's theory of criminality in this case, thereby encroaching on defendants' privilege against self-incrimination.

Defendants thus respectfully request that the Court issue an order detailing the appropriate firewall team procedures in this case consistent with the process recommended by Defendants above.

Respectfully submitted,

/s/

Kathleen E. Cassidy

cc:    All parties (by ECF)
       AUSA Shannon Jones, Privilege Review Attorney (by email)
       Michael J. Sullivan, Esq., Counsel for NXIVM (by email)

---

[4] The government's assertion that the prosecution team is in a better position to identify inconsistencies as to claims of privilege like the example referenced should be disregarded, as no case-specific knowledge is required to compare the privilege assertions made by defendants to the privilege log submitted by NXIVM's counsel.

[5] Counsel for defendants has not undertaken to create a privilege log, nor is one necessary where the government's firewall team is in possession of the potentially privileged documents and can raise questions where appropriate about the scope of the privilege or challenge its application in certain circumstances.