MKM:TH/MKP/KMT
F. #2017R01840

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

     Docket No. <u>18-204 (S-1) (NGG) (VNS)</u>

   - against -

KEITH RANIERE,
CLARE BRONFMAN,
ALLISON MACK,
KATHY RUSSELL,
LAUREN SALZMAN and
NANCY SALZMAN,

           Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - X


THE GOVERNMENT'S MEMORANDUM OF LAW IN
<u>RESPONSE TO DEFENDANTS' PRETRIAL MOTIONS</u>


           RICHARD P. DONOGHUE
           UNITED STATES ATTORNEY
           Eastern District of New York
           271 Cadman Plaza East
           Brooklyn, New York 11201


Moira Kim Penza
Tanya Hajjar
Kevin Trowel
Assistant U.S. Attorneys
    (Of Counsel)

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND .................................................................................................. 3

    I.    The Pyramid Organizations ...................................................... 3

    II.    The Enterprise ........................................................................ 4

    III.    The Defendants and Their Co-Conspirators ........................... 5

    IV.    The Charges ............................................................................ 6

ARGUMENT ....................................................................................................... 7

    I.    Count One Adequately Alleges the Elements of RICO Conspiracy .................. 7

        A.    Applicable Law ........................................................ 8

            1.    Pleading Requirements for Indictments ......................... 8

            2.    Legal Standard for Dismissal .......................................... 9

            3.    Requirements for Pleading RICO Conspiracy ................. 11

        B.    Discussion ............................................................... 14

            1.    Count One Satisfies Rule 7(c) ......................................... 15

            2.    Relatedness Is Not an Element that Must Be Pleaded in the Indictment ................................................. 16

                a.    The Facts Alleged in the Indictment Support an Inference of Relatedness ................................... 18

                b.    The Government Has Provided Defendants with Additional Information More Than Sufficient to Provide Notice ....... 24

            3.    Racketeering Acts One, Two, Four, Five, Six and Ten Are Sufficiently Pleaded ................................. 26

            4.    Racketeering Acts Seven, Nine-A and Nine-B Are Sufficiently Pleaded ................................. 30

    II.    The Charges in the Indictment Are Not Duplicitous ........................................... 34

        A.    Applicable Law ........................................................ 35

        B.    Discussion ............................................................... 37

            1.    Count One Is Not Duplicitous ......................................... 37

            2.    Racketeering Acts Four, Five, Six and Eight-A Are Not Duplicitous ................................. 42

    III.    Racketeering Acts Seven and Nine-B Are Not Multiplicitous ............................ 44

        A.      Applicable Law ....................................................................... 44

        B.      Discussion .............................................................................. 45

IV.     Bronfman's Vagueness Challenge Is Premature........................................ 47

V.      Counts Two, Four, Five and Six Are Properly Alleged........................................ 48

        A.      The Indictment Properly Alleges Forced Labor Conspiracy (Count Two) ........................................................................................ 49

        B.      The Indictment Properly Alleges the Sex Trafficking Offenses (Counts Four, Five, and Six) ........................................................................ 52

VI.     Count Seven Should Not Be Dismissed........................................................ 54

VII.    Defendants Are Not Entitled to a Bill of Particulars ............................................ 56

        A.      Legal Standard ....................................................................... 57

        B.      Discussion .............................................................................. 58

VIII.   Raniere's Motions to Compel Additional Disclosures Should Be Denied .......... 62

        A.      Applicable Law ....................................................................... 63

        B.      Discussion .............................................................................. 65

IX.     Raniere's Motion to Permit Testimony By Closed Circuit Television is Premature ........................................................................................ 68

        A.      Applicable Law ....................................................................... 69

        B.      Discussion .............................................................................. 70

CONCLUSION ........................................................................................... 71

PRELIMINARY STATEMENT

The seven-count superseding indictment in this case (the "Indictment") arises out of the defendants' participation in an criminal racketeering enterprise (the "Enterprise") led by defendant Keith Raniere.  As the government will prove at trial, Raniere and his "inner circle," including the defendants, agreed to conduct the affairs of the Enterprise through a pattern of racketeering acts intended to provide financial and personal benefits to themselves and other members of the Enterprise.

For these crimes, the Indictment charges all of the defendants with racketeering conspiracy, in violation of 18 U.S.C. § 1962(d) (Count One); and charges various of the defendants with participation in a forced labor conspiracy, in violation of 18 U.S.C. § 1594(b) (Count Two); wire fraud conspiracy, in violation of 18 U.S.C. § 1349 (Count Three); sex trafficking offenses, in violation of various provisions of 18 U.S.C. §§ 1591, 1594 (Counts Four, Five, Six); and conspiracy to commit identity theft, in violation of 18 U.S.C. § 1028(f) (Count Seven).

The government respectfully submits this memorandum of law in opposition to the defendants' pretrial motions to dismiss various counts and racketeering acts alleged in the Indictment.  Contrary to the defendants' assertions across four briefs, the seven counts contained in the Indictment are properly alleged under Federal Rule of Criminal Procedure 7(c).  The defendants' arguments rely on unsupported, extra-record factual assertions and make clear that they have "confused the standards of pleading with [the] standard of proof." United States v. Messina, No. 11-CR-31 (KAM), 2012 WL 463973, at *4 (E.D.N.Y. Feb. 13, 2012) (rejecting pre-trial challenge to RICO "relatedness").  The Indictment was "returned

by a legally constituted and unbiased grand jury" and is "valid on its face," and that is "enough to call for trial of the charge on the merits." Costello v. United States, 350 U.S. 359, 363 (1956).  In addition to this fundamental defect, the defendants' motions all but ignore decades of relevant—even dispositive—case law in this Circuit, and instead rely on civil RICO cases, district court opinions from other Circuits decided in non-RICO cases, and cases on direct appeal following a jury verdict; in short, cases that have no bearing on their pre-trial motion to dismiss a criminal RICO conspiracy charge.  They fail to cite cases in any Circuit in which a court has dismissed a RICO conspiracy count or a racketeering act on any of the grounds they urge here.

       For these reasons, and for the reasons set forth below, there is no merit to any of the defendants' arguments, and their motions should be denied in their entirety.

BACKGROUND

On July 23, 2018, a federal grand jury in the Eastern District of New York returned the Indictment, charging defendants with participating in a long-running racketeering conspiracy, among other crimes. The charges relate to the defendants' involvement in several hierarchical pyramid-structured organizations founded by Raniere, including Nxivm and various related entities that purported to offer "self-help workshops," as well as an organization referred to as "DOS," which purported to be a "women's empowerment" group. (DE 4 at 2; DE 14 at 1.)

I.     The Pyramid Organizations

In or about 1998, Raniere founded Executive Success Programs ("ESP"), a series of workshops designed, according to its promotional literature, to "actualize human potential." (Compl., DE 1, at ¶¶ 3-4.) In or about 2003, Raniere founded an organization called Nxivm, which served as an umbrella organization for ESP and other affiliated entities. (Id.) Nxivm promoted itself as a "professional business providing educational tools, coaching and trainings to corporations and people from all walks of life," and describes its philosophy as "a new ethical understanding" that allows "humanity to rise to its noble possibility." (Id.)

Nxivm, headquartered in Albany, recruited members from around the world, including from the Eastern District of New York. (Id. ¶ 5.) Nxivm offered classes in Albany, Manhattan, Seattle, Boston and elsewhere within the United States and abroad, which cost up to $5,000 for a five-day workshop. (Id. ¶ 6.) Participants were encouraged to

continue attending classes and to recruit others into Nxivm in order to be promoted within the organization and thereby reach certain "goal levels."  (Id.)

In 2015, Raniere created a secret society called "DOS," which was comprised of "masters" who recruited and commanded groups of "slaves."  (Id. ¶¶ 11-13.)  Much like the structure of Nxivm, DOS "slaves" were expected to recruit "slaves" of their own, who in turn owed service not only to their own masters but also to masters above them in the DOS pyramid.  Raniere alone formed the top of the pyramid as the highest master.  Other than Raniere, all participants in DOS were women.  DOS masters persuaded "slaves" to join DOS by describing it as a secret women's empowerment group.  Prospective "slaves" were asked to provide "collateral" to prevent them from leaving the group or disclosing it to others.  Collateral included sexually explicit photographs and videos, rights to financial assets, and videos or letters of (true or untrue) confessions that would be damaging to the prospective slave's family members and friends.  (Id. ¶¶ 15-19.)  After joining DOS, "slaves" were required to provide additional collateral, including sexually explicit photographs, and to pay "tribute" to their masters, including by performing tasks that would otherwise be compensable.  (Id. ¶¶ 20-21.)  In addition, several DOS "slaves" were directed to have sex with Raniere, whose participation in DOS was not disclosed.  (Id. ¶¶ 22-24.)

II.     The Enterprise

As alleged in the Indictment, the Enterprise was composed of Keith Raniere and an "inner circle" of individuals, including the defendants, who were "accorded special positions of trust and privilege" with Raniere and who "carried out his directives." (Indictment, DE 50, at  ¶ 1-3.)  The Indictment further alleges that the Enterprise "constituted

4

an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise," and that the enterprise engaged in, and its activities affected, interstate and foreign commerce.  (Id.)

As alleged, the principal purpose of the Enterprise was to obtain financial and personal benefits for the members of the Enterprise by promoting Raniere and by recruiting new members into Nxivm and DOS.  (Id. ¶ 4.)  By promoting Raniere and recruiting others into Nxivm and DOS, members of the Enterprise expected to receive financial opportunities and increased power and status within the Enterprise.  (Id.)  The members of the Enterprise carried out its principal purpose by, among other things, "[p]romoting, enhancing and protecting the Enterprise by committing, attempting and conspiring to commit crimes, including but not limited to identity theft, harboring of aliens for financial gain, extortion, forced labor, sex trafficking, money laundering, wire fraud and obstruction of justice" (id. ¶ 6(a)); instilling "absolute commitment" to Raniere, including by "exalting" his teachings and ideology and not tolerating dissent (¶ 6(b)); recruiting and grooming sexual partners for Raniere (¶ 6(e)); and "using harassment, coercion and abusive litigation to intimidate and attack perceived enemies and critics" of Raniere (¶ 6(f)).

III.    The Defendants and Their Co-Conspirators

Members of the Enterprise, including the defendants, generally held high positions in Nxivm, its affiliated organizations, and/or in DOS.  (Id. ¶¶ 7-13.)  Keith Raniere was the founder of each of these organizations.  At various times relevant to the Indictment, defendants Clare Bronfman and Lauren Salzman served on Nxivm's Executive Board, Kathy Russell served as Nxivm's bookkeeper, and Nancy Salzman served as Nxivm's president.

(Id.; DE 52, at 2-3.)  At various times relevant to the Indictment, Lauren Salzman and

Allison Mack were first-line "masters" in DOS.  (Indictment ¶¶ 7-13; DE 52 at 3.)

IV.    The Charges

Count One charges the defendants with conspiring to participate in the conduct

of the affairs of the Enterprise through a pattern of racketeering activity consisting of

specified predicate racketeering acts, in violation of Title 18, United States Code, Section

1962(d).  The Complaint, various filings and detention letters filed in this case, and extensive

discovery set forth in detail the factual basis for the alleged Racketeering Acts.  The

government's submissions have at times included quotations or references to specific

electronic communications and statements by witnesses and victims, which provide the

defendants with a significant amount of information regarding the schemes alleged in the

Indictment.[1]  Specifically:

- Racketeering Act One alleges a conspiracy to commit identity theft and to unlawfully possess a false identification document as to Jane Doe 1, which is described in DE 52 at 3.

- Racketeering Act Two alleges a conspiracy to commit identity theft and identity theft as to two victims, which is described in DE 52 at 2-4;

- Racketeering Act Three alleges a conspiracy to alter records for use in an official proceeding, which is described in DE 52 at 4;

---

[1]    The details set forth in these documents are illustrative and do not constitute a "full proffer" of the government's anticipated evidence at trial.  See Alfonso, 143 F.3d at 776–77.

- Racketeering Act Four alleges a conspiracy to commit identity theft as to Jane Doe 2, as to which extensive discovery, including email correspondence relating to the scheme, has been produced;

- Racketeering Act Five alleges encouraging and inducing the entry of an alien, Jane Doe 3, for financial gain, which is described in DE 52 at 3;

- Racketeering Act Six alleges the trafficking of Jane Doe 4 for forced labor and document servitude, described in DE 44 at 6, DE 52 at 3-4 and DE 202 at 5-6;

- Racketeering Acts Seven, Eight and Nine, as well as Counts Three, Four, Five, and Six, allege multiple acts involving sex trafficking, forced labor, larceny by extortion in violation of New York state law, and wire fraud, all in connection with DOS, schemes described in extensive detail in a 22-page Complaint, DE 1, DE 44 at 3-6, and DE 202 at 4-5.

- Racketeering Act Ten and Count Seven allege conspiracy to commit identity theft as to Jane Doe 7, described in DE 52 at 3.

ARGUMENT

For the reasons set forth below, each of the defendants' arguments are without merit and their motions should be denied.

## I.   Count One Adequately Alleges the Elements of RICO Conspiracy

Bronfman and Raniere argue that Count One should be dismissed for failing to adequately plead (1) the horizontal and/or vertical "relatedness" of the alleged racketeering acts; and (2) certain "underlying offenses" that are cross-referenced in alleged Racketeering Acts One, Two, Four, Five, Six and Ten.  (See Bronfman Brief (hereinafter "BBr.") 13, 26; Raniere Brief (hereinafter "RBr.") 10, 17.)  Both defendants engage in a strained reading of the Indictment that is belied by its plain language, rely on facts that are not in the record and ignore well-settled case law in this Circuit concerning pleading RICO conspiracy.  Neither defendant cites a case in any Circuit in which a court has dismissed a RICO conspiracy count

7

or an alleged racketeering act underlying a RICO conspiracy count on the grounds they urge. There is no legal support for their arguments and this Court should reject them.

Lauren Salzman argues that Racketeering Acts Seven and Nine should be dismissed because (1) Racketeering Acts Seven and Nine-B are subject to a "heightened pleading standard" as set forth in <u>Russell v. United States</u>, 369 U.S. 749, 764 (1962); and (2) Racketeering Act Nine-A fails to allege "which [of L. Salzman's] acts" violated the statute. (L. Salzman Brief (hereinafter "LSBr.") 10-16, 17.)  As with Bronfman's and Raniere's arguments, L. Salzman also fails to cite a case in any Circuit in which a court has granted the remedy she seeks as to a racketeering act underlying a RICO conspiracy charge.  There is no legal support for her argument and it should also be rejected.

A.    <u>Applicable Law</u>

1.    <u>Pleading Requirements for Indictments</u>

Racketeering indictments, like all indictments, are governed by Rule 7(c)(1) of the Federal Rules of Criminal Procedure, which provides that an indictment must contain a "plain, concise and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c).  As the Second Circuit has explained, Rule 7(c)

> performs three constitutionally required functions: It fulfills the Sixth Amendment right to be informed of the nature and cause of the accusation; it prevents a person from being subject to double jeopardy as required by the Fifth Amendment; and it

> serves the Fifth Amendment protection against prosecution for crimes based on evidence not presented to the grand jury.

United States v. Walsh, 194 F.3d 37, 44 (2d Cir. 1999).

An indictment satisfies rule 7(c) – and therefore the requirements of the Fifth and Sixth Amendments – if it "'first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" United States v. Stringer, 730 F.3d 120, 124 (2d Cir. 2013) (quoting Hamling v. United States, 418 U.S. 87, 117-18 (1974)); United States v. Yannotti, 541 F.3d 112, 127 (2d Cir. 2008) (rejecting argument that racketeering act was insufficiently pleaded). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as [it] . . . fully, directly, and expressly, without any uncertainty or ambiguity, set[s] forth all the elements necessary to constitute the offence intended to be punished." Hamling, 418 U.S. at 117-18 (citations and internal quotations omitted); United States v. Stavroulakis, 952 F.2d 686, 693 (2d Cir. 1992); Brooks, 2009 WL 3644122, at *2 (citing Fed. R. Crim. P. 7(c)(1)). When determining whether or not a count sufficiently alleges a violation, the indictment should be read "in its entirety." United States v. Hernandez, 980 F.2d 868, 871 (2d Cir. 1992).

### 2.    Legal Standard for Dismissal

The dismissal of an indictment is an "'extraordinary remedy' reserved only for extremely limited circumstances implicating fundamental rights." United States v. De La Pava, 268 F.3d 157, 165 (2d Cir. 2001) (citation omitted); Walsh, 194 F.3d at 45 (noting that

courts should not dismiss an indictment for lack of specificity absent a showing of prejudice). It is well-settled that "[a]n indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for trial of the charge on the merits." Costello v. United States, 350 U.S. 359, 363 (1956). On a pretrial motion to dismiss pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure, the allegations of the indictment must be taken as true. See Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 343 n.16 (1952); United States v. Goldberg, 756 F.2d 949, 950 (2d Cir. 1985). A defendant must wait until after the close of the Government's case-in-chief at trial or after the jury's verdict before contesting the sufficiency of the evidence. See Fed. R. Crim. P. 29; see also, e.g., United States v. Elson, 968 F. Supp. 900, 905 (S.D.N.Y. 1997) ("[I]t is well established that an Indictment that is valid on its face may not be dismissed on the ground that it is based on inadequate or insufficient evidence.").

   To withstand a motion to dismiss pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B), an indictment "need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." Yannotti, 541 F.3d at 127 (quoting United States v. Alfonso, 143 F.3d 772, 776 (2d Cir. 1998)) (affirming denial of motion to dismiss racketeering act); United States v. Price, No. 05-CR-492 (NGG), 2010 WL 1949361, at *5 (E.D.N.Y. May 11, 2010) (noting in context of ineffective assistance of counsel claim that motion to dismiss racketeering acts would have been denied where the indictment tracked the statute and stated the time and place of alleged crimes); United States v. Reale, No. S4 96-CR-1069 (DAB), 1997 WL 580778, at *6-7

(S.D.N.Y. Sept. 17, 1997) (denying motion to dismiss racketeering and racketeering conspiracy charges).

A defendant's factual arguments challenging facially valid pleadings do not justify pre-trial dismissal of the indictment. The government is entitled to marshal and present its evidence at trial and, if warranted, have its sufficiency tested by a motion for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. See, e.g., Reale, 1997 WL 580778, at *6 ("As the Government aptly states in its opposition, 'while [D]efendants' arguments may properly be considered on a motion under Rule 29 of the Federal Rules of Criminal Procedure after the Government presents its proof, they do not support dismissal of the Indictment at this stage of the proceedings.'"). A motion to dismiss a properly pleaded indictment "confuses standards of pleading with standards of proof." Id. at *7; see also, e.g., United States v. Perez, 575 F.3d 164, 166 (2d Cir. 2009) ("The Defendants, however, had no basis to challenge the sufficiency of the indictment before trial because it met the basic pleading requirements and was valid on its face."); United States v. Gotti, No. 02-CR-743 (RCC), 2004 WL 32858, at *2 (S.D.N.Y. Jan. 6, 2004) ("Defendants will have other opportunities to contest the sufficiency of the Government's evidence, but a pretrial motion to dismiss part of the indictment is not the time nor the proper occasion."); United States v. Cassese, 273 F. Supp. 2d 481, 484-85 (S.D.N.Y. 2003) (same and collecting cases).

### 3.    Requirements for Pleading RICO Conspiracy

The Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, was enacted on October 15, 1970 as Title IX of the Organized

Crime Control Act of 1970.  Section 1962(c), which is the object of the conspiracy charged

in Count One of the Indictment, provides as follows:

> It shall be unlawful for any person employed by or associated
> with any enterprise engaged in, or the activities of which affect,
> interstate or foreign commerce, to conduct or participate,
> directly or indirectly, in the conduct of such enterprise's affairs
> through a pattern of racketeering activity . . . .

18 U.S.C. § 1962(c).  To establish a violation of RICO's conspiracy provision, 18 U.S.C.

§ 1962(d), the government must prove three elements: (1) the existence of an enterprise or an

agreement that an enterprise would exist; (2) that the enterprise was or would be engaged in,

or its activities affected or would affect, interstate or foreign commerce; and (3) that the

defendant knowingly agreed that a conspirator, which may but need not include the

defendant himself, would commit a violation of 18 U.S.C. § 1962(c).  See, e.g., United States

v. Salinas, 522 U.S. 52, 62-65 (1997).  There is no overt act requirement.  Id. at 63 ("The

RICO conspiracy provision . . . is even more comprehensive than the general conspiracy

offense in § 371.").  Moreover, "the RICO statute provides that its terms are to be 'liberally

construed to effectuate its remedial purposes.'"  Boyle v. United States, 556 U.S. 938, 944

(2009) (quoting § 904(a), 84 Stat. 947, note following 18 U.S.C. § 1961).

Under the RICO statute, an "enterprise" is defined to include "any . . . union or

group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  In

Boyle, a 2009 case rejecting a challenge to a substantive RICO conviction in this district, the

Supreme Court held that to sustain a RICO conviction, an association-in-fact enterprise

"must have at least three structural features: a purpose, relationships among those associated

with the enterprise, and longevity sufficient to permit these associates to pursue the

enterprise's purpose."  556 U.S. at 946; see also id. at 944 (observing that the statutory definition of "enterprise" in 18 U.S.C. § 1961(4) "does not specifically define the outer boundaries of the 'enterprise' concept," and that the definition is "obviously broad" and has a "wide reach").  An association-in-fact enterprise "is simply a continuing unit that functions with a common purpose."  United States v. Pierce, 785 F.3d 832, 838 (2d Cir. 2015) (quoting Boyle, 556 U.S. at 948).

To establish the required "pattern" element, one of the elements challenged by the defendants, the government must demonstrate at trial that the defendant agreed that the affairs of the agreed-upon enterprise would be conducted by the commission of least two racketeering acts.  See United States v. Basciano, 599 F.3d 184, 199 (2d Cir. 2010) ("[T]he pattern element [of a § 1962(d) charge] demands proof of an agreement to commit at least two crimes.").  Agreed-upon racketeering acts form a pattern when they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events."  United States v. Burden, 600 F.3d 204, 216 (2d Cir. 2010) (quoting H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 240 (1989)).  "The pattern element serves to prevent application of the racketeering statute to 'perpetrators of isolated or sporadic criminal acts.'"  United States v. Coppola, 671 F.3d 220, 243–44 (2d Cir. 2012) (quoting United States v. Payne, 591 F.3d 46, 64 (2d Cir. 2010)).

As the Supreme Court has explained "'continuity plus relationship . . . combines to produce a pattern.'"  United States v. Eppolito, 543 F.3d 25, 50 (2d Cir. 2008) (quoting H.J. Inc., 492 U.S. at 239).  With respect to the "relationship" sub-element of

13

"pattern," the Second Circuit has "labeled the requirement that the predicate acts be related to one another 'horizontal relatedness' and the requirement they have a nexus to the enterprise 'vertical relatedness.'" United States v. Cain, 671 F.3d 271, 284–85 (2d Cir. 2012) (quoting Burden, 600 F.3d at 216). At trial, to establish that predicate acts are "vertically related" to the charged enterprise, "the government must establish (1) that the defendant was enabled to commit the predicate offenses solely by virtue of his position in the enterprise or involvement in or control over the affairs of the enterprise, or (2) that the predicate offenses are related to the activities of that enterprise." United States v. Daidone, 471 F.3d 371, 375 (2d Cir. 2006) (emphasis added and internal quotation marks omitted).[2] The government can establish horizontal relatedness by "show[ing] that each predicate act is related to the RICO enterprise." Id. at 375; United States v. Polanco, 145 F.3d 536, 541 (2d Cir. 1998) ("A predicate act is related to a different predicate act if each predicate act is related to the enterprise."); Daidone, 471 F.3d at 375 ("[T]he requirements of horizontal relatedness can be established by linking each predicate act to the enterprise, although the same or similar proof may also establish vertical relatedness."); Coppola, 671 F.3d at 243-44.

B.    Discussion

Bronfman's and Raniere's principal argument that Count One fails to sufficiently allege that the identified racketeering acts are vertically related (BBr. 16) and

---

[2]    Bronfman cites a civil RICO case for this proposition and incorrectly omits the second conjunctive prong of this test. (BBr. 16).

horizontally related (BBr. 18; RBr. 10) is wrong as a matter of law and is contradicted by the allegations on the face of the Indictment. This argument has been soundly rejected by courts in this and other Circuits. Indeed, the government is not aware of any case in any Circuit in which a court has dismissed a substantive RICO charge – let alone a RICO conspiracy charge – at the pre-trial stage on this ground.[3] Bronfman's argument, in other words, "ignores the above-quoted and cited authorities applicable to pretrial motions to dismiss an indictment," United States v. Marchese, No. 89-CR-229, 1991 WL 60338, at *1-2 (S.D.N.Y. Apr. 11, 1991) (denying pre-trial motion to dismiss RICO charges), and must await a Rule 29 motion at the close of the government's case at trial, or the jury's verdict. This court should deny the motion to dismiss on this ground.

### 1.    Count One Satisfies Rule 7(c)

The Indictment alleges each element of a RICO conspiracy the government must prove at trial and it is therefore sufficient under Rule 7(c). See, e.g., United States v. Triumph Capital Grp., Inc., 260 F. Supp. 2d 444, 449 (D. Conn. 2002) (denying motion to dismiss RICO charge and explaining that "[t]o be sufficient, an indictment charging a violation of RICO must allege" the elements to be proven at trial); United States v. Ganim,

---

[3]    In United States v. Vendetti, No. 10-CR-360, 2013 WL 5522434, at *7 (W.D.N.Y. Oct. 3, 2013) (BBr. 17), the district court dismissed a racketeering act alleged in connection with a substantive RICO charge and a standalone count as "vague and duplicitous" for reasons that have no application to the Indictment. Bronfman fails to acknowledge that the district court denied defendants' motions to dismiss certain racketeering acts for allegedly failing to plead "relatedness." Id. at *7-8.

225 F. Supp. 2d 145, 161-62 (D. Conn. 2002) (denying motion to dismiss RICO charge in light of the government's allegations "that an enterprise existed and functioned, setting out the members, structure and goals of the enterprise"); Marchese, 1991 WL 60338, at *3 (denying motion to dismiss RICO charges on grounds that it "contains all of the requisite elements of those counts"); see also United States v. Cuong Gia Le, 310 F. Supp. 2d 763, 774 (E.D. Va. 2004) (denying motion to dismiss substantive and conspiracy RICO charges because both "(i) allege each essential element of the charged offense, (ii) track the language of the statute, and (iii) provide [defendant] with sufficient notice of the charged offenses"). In Count One the Indictment properly and sufficiently alleges that an enterprise exists (Indictment, DE 50, ¶¶ 1-3); the defendants are members and associates of the Enterprise (¶¶ 7-13); the defendants agreed to participate in the affairs of the Enterprise through a pattern of racketeering activity (¶ 15-16); the activities of the Enterprise affected interstate and foreign commerce (¶ 15); and each defendant agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the Enterprise (¶¶ 16-34). These allegations are sufficient and the motion to dismiss should be denied. See, e.g., Triumph Capital Grp., Inc., 260 F. Supp. 2d at 449; Cuong Gia Le, 310 F. Supp. 2d at 774.

2. Relatedness Is Not an Element that Must Be Pleaded in the Indictment

Contrary to Bronfman's and Raniere's arguments (BBr. 16, 18; RBr. 10), the government need not plead "relatedness" to satisfy Rule 7(c). This is clear from United States v. Palumbo Bros., 145 F.3d 850 (7th Cir. 1998), the primary case upon which Bronfman relies. (BBr. 15). Far from requiring that the government plead either relatedness or continuity, in Palumbo Bros. the Seventh Circuit reversed a district court's dismissal of a

16

substantive RICO charge for failing to allege continuity.  See 145 F.3d at 876-77.  In so doing, the Seventh Circuit explained that "an indictment requires only the essential elements" of the charge and "[a]lthough continuity is an element of proof necessary at trial to conclusively establish [defendant]'s pattern of racketeering activity, . . . we agree that it is not an essential element of a RICO offense that must be clearly and specifically established in the indictment."  Id. at 878 (emphasis in original).  Bronfman does not cite any cases reaching a contrary conclusion and the government is not aware of any.  See, e.g., United States v. Torres, 191 F.3d 799, 806–07 (7th Cir. 1999) ("Contrary to the defendants' assertions, an indictment does not have to allege continuity, which is not an element of the offense, with particularity."); United States v. Woodman, 980 F.2d 740 (9th Cir. 1992) (holding that "[t]he indictment need not . . .  treat relatedness and continuity or the threat of continuity as separate elements") (summary order); United States v. Ortiz, No. C 12-00119, 2013 WL 6842541, at *3 (N.D. Cal. Dec. 27, 2013) ("[r]elatedness and continuity are not elements that the government must separately allege"); Messina, 2012 WL 463973, at *4 (rejecting pre-trial challenge to relatedness and explaining that defendant's argument "confuse[s] the standards of pleading with [the] standard[] of proof"); Cuong Gia Le, 310 F. Supp. 2d at 775 ("[C]ontinuity and relationship need not be alleged in the Indictment."); Triumph Capital Grp., 260 F. Supp. 2d at 453 (rejecting argument that government must plead sub-elements of RICO "pattern" element and noting that "defendants' arguments conflate what the government must prove at trial with what it must allege in the indictment"); United States v. Mavroules, 819 F. Supp. 1109, 1117 (D. Mass. 1993) (noting that "'continuity' or 'relatedness' need not be alleged" and that "[t]he defendant has cited no case

from this Circuit in which an indictment that alleges all the elements of a RICO charge has

been dismissed before trial because of a failure to allege 'continuity' or 'relatedness' or

because a Court has found that the pleading, although sufficiently alleging the elements of a

RICO charge, is insufficient as a matter of law because, from the allegations themselves,

'continuity' and/or 'relatedness' cannot be proved").[4]

> a.   The Facts Alleged in the Indictment Support an Inference of
> Relatedness

Although Palumbo Bros. and similar cases make clear that the government is

not required to plead "relatedness," they nevertheless also suggest that "something beyond

the mere number of acts also is required; the indictment must contain sufficient facts to

demonstrate that the racketeering acts are related and that those acts establish or threaten

---

[4]     Bronfman also relies heavily on United States v. Bruno, 383 F.3d 65 (2d Cir. 2004), a case decided by the Second Circuit on direct appeal from a jury trial (BBr. 16). Bronfman's reliance on Bruno confirms that her argument "confuse[s] the standards of pleading with [the] standard[] of proof."  Messina, 2012 WL 463973, at *4; see Bruno, 383 F.3d at 85 (holding that evidence adduced at trial was insufficient to prove relatedness of certain alleged racketeering acts).  Notably, Bronfman also fails to cite the Circuit's most recent examination of the relatedness requirement in RICO conspiracy cases.  See United States v. Vernace, 811 F.3d 609, 615-18 (2d Cir. 2016), cert. denied, 137 S. Ct. 691 (2017) (clarifying Bruno).  Bronfman also relies on civil RICO cases (BBr. 17), which are governed by the heightened civil pleading standards in Fed. R. Civ. P. 9 and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and do not involve Fed. R. Crim. P. 7 or an indictment returned by a grand jury.  See, e.g., United States v. Gatto, 295 F. Supp. 3d 336, 348 (S.D.N.Y. 2018) (denying motion to dismiss RICO indictment and noting that "[d]efendants' reliance on two civil RICO cases is confounding"); TAGC Mgmt., LLC v. Lehman, Lee & Xu Ltd., 536 F. App'x 45, 47 (2d Cir. 2013) (applying Twombly pleading standard to civil RICO complaint); United States v. Vaughn, 722 F.3d 918, 926 (7th Cir. 2013) (rejecting application of Twombly to criminal pleadings); Mavroules, 819 F. Supp. at 1118 (explaining that civil RICO cases are inapposite to motion to dismiss criminal RICO charge); Marchese, 1991 WL 60338, at *1–2 (same).

continuing criminal activity."  145 F.3d at 877 (BBr. 16-17 (quoting Palumbo Bros., 145 F.3d at 877)).  Bronfman does not cite a Second Circuit case adopting this approach, but in any event, this requirement is easily met by the sections of Count One under the headings "The Enterprise," "Purpose, Methods and Means of the Enterprise," "The Defendants and Their Co-Conspirators" and the 10 alleged racketeering acts.

That the allegations in the Indictment are more than sufficient even under the Palumbo Bros. approach is apparent from the cases cited by Bronfman.  In United States v. Giovannelli (BBr. 15), for example, the district court rejected the argument that the RICO counts "fail[ed] to adequately allege a pattern of racketeering activity."  No. 01 CR. 749 (JSR), 2004 WL 48869, at *3 (S.D.N.Y. Jan. 9, 2004).  The court noted that the counts "allege[d] four timely predicate acts . . . that are alleged to have been performed in furtherance of an ongoing enterprise. . . .  This is more than enough to satisfy the "pattern" requirement."  Id.; see also id. at *3 n.1 (rejecting "defendants' claims that the pleadings are insufficient in other respects [as] entirely meritless.  The indictment more than meets the modest requirements of a criminal pleading.").  In Palumbo Bros. itself (BBr. 15), the Court inferred continuity from the nature of the alleged racketeering acts.  See 145 F.3d at 878.  In United States v. Fruchter, (BBr. 15-16), the district court found this standard met by (1) the three-year period during which the alleged predicate acts occurred, (2) the similar purpose and results of the acts, and (3) the fact that the predicate acts "[we]re alleged to have been committed by many of the same [d]efendants."  104 F. Supp. 2d 289, 297 (S.D.N.Y. 2000).  In United States v. Gotti (BBr. 16), the district court found this standard met by the period of time during which the alleged racketeering acts occurred, the similarity among some of the

alleged acts, and the acts' "relat[ionship] to the means and methods of the enterprise." 42 F. Supp. 2d 252, 288 (S.D.N.Y. 1999). The court also concluded that "relatedness was established" given that one defendant was charged in two racketeering acts with another defendant, who was in turn charged in other racketeering acts, and both defendants were alleged to have had roles in the charged enterprise. See id.

Other cases make clear just how limited the "pattern" inquiry is at this stage of the case. In Cuong Gia Le, for example, the district court found relatedness sufficient for Rule 7(c) "because [the acts] (i) took place over a relatively short period of time, (ii) involved common participants, . . . and (iii) served similar purposes, namely the enhancement of the alleged. . . criminal enterprise and the enrichment of its members." 310 F. Supp. 2d at 777. In United States v. Ganim, the district court rejected the defendants' challenge to the indictment simply by referring to "paragraphs six through eight of the indictment [i.e., the paragraphs describing the enterprise, its objectives and the manner and means of the enterprise], which . . . plainly allege more than the disconnected commission of unrelated predicate acts. 225 F. Supp. 2d at 162.

i.     Vertical Relatedness

Although not required by Rule 7(c), the Indictment easily meets the standard applied in these cases as to vertical relatedness. The Indictment is hardly "devoid of allegations showing a nexus between the predicate acts and the enterprise." (BBr. 16). Rather, it alleges that the "Enterprise consisted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the Enterprise" (Indictment, DE 50, at ¶ 3), including "to obtain financial and personal benefits

for the members of the Enterprise by promoting the defendant KEITH RANIERE . . . and by recruiting new members into the Pyramid Organizations." (Id. ¶ 4). By doing so, "the members of the Enterprise expected to receive financial opportunities and increased power and status within the Enterprise." (Id.). The Indictment further includes seven subparagraphs alleging the methods and means of the Enterprise, including the "[p]romoting, enhancing and protecting the Enterprise by committing, attempting and conspiring to commit crimes, including but not limited to identity theft, harboring of aliens for financial gain, extortion, forced labor, sex trafficking, money laundering, wire fraud and obstruction of justice." (Id. ¶ 6). These allegations directly refute Bronfman's suggestion that "nothing in the indictment actually suggests that the acts related to the activities of the enterprise." (BBr. 16 (internal quotation marks omitted)).

Bronfman's primary error is her focus on the text of individual alleged Racketeering Acts, rather than on the RICO charge as a whole. This approach to assessing the pleading sufficiency of Count One is plainly incorrect. Indeed, as the Second Circuit has repeatedly emphasized, a RICO conspiracy is "not [a] conspiracy to commit predicate acts." Id. (quoting United States v. Persico, 832 F.2d 705, 713 (2d Cir. 1987)); see also Palumbo Bros., 145 F.3d at 860, 878 (explaining that "[i]n reviewing the sufficiency of an indictment, a court should consider each challenged count as a whole and should refrain from reading it in a hypertechnical manner" and concluding that RICO charge was sufficient pleaded in light of "indictment as a whole"); Cuong Gia Le, 310 F. Supp. 2d at 777 & n.15, 779 & n.21 (assessing sufficiency under Rule 7(c) in light of indictment as a whole and collecting cases). Bronfman provides no legal authority for her implicit suggestion that to establish vertical

21

relatedness in the Indictment, the individual racketeering acts must each specify which alleged method or mean they relate to, or recite how they further the purpose of the enterprise, and the government is aware of none.[5]

ii.    Horizontal Relatedness

Bronfman's and Raniere's horizontal relatedness argument similarly fails.[6] (BBr. 18, RBr. 10).  Here again, both Bronfman and Raniere rely almost entirely on a civil RICO case that has no relevance to their motion.  (BBr. 18-19 (citing Reich v. Lopez, 858 F.3d 55, 62 (2d Cir. 2017); RBr. 12-13 (same)).  They also inexplicably focus on "DOS Acts

---

[5]    Bronfman's assertion in connection with this argument that "[o]nly two of the predicate acts contain factual allegations tying the charged conduct to either NXIVM or DOS" (BBr. 17) is irrelevant, insofar as the indictment alleges that the defendants are members and associates of an association-in-fact that is distinct from NXIVM and DOS. (Indictment, DE 50, ¶¶ 1-3).  Bronfman's assertion is also incorrect, insofar as (1) the charged defendants are all members of NXIVM and, in the case of Raniere, Mack and L. Salzman, also members of DOS (¶ 7-13); (2) the "principal purpose" of the charged Enterprise is to "obtain financial and personal benefits for members of the Enterprise by promoting . . . RANIERE . . . and by recruiting new members into the Pyramid Schemes" (¶ 4) – including NXIVM and DOS (¶ 1) – by committing crimes (¶ 6), including the alleged racketeering acts (¶ 16, 17-34); and (3) the victims of the alleged racketeering acts are or were members of one or more of the Pyramid Organizations identified in the indictment, including Nxivm and DOS (¶ 1).

[6]    Raniere styles his argument concerning horizontal relatedness as a challenge to the alleged Enterprise alleged in the Indictment.  (RBr. at 11).  This argument simply ignores the express allegations contained in the Indictment.  (See Indictment ¶¶ 1-16).  The allegations in the Indictment, including those relating to the existence and nature of the Enterprise, must be assumed true at the pleading stage.  See United States v. Finazzo, No. 10-CR-457 (RRM), 2013 WL 619571, at *2 (E.D.N.Y. Feb. 19, 2013).  The Indictment has properly alleged that the Enterprise operated as a "continuing unit that functions with a common purpose," Pierce, 785 F.3d at 835 (internal quotation marks omitted) Ind. ¶ 3), and nothing more is required.

and Non-DOS Acts" (BBr. 18; RBr. 13) and Nxivm and DOS acts (RBr. 10-12), without

acknowledging that neither DOS nor Nxivm is the charged Enterprise.  The Indictment

plainly alleges how each alleged racketeering act – whether a "DOS Act" or "Non-DOS Act"

– relates to the charged Enterprise (Indictment, DE 50, ¶¶ 1-16) and that is sufficient to

satisfy Rule 7(c).  See, e.g., Polanco, 145 F.3d at 541 ("A predicate act is related to a

different predicate act if each predicate act is related to the enterprise."); Daidone, 471 F.3d

at 375 ("[T]he requirements of horizontal relatedness can be established by linking each

predicate act to the enterprise, although the same or similar proof may also establish vertical

relatedness."); Coppola, 671 F.3d at 243–44.[7]

　　　　　Finally, Bronfman's assertion that the alleged racketeering acts do not

"resemble each other in any relevant respect" (BBr. 18) is simply wrong.  They plainly do,

insofar as they serve the alleged purpose of the Enterprise, they involve the alleged means

and methods of the Enterprise, and they involve the members of the charged Enterprise.  See

Burden, 600 F.3d at 216 (relatedness is satisfied "by linking each predicate act to the

enterprise.  This is because predicate crimes will share common goals . . . and common

victims . . . and will draw their participants from the same pool of associates (those who are

---

[7]　　　The defendants' assertion that this case law is inapplicable because the alleged
enterprise is "a legitimate non-criminal association" (RBr. 13) is premised on their incorrect
assertion that the charged Enterprise is something other than an association-in-fact consisting
of the defendants and others.  The charged enterprise is not Nxivm and not DOS, and there is
nothing in the record – other than defendants' self-serving and unsupported statements – that
the charged enterprise is "a legitimate, non-criminal association."

members and associates of the enterprise).").  And, in any event, "where there are . . .

similarities, such as in participants or purpose, variations in the nature of the racketeering

acts do not mean that there is no RICO pattern as a matter of law."  Eppolito, 543 F.3d at 57.

Indeed, "'[a] criminal enterprise is more, not less, dangerous if it is versatile, flexible, diverse

in its objectives and capabilities.  Versatility, flexibility, and diversity are not inconsistent

with pattern.'"  Id. (quoting United States v. Masters, 924 F.2d 1362, 1367 (7th Cir. 1991));

United States v. Bergrin, 650 F.3d 257, 270-71 (3d Cir. 2011) ("Congress intended for RICO

to apply to individuals who, through involvement in an enterprise, commit any combination

of the many and diverse predicate acts, whether the usual organized crime-type offenses . . . ,

more violent crimes . . . , or more niche crimes.").  In short, "[t]he acts of a criminal

enterprise within the scope of the enterprise's evolving objectives form pattern enough to

satisfy the requirements of the RICO statute."  Masters, 924 F.2d at 1367.[8]

> ### b.   The Government Has Provided Defendants with Additional Information More Than Sufficient to Provide Notice

---

[8]    Bronfman's argument concerning certain defendants' knowledge of "the DOS Acts" is meritless.  With respect to the "scope of what the[] defendants allegedly agreed to" (BBr. 21), Rule 7(c) requires only that the government allege that the defendants agreed to conduct the Enterprise's affairs through a pattern of racketeering activity.  As described above, the government has easily met that standard.  But Bronfman's argument would fail even after trial, because "the government need not prove that a conspirator-defendant agreed with every other conspirator, or knew all the other conspirators, or had full knowledge of all the details of the conspiracy.  All that we require is that the defendant agree to commit the substantive racketeering offense through agreeing to participate in two predicate acts, and that he know the general nature of the conspiracy and that the conspiracy extends beyond his individual role."  United States v. Rastelli, 870 F.2d 822, 828 (2d Cir. 1989) (citations omitted).

In addition to the sufficient allegations in the Indictment, the government has provided the defendants with additional information to put them on "notice of the charge to be met." Stavroulakis, 952 F.2d at 693. For example, on September 13, 2018, the government disclosed the identities of each "Jane Doe" and "John Doe" referenced in the Indictment. Consistent with the "Purposes, Methods and Means of the Enterprise," those victims are former members and associates of one or more of the Pyramid Organizations, family relations of members and associates of one or more of the Pyramid Organizations and/or perceived enemies of the charged Enterprise. Furthermore, the government has provided and continues to provide extensive Rule 16 discovery relating to the RICO conspiracy charge and other charges in the Indictment, including email communications, audio and video recordings, and other records. See, e.g., Stringer, 730 F.3d at 124-25 (holding that government's provision of victim's names to defendant in advance of trial put "beyond question that [defendant] was sufficiently informed to defend against the charges and to be protected against the risk of double jeopardy"); United States v. Price, 443 F. App'x 576, 580 (2d Cir. 2011) (finding indictment sufficient under Rule 7(c) and noting that, "even if [defendant] had been unsure of the individuals and dates in question, the government's disclosures under Federal Rule of Criminal Procedure 16 apprised him of which events were at issue, thus preventing him from being prejudicially surprised." (internal quotation marks omitted)); Yannotti, 541 F.3d at 127 (holding that indictment was sufficient in light of language of the alleged racketeering act itself, the defendant's awareness of "the identities of any victims and co-conspirators, even if that information was not pled in the indictment," together with the discovery provided by the government).

3.      Racketeering Acts One, Two, Four, Five, Six and Ten Are Sufficiently Pleaded

Bronfman and Raniere argue that Racketeering Acts One, Two, Four, Five, Six and Ten are insufficiently pleaded because they do not specify the "underlying offenses" that are cross-referenced in the alleged racketeering acts.  (BBr. 26; RBr. 17).  For example, Racketeering Act One alleges a violation of 18 U.S.C. § 1028(f), which cross-references 8 U.S.C. § 1324(a)(1)(A).  (¶ 17).  Section 1324(a)(1)(A), in turn, has several subsections, which the defendants assert must be identified in the alleged racketeering act to satisfy Rule 7(c).  This argument should also be rejected.

As an initial matter, the defendants fail to acknowledge the elements of a RICO conspiracy.  At trial, the government must prove that a particular defendant "agree[d] to conduct or to participate in the conduct of [an] enterprise's affairs through a pattern of racketeering activity."  United States v. Pizzonia, 577 F.3d 455, 462 (2d Cir. 2009); see also United States v. Zemlyansky, 908 F.3d 1, 11 (2d Cir. 2018).  "[T]he agreement proscribed by section 1962(d) is a conspiracy to participate in a charged enterprise's affairs through a pattern of racketeering, not a conspiracy to commit predicate acts."  See, e.g., Pizzonia, 577 F.3d at 463 (internal quotation marks and alternations omitted); see also Salinas, 522 U.S. at 61-66; United States v. Applins, 637 F.3d 59, 77 (2d Cir. 2011).  The cross-referenced statutes are not elements of a RICO conspiracy, which requires only that "a defendant . . . know of, and agree to, the general criminal objective of a jointly undertaken scheme." Yannotti, 541 F.3d at 122.

It is well settled that to satisfy Rule 7(c) as to a RICO conspiracy charge, the government is not required to identify specific predicate acts, nor is the government required to prove at trial that any of the racketeering acts were committed. As the Seventh Circuit explained in its seminal decision concerning RICO conspiracy:

> to list adequately the elements of section 1962(d), an indictment need only charge—after identifying a proper enterprise and the defendant's association with that enterprise—that the defendant knowingly joined a conspiracy the objective of which was to operate that enterprise through an identified pattern of racketeering activity (here, the "pattern" being multiple acts of bribery prohibited by specified provisions of the Illinois criminal code). Neither overt acts nor specific predicate acts that the defendant agreed personally to commit need be alleged or proved for a section 1962(d) offense.

United States v. Glecier, 923 F.2d 496, 500 (7th Cir. 1991) (citations omitted); see also Applins, 637 F.3d at 81 (adopting Seventh Circuit's rationale in Glecier); Yannotti, 541 F.3d at 122; United States v. Ciccone, 312 F.3d 535 (2d Cir. 2002) ("a conspirator charged with racketeering conspiracy need not commit or even agree to commit the predicate acts that are elements of a substantive count to be found guilty of the racketeering conspiracy, for it suffices that he adopted the goal of furthering or facilitating the criminal endeavor" (internal quotation marks and alterations omitted)). In accordance with this standard, a jury need only be instructed that they must be "unanim[ous] as to the types of predicate racketeering acts that the defendants agreed to commit without requiring a finding of specific predicate acts." Applins, 637 F.3d at 82 (emphasis added).

This Court's application of these principles in addressing the motion to dismiss in United States v. Bronson, No. 05-CR-714 (NGG), 2007 WL 2455138, at *2

(E.D.N.Y. Aug. 23, 2007), is illustrative.  In <u>Bronson</u>, the government alleged that the

defendant conspired with "other members and associates of [La Cosa Nostra]" to conduct the

affairs of the charged enterprise

> through a pattern of racketeering activity consisting of multiple acts indictable under the following provisions of federal law:
>
> a. Title 18, United States Code, Section 1512 (witness tampering);
>
> b. Title 18, United States Code, Section 1503 (obstruction of justice);
>
> c. Title 18, United States Code, Section 1513 (retaliation against a witness or informant);
>
> d. Title 18, United States Code, Section 1510 (obstruction of a criminal investigation); and
>
> e. Title 18, United States Code, Section 201 (bribery); and
>
> acts involving extortion, in violation of New York Penal Law, Section 155.35.

<u>United States v. Bronson</u>, No. 05-CR-714 (NGG), 2006 WL 5048046 (superseding

indictment).  This Court properly rejected Bronson's argument that the government was

required to allege these predicate acts with more specificity.  This Court concluded that the

indictment satisfied "constitutional pleading requirements" because, as here, the indictment

"identifie[d] a proper enterprise, name[d] [the defendant] as someone who was 'employed by

and associated with' that enterprise, and 'expressly allege[d]' that [the defendant] knowingly

and intentionally conspired to violate 18 U.S.C. § 1962(c)" and "specifie[d] the time period

during which the conspiracy operated."  <u>Bronson</u>, 2007 WL 2455138, at *3.  <u>Bronson</u> makes

clear, in other words, that the government is permitted to identify the alleged predicate acts "by a general label and statutory citation."[9]  (BBr. 33).

From Bronson and similar cases, it follows that Bronfman's argument fails. See also United States v. D'Amico, 734 F. Supp. 2d 321, 332-35 (S.D.N.Y. 2010) (denying motion to dismiss RICO conspiracy charge on grounds similar to Bronson).[10]  The allegations in the Indictment go beyond the requirement that the government identify the "types" of predicates to which the defendants agreed, as in Bronson.  As noted above, the government has also disclosed the names of the victims of the alleged predicate crimes – identified as "John Does" and "Jane Does" in the Indictment – and provided Rule 16 discovery concerning the charged crimes and alleged acts.  See id. (acknowledging ongoing

---

[9]    For example, 18 U.S.C. § 1512 sets forth more than 20 offense subsections with varying elements, none of which were identified in the Bronson indictment. Although the Bronson indictment noted one particular murder that likely fell within the scope of § 1512, this fact alleged in the indictment in no way limited the scope of the conspiracy the government intended – or was permitted by law – to prove.  See 2006 WL 5048046 ¶ 12.c (identifying murder and also explaining that, as part of the charged conspiracy, "[i]ndividuals suspected of cooperating were regularly threatened, assaulted or killed").

[10]    See also United States v. Booth, No. 2:08-CR-00283-RCJ, 2011 WL 6139062, at *7 (D. Nev. Dec. 9, 2011) (rejecting motion to dismiss RICO conspiracy count alleging that the "pattern of racketeering activity through which the defendants agreed to conduct the affairs of the enterprise consisted of multiple acts involving murder, in violation of Nevada Revised Statutes, Sections 195.020 (aiding and abetting), 199.480 (conspiracy), 200.030 (murder) and 193.330 (attempted murder); extortion, in violation of Nevada Revised Statutes, Section 205.320; acts indictable under Title 18, United States Code, Section 1951 (interference with commerce by robbery and extortion); and offenses involving the felonious manufacturing, importation, receiving, concealment, buying, selling and otherwise dealing in a controlled substance, in violation of Title 21, United States Code, Sections 841, 846 and 856." (indictment available at 2012 WL 1386215)).

discovery, which also "serve[s] to apprise [defendants] of the nature of the charges, allow[s] [them] to prepare a defense, and alert[s them] to any double jeopardy issues"). The fact that several of the Racketeering Acts are divided into sub-predicates also provides additional information about the various schemes and courses of conduct underlying the government's theory. In light of the above-cited case law, there is no legal support for the argument that the government is required to allege subparagraphs or elements of the federal statutes that are cross-referenced in the alleged Racketeering Acts, or identify with any additional particularly the alleged unlawful activity.

As with Bronfman's other arguments, she cites no case in any Circuit to the contrary. Bronfman devotes several pages of her brief to describing <u>United States v. Thompson</u>, 141 F. Supp. 3d 188 (E.D.N.Y. 2015), <u>United States v. Awan</u>, 459 F. Supp. 2d 167 (E.D.N.Y. 2006), and <u>United States v. Dupree</u>, 870 F.3d 62 (2d Cir. 2017), but none of those cases involve a RICO conspiracy charge and none are relevant to this Court's analysis of the instant motion. Bronfman has not identified a case in any district that has reached the conclusion she urges on the Court, because her argument is inconsistent with basic principles of criminal procedure, inconsistent with the RICO statute, and foreclosed by precedent in this Circuit. The allegations in Racketeering Acts One, Two, Four, Five, Six and Ten are sufficient to provide notice to the defendants and to satisfy Rule 7(c), and the Court should reject this argument.

> 4. <u>Racketeering Acts Seven, Nine-A and Nine-B Are Sufficiently Pleaded</u>

L. Salzman argues that (1) Racketeering Acts Seven and Nine-A – alleging New York State law extortion – are subject to a "heightened pleading standard" set forth in

Russell v. United States, 369 U.S. 749 (1962) (LSBr. 10); and (2) Racketeering Act Nine-B – alleging forced labor of Jane Doe 6 – fails to allege "what acts the defendant committed that violated the statute."  (LSBr. 17).  The above-cited cases make clear that these arguments are also without merit.

Like Bronfman, L. Salzman relies on criminal cases that do not concern RICO conspiracy charges,[11] civil cases[12] and cases on appeal from a jury verdict,[13] none of which are relevant to this Court's analysis of an alleged racketeering act at the motion to dismiss stage of a criminal case.  Like Bronfman, L. Salzman fails to cite a case in any circuit granting the remedy she requests as to a racketeering act alleged in connection with a RICO conspiracy charge.  And also like Bronfman, L. Salzman's argument fails because, at trial, the government must prove only that the defendant "agree[d] to conduct or to participate in the conduct of [an] enterprise's affairs through a pattern of racketeering activity."  Pizzonia, 577 F.3d at 462.  In other words, the elements of an alleged racketeering act are not "essential elements" (LSBr. 13) of a RICO conspiracy and the government is not required to

---

[11]    See, e.g., LSBr. 12 (citing, inter alia, United Sates v. Urso, 369 F. Supp. 2d 254, 266 (E.D.N.Y. 2005)); 13 (citing United States v. Kramer, 499 F. Supp. 2d 300, 305-06 (E.D.N.Y. 2007) and United States v. Berlin, 472 F.2d 1002, 1008-09 (2d Cir. 1979)); 14 (citing Sira v. Morton, 380 F.3d 57, 73 (2d Cir. 2004) and United States v. Thomasetta, 429 F.2d 978 (2d Cir. 1970)).

[12]    See, e.g., LSBr. 16 (citing Adia v. Grandeur Mgmt, Inc., 2018 WL 4300528, at *3 (S.D.N.Y. Sept. 10, 2018)).

[13]    See, e.g., LSBr. 13 (citing People v. Dioguardi, 8 N.Y.2d 260, 268 (1960)).

prove them, never mind allege them with the particularly sought by L. Salzman.  See Glecier, 923 F.2d at 500 ("Neither overt acts nor specific predicate acts that the defendant agreed personally to commit need be alleged or proved for a section 1962(d) offense.").[14]

The cases L. Salzman relies upon are not to the contrary.  First, she fails to cite a case in any circuit in which a court has understood Russell v. United States to impose a "heightened pleading standard" on racketeering acts that allege "extortion related offenses." (LSBr. 12, 13, 15).  That is unsurprising in light of the above-cited case law, which makes clear that the elements of alleged racketeering acts are not essential elements of a RICO conspiracy charge.  As the district court explained in D'Amico in rejecting defendant's argument that Russell compelled the dismissal of a RICO conspiracy count, "quoting favorable language from higher courts does not make it applicable to the case at bar."  734 F. Supp. 2d at 334 (distinguishing Russell as applied to RICO conspiracy count); see also United States v. Booth, No. 99-CR-378 (LBS), 1999 WL 1192317, at *7 (S.D.N.Y. Dec. 14, 1999) (denying motion to dismiss VCAR charges and explaining that "the term 'enterprise engaged in racketeering activity,' is not a generic term such as that identified in Russell").

---

[14]    This court's analysis in Bronson, described above, also defeats L. Salzman's arguments.  In Bronson, the government alleged a RICO conspiracy, in which the defendants agreed to conduct the affairs of the charged enterprise through, inter alia, "acts involving extortion, in violation of New York Penal Law, Section 155.35."  Bronson, 2006 WL 5048046 (superseding indictment).  No further detail was required in Bronson and none is required here.

L. Salzman's reliance on <u>United States v. Peterson</u>, 544 F. Supp. 2d 1363, 1375 (M.D. Ga. 2008) (LSBr. 17-19), is equally unavailing.  In <u>Peterson</u>, the district court dismissed a standalone § 1589 charge on the ground that the government failed to allege the specific "means of the abuse or threatened abuse of law or legal process" required to secure a conviction under § 1589(a)(3).  <u>See id.</u> at 1373-75.  <u>Peterson</u> does not concern a RICO conspiracy charge, is not binding on this Court and the government is not aware of any other court in any Circuit that has adopted its reasoning.  The latter point is unsurprising, given that <u>Peterson</u>'s reasoning is unpersuasive: it is clear from <u>Peterson</u>'s speculation about the government's eventual evidence at trial, <u>see id.</u> at 1375, that the court ignored its own admonition that the Federal Rules of Criminal Procedure do not "provide for a pre-trial determination of sufficiency of the evidence," <u>id.</u> at 1369.  By contrast, the form of pleading in Racketeering Act Nine-A is consistent with any number of indictments in this and other districts that have survived scrutiny at the district and circuit court levels.  <u>See, e.g.</u>, <u>United States v. Calimlim</u>, 538 F.3d 706, 710 (7th Cir. 2008) (rejecting vagueness and over breath arguments as to § 1589 charge as charged in 2005 WL 4896914 (count two)); <u>United States v. Sou, et al.</u>, No. 09-CR-0345, 2010 WL 4411587 (D.Haw.) (counts four-six); <u>United States v. McTague</u>, No. 14-CR-055, 2017 WL 1378425, at *4 (W.D. Va. Apr. 10, 2017) (quoting from counts two and three, alleging violations of § 1589); <u>United States v. Askarkhodjaev</u>, No. 09-CR-00143, 2010 WL 4038783, at *1-2 (W.D. Mo. Sept. 23, 2010) (quoting counts 3-62), <u>report and recommendation adopted</u>, No. 09-CR-00143, 2010 WL 4038745 (W.D. Mo. Oct. 4, 2010); <u>United States v. Chang</u>, No. 11-CR-0067, 2011 WL 13299860 (E.D.N.Y.) (count two).

L. Salzman's broader point – that Racketeering Acts Seven, Nine-A and Nine-B do not provide her with enough information to mount a defense (LSBr. 9-10) – is meritless in light of the extensive information the government has provided concerning the alleged extortion scheme. The government has provided information about the schemes alleged in Racketeering Acts Seven, Nine-A and Nine-B in in the Raniere Complaint (DE 1), the government's request to detain Raniere (DE 4), and the government's letter setting forth its position on bail as to Bronfman, Russell, and L. and N. Salzman (DE 42). In light of this information, L. Salzman's claim that the government has not "provide[d] even a paltry level of information" is simply wrong. See Walsh, 194 F.3d at 45 ("[A] court may look to the record as a whole in determining whether the defendant is protected from double jeopardy in a subsequent prosecution and whether the defendant has had an adequate opportunity to prepare his defense."). L. Salzman's argument should be rejected.

II.    The Charges in the Indictment Are Not Duplicitous

Bronfman's argument that the RICO conspiracy count is "duplicitous" because it involves "separate [d]efendants," committing crimes "during different time periods" and "in different places" (BBr. 23; see also BBr. 21) is meritless. As the Supreme Court has explained, "Congress drafted RICO broadly enough to encompass a wide range of criminal activity, taking many different forms and likely to attract a broad array of perpetrators operating in many different ways." H.J. Inc., 492 U.S. at 248–49. Bronfman again improperly focuses on the individual racketeering acts, rather than on the RICO charge as a whole, ignores the paragraphs that expressly allege the purpose, methods and means of the charged enterprise, and fails to cite a case in any circuit in which a court has determined that

34

a RICO conspiracy charge is duplicitous on the pleadings.  The Court should reject this argument.

Raniere similarly argues that the sex trafficking allegations in Counts Four Five, Six and Racketeering Act Eight-A are duplicitous because they "charge[] both subsections of Section 1591(a) in a single Count or Act" (RBr. 14).  It is well settled, however, that a single count may allege "the commission of a crime by several means." United States v. Aracri, 968 F.2d 1512, 1518 (2d Cir. 1992) (quoting United States v. Murray, 618 F.2d 892, 896 (2d Cir. 1980)).  The Court should also reject this argument.

A.    Applicable Law

"An indictment is duplicitous if it joins two or more distinct crimes in a single count."  Aracri, 968 F.2d at 1518.  An indictment is not duplicitous if a single count alleges "commission of a crime by several means."  Id. (internal quotation marks omitted). Moreover, "acts that could be charged as separate counts of an indictment may instead be charged in a single count if those acts could be characterized as a part of a single continuing scheme."  United States v. Olmeda, 461 F.3d 271, 281 (2d Cir. 2006).  With respect to conspiracy charges, "in this Circuit it is well established that the allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for the conspiracy is the crime and that is one, however diverse its objects."  Aracri, 968 F.2d at 1518 (internal quotation marks and alterations omitted).

The Second Circuit has explained that the "policy considerations" underlying the "duplicity" doctrine

35

> include avoiding the uncertainty of whether a general verdict of guilty conceals a finding of guilty as to one crime and a finding of not guilty as to another, avoiding the risk that the jurors may not have been unanimous as to any one of the crimes charged, assuring the defendant adequate notice, providing the basis for appropriate sentencing, and protecting against double jeopardy in a subsequent prosecution.

Id. (quoting United States v. Margiotta, 646 F.2d 729, 733 (2d Cir. 1981)).  A count of an indictment is only impermissibly duplicitous when the policy goals underlying this doctrine are offended, i.e., "if a general verdict of guilty might actually conceal contrary findings as to different alleged crimes, or if an appropriate basis for sentencing is not provided." Margiotta, 646 F.2d at 732-33.

"Duplicity, of course, is only a pleading rule and would in no event be fatal to the count."  United States v. Droms, 566 F.2d 361, 363 (2d Cir. 1977).  Rather, "[prior to a defendant's conviction, . . . the government [can] elect to proceed based upon only one of the distinct crimes included within a duplicitous count, . . . or [the court can give] a jury instruction that ensures that the jury is unanimous as to the conduct underlying the conviction."  United States v. Sturdivant, 244 F.3d 71, 79 (2d Cir. 2001) (internal citations omitted).

The duplicity argument is infrequently made in the RICO context, likely because, as the Supreme Court made clear nearly 20 years ago in Salinas, a racketeering conspiracy is not a conspiracy to commit the alleged predicate acts but rather a conspiracy to participate in the affairs of an enterprise through a pattern of racketeering activity, and thus to agree to further the overall objective of the enterprise.  See 522 U.S. at 65 ("A conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a

substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating

the criminal endeavor.  He may do so in any number of ways short of agreeing to undertake

all of the acts necessary for the crime's completion.").  A RICO conspiracy may therefore be

predicated on acts of racketeering that are themselves conspiracies because the RICO

conspiracy and the predicate conspiracies are distinct offenses with different objectives.  See,

e.g., United States v. Ruggiero, 726 F.2d 913, 923 (2d Cir. 1984) (holding that RICO

conspiracy does not "violate the principle of Kotteakos v. United States, 328 U.S. 750

(1946)), which prohibits conviction of multiple conspiracies under an indictment charging a

single conspiracy"), abrogated on other grounds by Salinas, 522 U.S. at 61-64.[15]

B.    Discussion

1.    Count One Is Not Duplicitous

The core of Bronfman's duplicity argument – that Count One must be

dismissed because it charges "more than one 'enterprise' and more than one 'type' of

racketeering activity (BBr. 22) – is frivolous and relies on the same strained reading of the

Indictment as her "relatedness" argument, above.  It too should be rejected.

---

[15]    In United States v. Diecidue, the Fifth Circuit rejected a duplicity challenge
because the various offenses alleged as part of the RICO conspiracy were "merely
descriptive of the single overall agreement" to conduct and participate in the conduct of the
affairs of an enterprise through a pattern of racketeering activity.  603 F.2d 535, 546 (5th Cir.
1979); see also United States v. Gonzalez, 921 F.2d 1530, 1536 (11th Cir. 1991) (concluding
that "Congress intended RICO and its predicate crimes to be separate offenses and allow
successive prosecutions"); United States v. Esposito, 912 F.2d 60, 64-65 (3d Cir. 1990)
(holding that where defendant had been acquitted on a RICO charge, double jeopardy did not
bar a subsequent prosecution for the underlying predicate acts).

As an initial matter, the Second Circuit has "consistently held" that "the question whether one or multiple conspiracies are present is a question of fact, to be resolved by a properly instructed jury." United States v. Orozco-Prada, 732 F.2d 1076, 1086 (2d Cir. 1984); United States v. Biaggi, 672 F. Supp. 112, 122 (S.D.N.Y. 1987). And, even where a duplicity problem exists, there is no support in the law for dismissal of the charge. Any such pleading deficiency can be solved "by the use of a special verdict with adequate jury instructions." United States v. Biaggi, 675 F. Supp. 790, 799 (S.D.N.Y. 1987); see also Sturdivant, 244 F.3d at 79 (explaining that duplicity does not require dismissal of an indictment, and noting remedies available to address duplicity, including appropriate jury instructions to ensure jury unanimity regarding the underlying conduct); United States v. Droms, 566 F.2d 361, 363 n.1 (2d Cir. 1977) ("Duplicity, of course, is only a pleading rule and would in no event be fatal to the count."); United States v. Huber, 603 F.2d 387, 394 (2d Cir. 1979) (special verdict form cured any potential duplicity in RICO count, which "charged a series of acts through a number of entities"); United States v. Abakporo, 959 F. Supp. 2d 382, 391 (S.D.N.Y. 2013) ("[B]ecause duplicity is a pleading rule, a duplicitous count is not fatal where the charges can be reformulated."); United States v. Mercado, No. 3:04-CR-166 (SRU), 2005 WL 2850158, at *1 (D. Conn. Oct. 26, 2005) (declining to resolve duplicity issue prior to trial because "a court may use a jury instruction to ensure that the jury is unanimous with respect to the particular conduct underlying the conviction" and "[a] special verdict may also be used to avoid potential prejudice"); United States v. Stolfi, No. 88-CR-53 (MBM), 1988 WL 47354, at *2 (S.D.N.Y. May 13, 1988) (same). Bronfman's motion thus should be denied.

38

In any event, it is plain from the face of the Indictment that Count One charges a single enterprise (Indictment, ¶¶ 1-3), which the government must prove beyond a reasonable doubt at trial. Count One also properly charges the only "type" of racketeering activity permitted by the RICO statute, namely, acts identified in 18 U.S.C. § 1961(1) (¶¶ 17-34). Contrary to Bronfman's argument, RICO imposes no requirement that alleged racketeering acts be similar in nature, only that they "are related to the RICO enterprise in such a way that they become indirectly connected to each other." United States v. Locascio, 6 F.3d 924, 943 (2d Cir. 1993).

The face of the Indictment also refutes Bronfman's disingenuous assertion that the government has failed to allege a "common purpose" uniting the alleged racketeering acts. (BBr. 23). To the contrary, Count One includes a sub-section entitled "Purposes, Method and Means of the Enterprise" in which the Indictment expressly alleges the "common purpose" that unites the alleged predicates. (¶¶ 4-6). This is plainly sufficient to avoid a duplicitous pleading. See, e.g., Stolfi, 1988 WL 47354, at *1 ("[A] RICO count may allege individual racketeering acts of more than one kind without being duplicitous. The statute itself, by enumerating diverse kinds of illegal acts that may constitute elements of the 'pattern' supports that conclusion." (citation omitted)).

The major premise of Bronfman's argument evinces a misunderstanding of the RICO statute and is contrary to well-settled law. "Courts have repeatedly recognized that schemes that might ordinarily constitute different criminal conspiracies are properly joined in a RICO enterprise offense, provided those schemes are sufficiently 'related' under the statute." United States v. Ali, No. 04-CR-611, 2005 WL 2989728, at *1 (E.D. Pa. Aug. 19,

2005).   As the Second Circuit has explained, "there is no requirement that each member of a conspiracy conspire directly with every other member of the conspiracy. This is especially true with respect to a RICO conspiracy." United States v. Friedman, 854 F.2d 535, 562–63 (2d Cir. 1988).  "Under RICO it is irrelevant whether 'each defendant participated in the enterprise's affairs through different, even unrelated crimes, so long as we may reasonably infer that each crime was intended to further the enterprise's affairs.'" Id. (quoting United States v. Stratton, 649 F.2d 1066, 1074 (5th Cir. 1981).  "So long as the alleged RICO co-conspirators have agreed to participate in the affairs of the same enterprise, the mere fact that they do not conspire directly with each other 'does not convert the single agreement to conduct the affairs of an enterprise through a pattern of racketeering activity into multiple conspiracies.'" Id. (quoting United States v. Persico, 621 F. Supp. 842, 856 (S.D.N.Y. 1985)).  Contrary to Bronfman's assertion that the involvement of different defendants in different acts is relevant to her motion to dismiss (BBr. 22-23), it follows from this well-settled law that "each defendant need not be charged in each act." Stolfi, 1988 WL 47354, at *1.

These cases make clear that Bronfman's reliance on Kotteakos, 328 U.S. 750, and United States v. Swafford, 512 F.3d 833 (6th Cir. 2008) (applying Kotteakos), is misplaced.  (BBr. 23-24, 26.).  Kotteakos and Swafford were decided on direct appeal following a jury verdict and for that reason alone they are inapposite to a pre-trial motion to dismiss.  In any event, the rationale of Kotteakos (as applied in Swafford) is inapposite because Kotteakos "arose under the general conspiracy statute, 18 U.S.C. § 371, while this case is brought under RICO.  A RICO conspiracy is substantially broader than an ordinary

40

§ 371 conspiracy." Persico, 621 F. Supp. at 856; accord Friedman, 854 F.2d at 562; Ruggiero, 726 F.2d 913; Biaggi, 672 F. Supp. at 122 (holding that the claim "that the Government actually is alleging multiple conspiracies that are misjoined, under cover of a single alleged [RICO] conspiracy . . . is refuted by our . . . holding in United States v. Ruggiero").

Her minor premises are also flawed. Although Bronfman is surely correct that "obtain[ing] financial and personal benefits," as alleged in paragraph four of the Indictment, is a "permissible lawful goal" of legitimate business (BBr. 23), it is decidedly not a permissible or lawful goal of an enterprise when pursued through an agreed-upon pattern of racketeering activity, as charged in the Indictment. Indeed, as the Court is aware, the pursuit of financial and personal benefits is the purpose of a great many criminal RICO indictments. See, e.g., United States v. Basciano, No. 03-CR-0929 (NGG) (Sept. 29, 2006) (DE 604 (superseding indictment) ("The principal purpose of the Bonanno family was to generate money for its members and associates. . . . the members and associates at times used the resources of the Bonanno family to settle personal grievances and vendettas.")).[16]

Because the RICO conspiracy charge is properly pleaded, it follows that it is not duplicitous. See United States v. Garcia, No. 11-CR-68 (EJL), 2012 WL 6623984, at *6 (D. Idaho Dec. 19, 2012) (finding that RICO count was not duplicitous because it alleged the

---

[16]    Here again Bronfman relies on a civil RICO case, which has no relevance to her motion. (BBr. at 23 (relying on Cohen v. Cohen, 993 F. Supp. 2d 414, 426 (S.D.N.Y. 2014)).

defendants agreed to conduct affairs of the enterprise through a pattern of racketeering activity and rejecting duplicitousness argument as an "offshoot" to defendants' failed "relatedness" and "continuity" arguments); United States v. Moore, 811 F. Supp. 112, 115 (W.D.N.Y. 1992) (holding that where, as here, the RICO conspiracy charge "properly describes certain acts which constitute a pattern of racketeering activity alleged to serve a common goal of the alleged illegal enterprise," the charge is not duplicitous). If, at the close of the government's case, Bronfman believes the government has not met its burden to prove that the defendants agreed to participate in the affairs of an association-in-fact enterprise through a pattern of racketeering acts, she may move for acquittal or so argue to the jury. There is no legal support for her motion to dismiss the Indictment on this ground and it should be rejected.

        2.     <u>Racketeering Acts Four, Five, Six and Eight-A Are Not Duplicitous</u>

Raniere argues that Counts Four (Sex Trafficking Conspiracy), Five (Sex Trafficking), Six (Attempted Sex Trafficking) and Racketeering Act Eight-A (Sex Trafficking) are duplicitous because each "charge[s] both subsections of Section 1591(a) in a single Count or Act." (RBr. 14). Raniere is incorrect. Subparagraphs (a)(1) and (a)(2) of § 1591 provide two different ways to violate the statue, not two different offenses and it is therefore not improper that the government allege them together in the same racketeering act. See, e.g., United States v. Paul, 885 F.3d 1099, 1104 (8th Cir. 2018) (noting that subparagraphs if § 1591(a) "are in fact alternative ways of committing a single offense"); Nyuon v. United States, No. 4:16-CV-04010-KES, 2017 WL 1507450, at *7 (D.S.D. Apr. 27, 2017) ("Sex trafficking of a child under 18 U.S.C. § 1591 merely enumerates more than

one way of committing the offense, which does not raise duplicity concerns"); United States v. King, 713 F. Supp. 2d 1207, 1218 (D. Haw. 2010) (same); United States v. Powell, No. 04-CR-885, 2006 WL 1155947, at *1 (N.D. Ill. Apr. 28, 2006) (same).  At trial, the jury need not unanimously agree on which of the two alleged means the particular defendant employed, so long as each juror finds the particular defendant used at least one.[17]  See Schad v. Arizona, 501 U.S. 624, 631 (1991) (rejecting the proposition that "whenever a statute lists alternative means of committing a crime, 'the jury [must] indicate on which of the alternatives it has based the defendant's guilt'" (citation omitted) (alteration in original)); United States v. McIntosh, 753 F.3d 388, 393 (2d Cir. 2014) (same, citing Schad); United States v. Gonzalez, No. 00-CR-447 (DLC), 2002 WL 77082, at *4 (S.D.N.Y. Jan. 22, 2002) (There is no requirement that "in returning general verdicts . . . jurors should be required to agree upon a single means of commission.").  Raniere's argument should be rejected.

---

[17]    The alternative would be to break the two separate means of committing a § 1591 violation into separate charges, which "would result in numerous charges and expose the defendant to harsher penalties and guideline calculations."  United States v. Powell, No. 15-CR-244 (RAJ), 2016 WL 524251, at *4 (W.D. Wash. Feb. 10, 2016) (finding that charge alleging different ways to commit § 1591 violation not duplicitous and rejecting defendant's contrary suggestion as "nonsensical"); see also United States v. Walker, 254 F. App'x 60, 62 (2d Cir. 2007) ("The law does not, after all, absolutely proscribe duplicitous pleading because it recognizes that such an inflexible rule could inure to defendants' detriment by requiring exposure to cumulative punishments." (internal quotation marks and alteration omitted)).

III.    Racketeering Acts Seven and Nine-B Are Not Multiplicitous

        L. Salzman's argument that Racketeering Acts Seven and Nine-B are

multiplicitous (LSBr. 19) is frivolous and should be rejected.  The case law makes

abundantly clear that (1) multiplicity applies only to counts, not racketeering acts and (2) is

not a pleading defect and should not be addressed until the defendant has been convicted.

    A.    Applicable Law

        "An indictment is multiplicitous if it charges the same crime in two counts."

United States v. Ansaldi, 372 F.3d 118, 124 (2d Cir. 2004) (internal quotation marks

omitted).  The constitutional concern is not with the charging document, however, but rather

with the risk that the defendant charged with multiplicitous offenses will be sentenced for the

same offense twice.  As the Second Circuit has explained, "the Double Jeopardy Clause does

not protect against simultaneous prosecutions for the same offense, so long as no more than

one punishment is eventually imposed."  United States v. Josephberg, 459 F.3d 350, 355 (2d

Cir. 2006).

> If the jury convicts on no more than one of the multiplicitous
> counts, there has been no violation of the defendant's right to be
> free from double jeopardy, for he will suffer no more than one
> punishment.  If the jury convicts on more than one
> multiplicitous count, the defendant's right not to suffer multiple
> punishments for the same offense will be protected by having
> the court enter judgment on only one of the multiplicitous
> counts.

Id.  Because multiplicity does not present a constitutional infirmity unless a defendant is

punished for the same crime twice, it is not an issue that can be addressed in a pre-trial

motion.  See id. at 356 (reversing district court's pretrial decision to dismiss a count as

44

mulitplicitous with instructions to the district court to "revisit the question of multiplicity" only if the jury convicts the defendant of more than one of the multiplicitous counts).

B.    Discussion

The multiplicity analysis is premature and, in any event, irrelevant to Racketeering Acts Seven and Nine-B.  First, the above-cited case law makes clear that (1) the constitutional defect of multiplicity cannot be assessed until the jury has rendered its verdict; and (2) a defendant is not prejudiced by multiplicity unless and until he receives separate punishments for multiplicitious crimes.  L. Salzman cannot have suffered the harm attendant to multiplicity prior to trial, and therefore multiplicity is not the proper subject of a Rule 12(b) pre-trial motion.  Indeed, L. Salzman relies primarily on cases decided after trial[18] and fails to cite any case in which a count – never mind a racketeering act – is dismissed before trial as multiplicitous.[19]

---

[18]    See, e.g., LSBr. 19 (United States v. Reed, 639 F.2d 896, 899 (2d Cir. 1981) ("Appellants were convicted after a jury trial…."); People v. Vangorden, 147 A.D.3d 1436, 46 N.Y.S.3d 730 (N.Y. App. Div.), leave to appeal denied, 29 N.Y.3d 1037, 84 N.E.3d 978 (2017) ("Appeal from a judgment . . . upon a jury verdict…."); 21 (United States v. Husain, 244 F.3d 133 (5th Cir. 2000) (unpublished summary order) ("[Defendant] contends that his Fifth Amendment right to be free from double jeopardy was violated by his convictions for both possessing and transferring the same machineguns.").

[19]    See, e.g., LSBr. 20 (United States v. Carrozza, 728 F. Supp. 266, 274 (S.D.N.Y. 1990) (denying motion to dismiss any of five charged conspiracies); United States v. Nguyen, No. 13-CR-6044L, 2014 WL 1512030, at *14 (W.D.N.Y. Apr. 7, 2014) ("In any event, double jeopardy concerns implicated by multiplicitous counts do not arise unless a defendant is actually convicted of, rather than charged with, multiplicitous counts."), report and recommendation adopted, No. 13-CR-6044L, 2014 WL 1795045 (W.D.N.Y. May 6, 2014); United States v. Harris, 805 F. Supp. 166, 175 (S.D.N.Y. 1992) (denying pretrial motion to dismiss counts).

Moreover, multiplicity analysis does not apply as a matter of law to the challenged racketeering acts. Any punishment the Court may impose on L. Salzman as to Count One will be the result of her commission of the offense of RICO conspiracy, not her commission of racketeering acts, which are not elements of RICO conspiracy and which the government need not prove to convict her of RICO conspiracy. This Sentencing Guidelines for RICO conspiracy make this clear. See U.S.S.G. § 2E1.1. The Guidelines provide that the base offense level for a RICO conspiracy is 19 or the "offense level applicable to the underlying racketeering activity." Id. § 2E1.1(a)(2). So if a jury finds that a defendant agreed that the enterprise would be conducted through pattern involving three racketeering acts, two of which represented the same crime, the advisory Guidelines range of imprisonment would be based only on the highest offense level corresponding to the three racketeering acts. In other words, even where two of the three acts constitute the same crime, the Guidelines recommend a single punishment based on just one of those acts, thereby avoiding the problem posed by multiplicitous counts.

This is not to say that L. Salzman is without a remedy for racketeering acts that in fact allege the same crime. If the jury were to find that the defendant agreed to conduct the affairs of the enterprise through two racketeering predicates that are in fact the same crime, the government would have failed to prove the pattern element of a RICO conspiracy. See 18 U.S.C. § 1961(5) (requiring for a substantive RICO conviction – which it the object of a RICO conspiracy – "at least two acts of racketeering activity"). The defendant may of course argue the government's failure to meet its burden to the jury and may raise the alleged deficiency in a motion for acquittal under Rule 29. By contrast, if the

46

jury were to conclude that the defendant agreed to participate in the affairs of the enterprise through at least two acts that are not the same crime, this argument will be moot.  See, e.g., United States v. Gallo, No. 86-CR-452(S)(JBW), 1987 WL 16128, at *3 (E.D.N.Y. Mar. 6, 1987) ("This issue is not ripe for determination because, as indicated above, as charged in the indictment the acts constitute separate offenses. Because each of the three defendants is also charged with commission of two other predicate offenses the issue may never arise, since each defendant's conviction of one of the other predicate offenses would moot the question.").  Accordingly, Salzman's request to dismiss Racketeering Act Nine-B should be denied.[20]

## IV.    Bronfman's Vagueness Challenge Is Premature

Bronfman argues that Count One is unconstitutionally vague.  (BBr. 36).  This argument is both premature and, as she concedes, contrary to established law.  Because Bronfman raises no conceivable First Amendment concern, any vagueness challenge she raises "must be considered in light of the facts of the particular case."  United States v. Coiro, 922 F.2d 1008, 1017 (2d Cir. 1991).  That, of course, cannot be done until there is a trial record from which to draw the as-applied facts.  See, e.g., United States v. Ford, No. 3:14-CR-00045-1-HZ, 2016 WL 4443171, at *14 (D. Or. Aug. 22, 2016) ("[Defendant] must wait

----

[20]    In any event, the government expects that this issue will be rendered moot when the government presents a superseding indictment to the grand jury in this case.  The government anticipates that current Racketeering Act Seven will be revised in the superseding indictment to name one or more Jane Does in place of "lower level DOS members," and will allege the New York States law extortion of each Jane Doe as a separate predicate act.

to bring an as-applied vagueness challenge until the facts have been established by evidence introduced [at] trial and the fact-finder has had an opportunity to weigh in."); United States v. Reyes, No. CR06-00556CRB, 2007 WL 831808, at *8 (N.D. Cal. Mar. 16, 2007) (same). In any event, as Bronfman acknowledges, the Second Circuit has repeatedly rejected vagueness challenges to the RICO statute. See, e.g., Burden, 600 F.3d at 228 (collecting cases); Coiro, 922 F.2d at 1016 (collecting cases). This argument should be rejected.

V.      Counts Two, Four, Five and Six Are Properly Alleged

Mack seeks to dismiss Count Two of the Indictment, charging Raniere, Mack, and Lauren Salzman with forced labor conspiracy, and Counts Four, Five, and Six of the Indictment, charging Raniere and Mack with sex trafficking, sex trafficking conspiracy, and attempted sex trafficking, all in connection with the defendants' participation in DOS. Mack argues that the charging language in these counts is deficient and, alternatively, argues that the forced labor and sex trafficking counts should be dismissed for failure to state a claim. None of these arguments have merit.

Mack first claims that the forced labor count does not identify with specificity the "lower-ranking DOS members" it references and provides insufficient notice of the "labor and services" that the lower-ranking DOS members were required to perform. (Mack Brief (hereinafter "AMBr.") 8-9.) Similarly, she contends that Count Four, alleging sex trafficking conspiracy, "identifies no alleged victims" and provides no "specificity as to the nature of the threats, how and when they were communicated, and by whom." (AMBr. at 10.) These arguments are without merit because "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms)

48

of the alleged crimes." Alfonso, 143 F.3d at 776 (quoting Stavroulakis, 952 F.2d at 693 (2d Cir. 1992) (internal quotation marks omitted)).  The Complaint and the detention letters filed in this case set out the factual basis for the allegations relating to forced labor and sex trafficking in detail, including reference to statements by witnesses and specific electronic communications.  In addition, the defendants have been provided with ample discovery relating to these counts, including the names of victims and co-conspirators.  No additional detail is necessary in the Indictment.  See Yannotti, 541 F.3d at 127.

Mack's repeated claims that she is "left to guess" at the nature of the charges against her, (AMBr. 8-11), ring particularly hollow given her subsequent argument that the description of the facts proffered by the government, if assumed true, fail to state a claim.

A.    The Indictment Properly Alleges Forced Labor Conspiracy (Count Two)

First, Mack contends that Count Two fails to allege a forced labor conspiracy because the "labor and services" rendered by DOS "slaves" as alleged in the Complaint is not the type of labor contemplated by the forced labor statute.  (AMBr. 12-17.)  This

argument finds no support in either the statute or the case law.[21]   Courts have consistently

held that "labor and services" need not be "work in an economic sense."   See, e.g., United

States v. Kaufman, 546 F.3d 1242, 1260-61 (10th Cir. 2008) (upholding jury instructions

defining "labor" as "the expenditure of physical or mental effort" and "services' as "conduct

or performance that assists or benefits someone or something"); United States v. Marcus, 487

F. Supp. 2d 289, 300 (E.D.N.Y. 2007) (relying on the ordinary meaning of the terms "labor"

and "services" and defining "labor" as "an expenditure of physical or mental effort especially

when fatiguing, difficult, or compulsory" and "services" as "useful labor that does not

produce a tangible commodity").   Even if it did, the information provided in the Complaint

does not constitute a full proffer of the evidence the government expects to present at trial

and any challenge into the sufficiency of the evidence is not appropriately addressed on a

pretrial motion to dismiss the indictment.   See Alfonso, 143 F.3d at 776-77 (reversing district

--------------------

[21]   The two cases that Mack cites are entirely inapposite.   In United States v.
Toviave, the Sixth Circuit held—after the defendant had been convicted of a violation of 18
U.S.C. § 1589 at trial—that the forced labor statute "did not extend to requiring one's
children to do their homework, babysit on occasion, and do household chores."  761 F.3d
623, 625 (6th Cir. 2014).   While acknowledging that the "tasks assigned to the child . . . are
'labor' in the economic sense of the word: one could, and people often do, pay employees to
perform these types of domestic tasks," the Court held that "it has always been true that
parents can make their children perform this kind of work," taking it outside the ambit of the
forced labor statute.   Id.   The other case Mack cites, a district court case from Arizona,
dismisses a civil lawsuit by a Boeing employee alleging forced labor when "his presence was
required at an office for eight hours a day."  Petersen v. Boeing Co., No. CV-10-00999-PHX-
ROS, 2015 WL 12090213, at *7 (D. Ariz. Feb. 18, 2015).   Neither of these cases have any
bearing to Mack's challenge to the sufficiency of the factual allegations underlying Count
Two.

court's dismissal of indictment where the government has not made a full proffer of the evidence it intended to present at trial).

Mack further argues that Count Two fails to allege a forced labor conspiracy because the threatened release of collateral is not "commensurate with other forced labor cases." (AMBr. 17.)  In support of this argument, Mack appears to attach great significance to the fact that, in the wake of public and law enforcement scrutiny of DOS, "no collateral has ever been released by DOS or any of the defendants, including that given by members [who] have left DOS . . . ."  (AMBr. 3.)  See e.g., AMBr. 4 ("Tellingly, there is no allegation that Jane Doe 5's collateral ever was released"; AMBr. 17 ("[T]he complaint shows that that no one's collateral was ever released publicly.").  This is hardly surprising because collateral, like any other means of extortion or blackmail, depends on secrecy for the threat of disclosure to have its desired effect.[22]  In any event, Mack's disagreements with the allegations in the Indictment cannot be resolved on a motion to dismiss.  At this pretrial stage, the allegations in the Indictment must be taken as true.  See, e.g., Goldberg, 756 F.2d at 950.

---

[22]     For this reason, Mack's suggestion that that use and threatened disclosure of collateral in DOS could not have been coercive because Jane Doe 5's collateral was "never released, even though she left DOS and apparently has agreed to testify" against Raniere and Mack, (AMBr. at 4), is disingenuous at best.  See Richard A. Posner, Overcoming Law 550 (1995) (noting that, due to the nature of blackmail, once a blackmail victim reports the crime to the police, the "blackmailer probably will not carry out his threat to spill the beans, because if he does, the police, prosecutor, jury, and judge will regard this as an aggravating circumstance.").

B.    <u>The Indictment Properly Alleges the Sex Trafficking Offenses (Counts Four, Five, and Six)</u>

Mack and Raniere raise a number of challenges to the sufficiency of the factual allegations underlying the sex trafficking charges in Counts Four, Five and Six.  At bottom, their contention is that the allegations contained in the Indictment and the Complaint are factually incorrect.  <u>See, e.g.</u>, AMBr. 20 ("[T]here are no allegations that Ms. Mack received any 'commercial gain' or 'financial benefit'—because she did not.  Indeed, there are no allegations that anyone profited at all from the alleged sex acts.").  It is axiomatic, however, that the allegations in the Indictment must be accepted as true.  <u>See, e.g.</u>, <u>United States v. Murgio</u>, 209 F. Supp. 3d 698, 706 (S.D.N.Y. 2016) ("In evaluating a motion to dismiss, the Court 'accept[s] as true all of the allegations of the indictment.'" (quoting <u>Goldberg</u>, 756 F.2d at 950)); <u>see also</u> <u>Stavroulakis</u>, 952 F.2d at 693 ("[C]ommon sense must control, and . . . an indictment must be read to include facts which are necessarily implied by the specific allegations made." (quotation marks and brackets omitted)).  The government has alleged and expects to prove at trial that members of DOS expected to receive and did receive things "of value" for engaging in sexual activity with Raniere.  For these reasons, and because the defendants' arguments are without factual or legal merit in any case, the motions to dismiss the sex trafficking counts should be denied.

Mack and Raniere argue that the sex trafficking statute is aimed at a narrow "class of activities that are economic in nature," such as "prostitution, pornography, [or] sex tourism" that they claim are not present in this case.  (<u>See</u> AMBr. 18-19.)  The Southern District of New York recently addressed the scope of 18 U.S.C. § 1591 in a case both

Raniere and Mack hastily and unpersuasively attempt to distinguish in their briefs.  See Noble v. Weinstein, No. 17-Civ-9260 (RWS), 2018 WL 3863452 (S.D.N.Y. 2018) (denying motion to dismiss complaint charging § 1591); (AMBr. 20 n.12; RBr. 16.)

In Weinstein, as here, the defendant argued that the sex trafficking allegations were insufficient because a commercial sex act must have an "economic" component.  The court disagreed:

> Congress's use of expansive language in defining commercial sex act—using such terms as "any sex act," "anything of value," "given to or received by any person"—requires a liberal reading. . . . For an aspiring actress, meeting a world-renowned film producer carries value, in and of itself.  The opportunity, moreover, for the actress to sit down with that producer in a private meeting to review her film reel and discuss a promised film role carries value that is career-making and life-changing.  The contention, therefore, that [the plaintiff] was given nothing of value—that the expectation of a film role, of a modeling meeting, of "his people" being "in touch with her" had no value—does not reflect modern reality.

Weinstein, 2018 WL 3863452, at *10 (internal citations omitted) (collecting cases); see also United States v. Cook, 782 F.3d 983, 988–89 (8th Cir. 2015) (observing that the phrase "anything of value" under 18 U.S.C. § 1591(a)(2) is "extremely broad, encompassing 'sexual acts, photographs, and videos'"); United States v. Williams, 705 F.2d 603, 623 (2d Cir. 1983) (construing "anything of value" as "anything of value that the defendants subjectively attached to the items received" in context of bribery statute).

The remaining support offered for the defendants' motions to dismiss Counts Two, Four, Five and Six are claims that are (1) not relevant to a consideration of the sufficiency of the allegations in the indictment; and (2) attempts to contest the government's

theory of the case by contesting allegations contained in the Indictment and Complaint.  (See, e.g., RBr. 16 ("[T]here is no allegation, nor could there truthfully be, that Raniere benefitted in any way economically from a person having sex with anyone."); AMBr. 20 ("Even assuming Ms. Mack was a 'DOS master,' she would already have been receiving status and 'acts of care' before any alleged sex trafficking occurred, and thus necessarily did not receive those things 'on account of' any sex act.").  These arguments are improper on a motion to dismiss under Rule 12, since they are contradicted by the allegations contained in the Indictment and the Complaint.

## VI.    Count Seven Should Not Be Dismissed

Bronfman argues that Count Seven—charging identity theft in violation of 18 U.S.C. § 1028(a)(7)—should be dismissed because it does not "plead the elements of tax evasion" (BBr. 28) and because it is alleged to have been committed in the Northern District of New York and not the Eastern District of New York (BBr. 34-36).  Both arguments should be rejected.

Contrary to Bronfman's assertion, the elements of tax evasion, 26 U.S.C. § 7201 are not "essential elements" of the charge.  Rather, the "essential element" of the § 1028(a)(7) charge in Count Seven is that a defendant committed the actus reus with "intent to commit, . . . aid and abet, and in connection with unlawful activity that constituted one or more violations of federal law."  The "to wit" clause, which identifies 26 U.S.C. § 7201 as the object of that element, provides additional notice to the defendant.  This is sufficient under Rule 7(c) and consistent with § 1028(a)(7) charges in this and other districts.  See, e.g., United States v. Pinedo, No. 18-CR-0024, 2018 WL 914814 (D.D.C.) (Feb. 7, 2018 D.D.C.)

54

(Count One, cross-referencing "wire fraud, in violation of Title 18, United States Code, Section 1343"); United States v. Jattan, No. 17-CR-0110 (ERK) (Mar. 1, 2017 E.D.N.Y.) (Count Six, cross-referencing "Title 42, United States Code, Section 408(a)(8)"); United Sates v. Davis, No. 08-664 (FB), 2009 WL 1630368 (Feb. 4, 2009 E.D.N.Y.) (Count Four, cross referencing "Title 21 U.S.C. § 846"); United States v. Parades, No. 05-CR-1037, 2006 WL 5050928 (Feb. 9, 2006) (Counts 7-10, cross-referencing, inter alia "Section 1029(a)(2) of Title 18, United States Code" and "N.Y. Penal Law § 155.30"); see also United States v. Shulaya, No. 17-CR-350 (KBF), 2018 WL 2276674 (Apr. 12, 2018 S.D.N.Y.) (Count Four, tracking language of statute and omitting cross-reference altogether).

       Bronfman relies primarily on United States v. Dupree, 870 F.3d 62 (2d Cir. 2017) (BBr. 32-34), but that case plainly did not hold that the government must allege the elements of the cross-referenced statute. Rather, in Dupree, the Court held that the charged statute (21 U.S.C. § 841(e)(1)(A)), incorporated the drug quantity element from § 841(b)(1)(A), and therefore the quantity had to be alleged in the § 841(e)(1)(A) charge. Id. at 72. By contrast, in § 1028(a)(7) charges, the government is only required to prove that the defendant committed the identify theft violation with the "intent to commit" or to "aid and abet," or that the crime was "in connection" with, the cross-referenced violation of law. Because here, unlike Dupree, the government is not required to prove that the defendant committed the cross-referenced crime or any of its elements, it is not required to allege those elements in the indictment. See, e.g., United States v. Sutcliffe, 505 F.3d 944, 960 (9th Cir. 2007) (holding that § 1028(a)(7) requires only that the government prove the elements of

identity theft, not the "not that the defendant's crime actually caused another [i.e., the cross-referenced] crime to be committed").  Bronfman's argument should be rejected.

Bronfman also moves for the dismissal of Count Seven on the ground that it is alleged to have been committed in the Northern District of New York and not the Eastern District of New York.  The government agrees that the Indictment alleges that Count Seven is venued in the Northern District of New York.  However, this does not warrant dismissal of Count Seven.  Prior to trial, if a superseding indictment is not returned to cure the venue defect, the government will consent to the severance of Count Seven and its transfer for trial in the Northern District of New York.

VII.    Defendants Are Not Entitled to a Bill of Particulars

The defendants also contend that the Indictment provides insufficient detail for them to prepare their defenses and that a bill of particulars is necessary.  Bronfman argues that the defendants are entitled to a bill of particulars because the case "involves voluminous and complex discovery" and the charged crimes "relate to over a dozen separate schemes and include a racketeering conspiracy that spanned over fifteen years."  (BBr. 37.)  L. Salzman asserts that she is entitled to a bill of particulars as to Racketeering Acts Seven and Nine because she is "entitled to know which of her actions allegedly violated the charged crimes [sic]."  (LSBr. 22).  The defendants fail to acknowledge their burden to show that a bill of particulars is "necessary," and the generic reasons they proffer do not meet that standard.  In any event, the Indictment, together with documents in the record, including the Complaint and the government's letters concerning bail, provide ample notice of the government's theory.  A bill of particulars is not "necessary" and the Court should deny this request.

A.    <u>Legal Standard</u>

The pleading standard under Fed. R. Crim. P. 7(c) is discussed at length above. <u>See</u> Part I.A.1, <u>supra</u>.  Additional details, in the form of a bill of particulars, <u>see</u> Fed. R. Crim. P. 7(f), are appropriate only when the indictment is too vague to inform the defendant of the nature of the charges to allow the preparation of a defense, avoid unfair surprise, and assert a double jeopardy claim.  <u>See</u> <u>United States v. Bortnovsky</u>, 820 F.2d 572, 574 (2d Cir. 1987); <u>United States v. Torres</u>, 901 F.2d 205, 234 (2d Cir. 1990) (bill of particulars required "only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused") (internal quotation marks omitted).  If the information sought by the defendant is provided in the indictment or through some other means, a bill of particulars is not warranted.  <u>See</u> <u>Bortnovsky</u>, 820 F.2d at 574.  "The defendant bears the burden of showing 'the information sought is necessary,' and that he will be prejudiced without it."  <u>United States v. Shkreli</u>, 15-CR-637 (KAM), 2016 WL 8711065, at *4 (E.D.N.Y. 2016) (quoting <u>Fruchter</u>, 104 F. Supp. 2d at 312); <u>United States v. Rivera</u>, No. 09-CR-619 (SJF), 2011 WL 1429125, at *8 (E.D.N.Y. Apr. 13, 2011) ("The ultimate test in determining whether a bill of particulars is appropriate is whether the information is <u>necessary</u>, not whether it is helpful to the defendant." (emphasis added and citations omitted)).

A defendant cannot use a bill of particulars as an investigative tool or as a pre-trial discovery device.  <u>See</u> <u>United States v. Pimentel</u>, No. 99-CR-1104 (SJ), 2001 WL 185053, at *4 (E.D.N.Y. Jan. 22, 2001) (citations omitted).  Rule 7(f) also may not be used to limit the government's evidence at trial or flush out its prosecutorial theories or methods of

proof in advance of trial.  See Shkreli, 2016 WL 8711065, at *4 (collecting cases); see also United States v. Sattar, 314 F. Supp. 2d 279, 318 (S.D.N.Y. 2004) ("The Government may not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove the charges, the precise manner in which the defendant committed the crimes charged, or a preview of the Government's evidence or legal theories." (citation omitted)).  Accordingly, "courts have routinely held that the 'wheres, whens and with whoms' of a charged offense are beyond the proper scope of a bill of particulars." United States v. Shteyman, No. 10-CR-347 (SJ), 2011 WL 2006291, at *5 (E.D.N.Y. May 23, 2011) (quoting Rivera, 2011 WL 1429125, at *8); see also United States v. Trippe, 171 F. Supp. 2d 230, 240 (S.D.N.Y. 2001) ("demands for particular information with respect to where, when, and with whom the Government will charge the defendant with conspiring are routinely denied" (collecting cases)).  The decision to grant or deny a bill of particulars is committed to the discretion of the trial court.  Fruchter, 104 F. Supp. 2d at 311 (quoting United States v. Panza, 750 F.2d 1141, 1148 (2d Cir. 1984)).

   B.   Discussion

   The defendants' request for a bill of particulars is in fact a request that the Court compel the government to disclose pre-trial the "the precise manner in which the defendant[s] committed the crimes charged." United States v. Sattar, 314 F. Supp. 2d 279 at 318 (denying request for bill of particulars).  (BBr. 37 (seeking bill setting forth "by which actions" the defendants committed the alleged crimes)).  Contrary to defendants' assertions, "the Government has provided substantial discovery" and "outlined its theory and the facts upon which it is based in numerous filings with the court," United States v. Pugh, No. 15-

CR-00116 (NGG), 2015 WL 9450598, at *28 (E.D.N.Y. Dec. 21, 2015) (collecting cases), including in its letter setting forth its position on bond for defendants Bronfman, Russell, L. Salzman and N. Salzman (DE 52), the Complaint against Raniere (DE 1), its request that the Court remand Raniere pending trial (DE 4), its letter setting forth its position on bail as to Allison Mack (DE 17) and the government's response to Raniere's motion for bond (DE 44). See United States v. Bortnovsky, 820 F.2d at 574 ("[I]f the information sought by defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required."). In light of these detailed filings, the defendants' request is baseless.

The case law the defendants rely upon does not support their request for a bill of particulars. The difference between the instant indictment and that in United States v. Davidoff, 845 F.2d 1151 (2d Cir. 1988) (BBr. 37), for example, are stark and demonstrate the weakness of defendants' argument. The issue in Davidoff concerned "the Government's obligation to provide notice in a bill of particulars of uncharged acts of racketeering it intends to prove to obtain a conviction for violation of the [RICO] statute." Id. at 1152 (emphasis added). With respect to the RICO conspiracy count in Davidoff, the government alleged that the pattern of racketeering activity consisted of unlawful payments to unions and extortions "includ[ing], but . . . not limited to" those set forth in the four substantive extortion counts. Id. at 1153. At trial, the government introduced evidence of extortions against three victims that were not identified anywhere in the indictment and were not among the four separately charged extortions. The Court of Appeals' holding was limited: the district court erred in denying the request for a bill of particulars only as to the identity of victims of the uncharged extortion schemes the government sought to prove at trial. Id. at 1154. Unlike in

Davidoff, in this case the government has alleged the participants, dates and essential elements of each alleged racketeering act. And, as the defendants concede, the government has identified all of the Jane Doe and John Doe victims in the Indictment. (BBr. 37) Davidoff requires no more. See id. ("We do not mean to imply that even in a RICO case the prosecution must always disclose in advance of trial every act it will prove that may violate some criminal statute.").

The decisions of this Court relied upon by the defendants are equally unhelpful to them. For example, contrary to the defendants' assertion (BBr. 37), in United States v. Gasperini, No. 16-CR-441 (NGG), 2017 WL 2399693, at *11 (E.D.N.Y. June 1, 2017), this Court did not require the government to provide information concerning "by which actions" (BBr. 37) the defendant committed the alleged crimes. Rather, finding that there existed a risk of "unfair surprise" due to a "unique" prosecution for Computer Intrusion, this Court instructed the government to provide additional information as to "the categories of information allegedly obtained in connection with the Computer Intrusion Counts." Id. (granting defendant's motion in part because "[d]efendant cannot look to other, similar prosecutions for guidance as to this element"). The defendants neglect to acknowledge that in Gasperini this Court also denied the defendant's motion for a bill of particulars related to "conspiracy and co-conspirator information," holding that "[d]efendant's requests for the overt acts, location, dates, and duration of the conspiracy go beyond the scope of the information to which he is entitled, as they seek the wheres, whens, and with whoms of the

60

conspiracy." Id. at *12. (internal quotation marks omitted). The information sought here falls into the latter, rather than the former, category.

Nor does United States v. Wilson, 493 F. Supp. 2d 364, 374-75 (E.D.N.Y. 2006) (BBr. 37), support the defendants' request. In Wilson – a death penalty case – this Court considered and rejected the defendant's request for a bill of particulars to the alleged substantive RICO and RICO conspiracy charges. See id. at 370-72. The only category of information the Court required the government to disclose in a bill of particulars was the identities of alleged victims of the defendant's crimes. See id. at 373-74. As defendants concede, the government has already disclosed that information to them. (BBr. 37). With respect to the narcotics charges in Wilson, this Court also denied the defendant's request for the "dates and locations on which/where [the defendant] and other defendants allegedly joined and participated in the drug conspiracy; details of each overt act allegedly committed by [the defendant] and other defendants in furtherance of the conspiracy; [and] the names of [the defendant]'s alleged co-conspirators." Id. at 374-75. Although the Court granted the defendant's request as to the defendant's "role in the alleged [21 U.S.C. § 846] conspiracy," id. at 375, that holding is inapposite to the RICO conspiracy charge in this case, which, unlike the § 846 charge in Wilson, describes the charged enterprise, its "Purposes, Methods and Means," its members and associates, and the racketeering acts through which the

defendants conspired to conduct the affairs of the enterprise.[23]  For all of these reasons, the

defendants' request for a bill of particulars should be denied.[24]

VIII.   Raniere's Motions to Compel Additional Disclosures Should Be Denied

Raniere moves to compel disclosure of several categories of witness

statements on the theory that they constitute exculpatory material under Brady v. Maryland,

373 U.S. 83 (1963).  These motions are little more than a thinly-veiled attempt to gain early

access to impeachment material and other material covered by the Jencks Act, 18 U.S.C.

§ 3500, and should be denied.

As an initial matter, and as it has stated to defendants, the government

recognizes and takes seriously its obligations under Brady, Giglio v. United States, 405 U.S.

150, 154 (1972), and its progeny, and will continue to comply with those obligations.

Indeed, the government has already surpassed its disclosure obligations in this case by

---

[23]     The defendants cite no authority for the proposition that they are "entitled to the names of their alleged co-conspirators."  (BBr. 38).  Rather, to warrant such disclosure in a bill of particulars, the defendants must show that the information is "necessary," which they do not attempt to do.  See, e.g., United States v. Minaya, 395 F. Supp. 2d 28, 37 (S.D.N.Y. 2005) (denying request for names of coconspirators where defendant "is at least aware of the identities of his ten named co-defendants").  Moreover, as the court is aware, this case presents a significant risk of witness tampering and retaliation, which substantially undermines their request.  See United States v. Jones, No. 10 CR. 905 (LTS), 2013 WL 12180869, at *2 (S.D.N.Y. Dec. 16, 2013) (denying bill of particulars in light of risk of witness tampering).

[24]     The defendants' request for a bill of particulars for the "tax evasion charge" (purportedly Count Seven) is frivolous.  (BBr. 38).  Count Seven is an identity theft charge, not a tax evasion charge and, for the reasons set forth above, there is no basis for a bill of particulars as to that charge.

producing, significantly in advance of trial, tens of thousands of pages of contemporaneous

communications between Raniere and identified DOS victims in this case, as well as

voluminous communications in its possession on personal electronic devices of DOS

"slaves" in which those "slaves" discuss their experiences in DOS—much of which would be

inadmissible if offered by the defendants at trial.  As a result, the defendants' requests for an

order pertaining to the disclosure of <u>Brady</u> material should be denied, consistent with the

well-established practice in this District in such circumstances.  "Courts of this Circuit have

repeatedly denied pretrial requests for discovery orders pursuant to <u>Brady</u> where the

[g]overnment has, as here, made a good-faith representation to the Court and defense counsel

that it recognizes and will comply with its disclosure obligations under <u>Brady</u>."  <u>Shkreli</u>,

2016 WL 8711065, at *2 (citing cases).

A.    <u>Applicable Law</u>

The government has a "constitutional duty to disclose evidence favorable to an

accused when such evidence is material to guilt or punishment."  <u>United States v. Coppa</u>, 267

F.3d 132, 135 (2d Cir. 2001).  "[A] prosecutor must disclose evidence if, without such

disclosure, a reasonable probability will exist that an outcome of a trial in which the evidence

had been disclosed would have been different."  <u>Id.</u> at 142.  "The rationale

underlying <u>Brady</u> is not to supply a defendant with all the evidence in the Government's

possession which might conceivably assist the preparation of his defense, but to assure that

the defendant will not be denied access to exculpatory evidence only known to the

Government."  <u>United States v. LeRoy</u>, 687 F.2d 610, 619 (2d Cir. 1982).  The scope of the

government's <u>Brady</u> obligation does not extend to "investigative files merely because they

contain information which could assist the defendant." United States v. Reddy, 190 F. Supp. 2d 558, 575 (S.D.N.Y. 2002).  The government is not required to disclose exculpatory, material evidence if the defendant knows or should have known of "the essential facts permitting him to take advantage of any exculpatory evidence."  Id. (citing United States v. Zackson, 6 F.3d 911, 918 (2d Cir. 1993)).

Moreover, because it is clear that the "Government satisfies its burden under Brady and Giglio so long as it turns over information in time for its 'effective use at trial," Coppa, 267 F.3d at 146; see also United States v. Conyers, No. 15 Cr. 537 (VEC), 2016 WL 7189850, at *8 (S.D.N.Y. Dec. 9, 2016) (same), it is the well-established practice in this District to produce material pursuant to Giglio and its progeny, as well as 18 U.S.C. § 3500 material, shortly in advance of trial.  See, e.g., United States v. Hernandez, No. 09 Cr. 625 (HB), 2010 WL 26544, at *6 (S.D.N.Y. Jan. 6, 2010) (declining to order immediate disclosure of Giglio material, because the Government stated it would provide Giglio and § 3500 material "shortly before trial"); United States v. Davis, No. 06 Cr. 911 (LBS), 2009 WL 637164, at *14 (S.D.N.Y. March 11, 2009) ("The Second Circuit has held that a request for immediate or early disclosure [of Giglio material] has no basis in the law."); see generally United States v. Nixon, 418 U.S. 683, 701 (1974) ("Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial.").

There is no right pretrial to Giglio material, "nor is there a pretrial right to statements and reports of witnesses in the Government's possession."  Shkreli, 2016 WL 8711065, at *2 (citing cases).  Under the Jencks Act, no witness statement or report in the possession of the government shall be "the subject of subpoena, discovery, or inspection"

64

until the witness has testified on direct examination at trial.  18 U.S.C. § 3500(a).  After a witness is called by the government and has testified, "the court shall, on motion of the defendant, order the United States to produce any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified."  18 U.S.C. § 3500(b).  "The Second Circuit has held that district courts are not authorized to order the pre-trial disclosure of witness statements pursuant to the terms of the Jencks Act."  Shkreli, 2016 WL 8711065, at *2 (citing Coppa, 267 F.3d at 145-46 (finding district court exceeded its authority in ordering pre-trial disclosure of Jencks Act material because the Jencks Act constrained the court's power to issue any such order)).

B.     Discussion

Raniere moves to compel disclosure of the following categories of witness statements in the form of FBI reports and notes from witness interviews:  (1) sexual activity with Raniere "was not a requirement" of DOS; (2) there was "no requirement or expectation that sexual activity would take place even if women were tasked to 'seduce'" Raniere; (3) "DOS members did not believe their collateral would be released"; (4) "DOS members never released or threatened to release collateral"; (5) "DOS members knew of Raniere's involvement with the sorority at the time of joining, or if they did not and later found out, that did not materially affect their experience in DOS."  (RBr. 19.)

As an initial matter, several of these categories of information obviously do not constitute Brady material.  The Indictment does not allege—and the government has never claimed—that sexual activity with Raniere was a "requirement of DOS" or that all DOS "slaves" were directed to have sex with Raniere.  Moreover, to the extent that Raniere

seeks statements by individuals other than those whom the government contends were in fact directed to engage in sexual activity with Raniere, such statements not only do not constitute <u>Brady</u> material, they are irrelevant to the charges against Raniere.  Evidence of instances in which DOS "slaves" were not directed to or did not engage in sexual activity with Raniere do not negate his guilt.  See <u>United States v. Scarpa</u>, 897 F.2d 63, 70 (2d Cir. 1990) ("A defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions."); <u>see also</u> <u>United States v. Williams</u>, 205 F.3d 23, 34 (2d Cir. 2000) (evidence that the defendant did not engage in drug activity during particular trips to Jamaica not relevant to whether defendant engaged in drug activity on other trips to Jamaica).  The fact that a particular DOS "slave" may not have been directed to engage in sexual activity with Raniere has no bearing on whether other victims were so directed and is not exculpatory.[25]

---

[25]     The suggestion by Raniere's counsel in an accompanying affirmation ("the Agnifilo Aff.") that a witness stated that Jane Doe 5 was "into kinky [sex]" is not an appropriate ground for a <u>Brady</u> disclosure.  (Agnifilo Aff. ¶ 23.)  Jane Doe 5 is a victim of sex trafficking and any purported statements regarding her alleged sexual predisposition are presumptively inadmissible under Federal Rule of Evidence 412.  Motions to admit such evidence must be made under seal and should be accorded and evaluated with appropriate sensitivity.  <u>See</u> Rule 412(c)(2).  Counsel's inclusion of this prejudicial allegation in the affirmation is an improper attempt to circumvent the requirements of Rule 412, which seek to "safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the factfinding process."  <u>See</u> <u>United States v. Roman</u>, 884 F. Supp. 124, 125-26 (S.D.N.Y 1995) (citing Rule 412 Notes of Advisory Committee on Rules, 1994 Amendment).

Raniere claims that the government has not produced certain specific statements by DOS "slaves" it has interviewed, that, for example, they were not "threatened with release of their collateral if they did not perform acts of care" and that they chose to perform these acts of care "because they wanted to become a kinder person and more thoughtful person." (RBr. 21.) Raniere is, as he implicitly acknowledges, well aware of these statements and is fully capable of investigating his anticipated defense because these witnesses and DOS "slaves" are equally available to him. Indeed, in various submissions and public statements, counsel for Raniere has repeatedly stated that counsel expects to put on a defense case, including testimony from DOS members that contradicts the government's evidence regarding DOS. The government has no obligation to disclose evidence "if the defendant or his attorney either knew, or should have known, of the essential facts permitting him to take advantage of that evidence." LeRoy, 687 F.2d at 618 (internal citation and quotation omitted). In any event, the government currently anticipates producing all written reports of statements to the government by DOS "slaves" at an appropriate time prior to trial.

Lastly, Raniere requests materials in the custody of various state agencies on the ground that "the FBI and the EDNY have jointly investigated this case." (See RBr. 21-22). Raniere is wrong. The government has not conducted a joint investigation with any agency listed in Raniere's brief and therefore is not required to obtain or produce any of the materials in the possession, custody or control of those agencies. See United States v. Rigas, 583 F.3d 108 (2d Cir. 2009) (affirming district court opinion holding that there was "no joint investigation with the SEC" and therefore the Government did not need to produce documents in the custody of the SEC); SEC v. Stanard, No. 06 Civ. 7736 (GEL), 2007 WL

1834709, at *3 (S.D.N.Y. June 26, 2007) (finding that facts similar to those here "make clear that the investigations, while they may have overlapped, were not conducted jointly" in denying the defendant's request for the court to require the SEC to access and review FBI interview notes that were not in the SEC's possession, custody or control); United States v. Finnerty, 411 F. Supp. 2d 428, 433 (S.D.N.Y. 2006) (holding that the government and the NYSE, even if it were a state actor, did not conduct a joint investigation related to the policies of the NYSE); Ferreira v. United States, 350 F. Supp. 2d 550, 556-57 (S.D.N.Y. 2004) (holding that cooperation between the government and NYPD was "not sufficient to make the Government and the state prosecutor members of the same 'prosecutorial team'"); United States v. Upton, 856 F. Supp. 727, 749-50 (E.D.N.Y. 1994) (holding that USAO and FAA did not conduct a "joint investigation" even though the FAA provided two inspectors to assist the criminal investigation); United States v. Guerrerio, 670 F. Supp. 1215, 1219 (S.D.N.Y. 1987) (denying Rule 16 discovery request for grand jury minutes at the Bronx District Attorney's Office where there was no joint investigation with the USAO and USAO had no control over the material).

IX.   Raniere's Motion to Permit Testimony By Closed Circuit Television is Premature

Raniere requests that the court permit him to obtain testimony via closed-circuit television ("CCTV") from witnesses located in Mexico who, he says, fear they would be arrested if they traveled to the United States to testify at trial.  (RBr. 22).  Raniere's motion should be denied as premature.

A.    <u>Applicable Law</u>

"Closed-circuit television should not be considered a commonplace substitute for in-court testimony by a witness." <u>United States v. Gigante</u>, 166 F.3d 75, 81 (2d Cir. 1999). CCTV should be used only in "exceptional circumstances" and where it "furthers the interest of justice." <u>Id.</u> In addressing requests for CCTV testimony, district courts in this Circuit have applied the same standard used regarding Rule 15 depositions and will only find "exceptional circumstances" where the movant has shown "that (1) the prospective witness is unavailable for trial, (2) the witness's testimony is material, and (3) the testimony is necessary to prevent a failure of justice.'" <u>United States v. Vilar</u>, 568 F. Supp. 2d 429, 437 (S.D.N.Y. 2008) (internal alterations omitted) (quoting <u>United States v. Cohen</u>, 260 F.3d 68, 78 (2d Cir. 2001)); <u>see also</u> <u>United States v. Buck</u>, 271 F. Supp. 3d 619, 622–23 (S.D.N.Y. 2017).

"'A movant must provide specific reasons for a witness's unavailability.'" <u>Buck</u>, 271 F. Supp. 3d at 623 (quoting <u>United States v. Pham</u>, No. 12-CR-423 (AJN), 2015 WL 7871348, at *1 (S.D.N.Y. Dec. 4, 2015)). "'Conclusory statements of unavailability . . . are insufficient' to meet this standard." <u>Id.</u> (quoting <u>United States v. Chusid</u>, No. 00-CR-0263, 2000 WL 1449873, at *1 (S.D.N.Y. Sept. 27, 2000)). The movant must also "alert the district court to the substance of the evidence that is at peril of being excluded." <u>Id.</u> To be considered "material," the proposed testimony must be "highly relevant to a central issue in the case," <u>Id.</u> (quoting <u>Vilar</u>, 568 F. Supp. 2d at 440), and must "'challenge central aspects

of the government's allegations.'" Id. (quoting United States v. Grossman, No. 03-CR-1156, 2005 WL 486735, at *4 (S.D.N.Y. Mar. 2, 2005)).

     B.    Discussion

       Raniere has not attempted to make the showing required to warrant testimony via CCTV or a Rule 15 deposition, and therefore his motion should be denied. As the above-cited case law makes clear, the government will not be in a position to respond to his motion and the Court will not be in a position to decide it until Raniere proffers at least the following facts: (1) the identities of the proposed witnesses; (2) the "specific reason(s)" each witness believes they will be arrested if they travel to the United States; (3) the "substance of the evidence" to which each witness is expected to testify; (4) the relationship between the proffered testimony from each witness and the "central aspects of the government's allegations;" (5) whether Mexican law would permit testimony in a U.S. criminal trial by CCTV, cf. Buck, 271 F. Supp. 3d at 623 (noting that Swiss authorities may not permit requested testimony); and (6) whether, assuming the Court were to permit CCTV testimony, the proposed witnesses would be subject to extradition if they committed perjury, see id. (noting that proffered witnesses would not be subject to extradition for perjury, "calling into doubt the reliability of any of the potential testimony"); United States v. Banki, No. 10-CR-08 (JFK), 2010 WL 1063453, at *2 (S.D.N.Y. Mar. 23, 2010) (denying motion for CCTV testimony and noting that "[w]ithout the teeth of the penalty of perjury, the oath becomes nothing more than an empty recital"). Once Raniere proffers this information, the government respectfully requests an opportunity to respond. Until such time, Raniere's motion should be denied. See Buck, 271 F. Supp. 3d at 623-24 (denying motion because

defendant had not proffered facts sufficient for district court to assess the witnesses

"justifiable fear of arrest" or the materiality of their testimony).

CONCLUSION

For the reasons set forth above, the government respectfully submits that the

defendants' motions are without merit and should be denied.

Dated:    Brooklyn, New York
          December 17, 2018

                                    Respectfully submitted,

                                    RICHARD P. DONOGHUE
                                    UNITED STATES ATTORNEY
                                    Eastern District of New York
                                    271 Cadman Plaza East
                                    Brooklyn, New York 11201

Moira Kim Penza
Tanya Hajjar
Kevin Trowel
Assistant United States Attorneys
        (Of Counsel)