MKM:TH/MKP/KMT
F. #2017R01840

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

       - against -

KEITH RANIERE,
CLARE BRONFMAN,
ALLISON MACK,
KATHY RUSSELL,
LAUREN SALZMAN and
NANCY SALZMAN,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

Docket No. 18-204 (S-1) (NGG) (VNS)


THE GOVERNMENT'S MEMORANDUM IN OPPOSITION
TO THE DEFENDANTS' MOTIONS FOR SEVERANCE


RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201


Moira Kim Penza
Tanya Hajjar
Kevin Trowel
Assistant U.S. Attorneys
    (Of Counsel)

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND .................................................................................................... 3

ARGUMENT ......................................................................................................... 4

    I.      There Is No Basis Under Rule 14(a) to Sever Any of the Defendants .................. 4

          A.      Applicable Law ........................................................................ 4

          B.      Discussion ................................................................................ 7

    II.     The Trial Schedule Set by the Court Has No Bearing On Severance .................. 21

CONCLUSION ...................................................................................................... 22

PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in opposition to the motions for severance filed by all defendants except Keith Raniere and Allison Mack.[1] Notwithstanding that all defendants are charged with participating in the same long-running racketeering conspiracy, the defendants propose to split themselves into different groups for separate trials.  Defendants Bronfman, Russell, and Nancy Salzman propose to split the defendants into two groups—one group consisting of those defendants who were involved in DOS and another group consisting of defendants who were not.  Defendant Lauren Salzman offers another proposal—one group of defendants charged with sex trafficking, and another group of defendants not charged with sex trafficking.  For the reasons set forth below, the defendants' motions are without merit and should be denied in their entirety.

By seeking to cast themselves as charged only with "bland white-collar" or "plain-vanilla" offenses, BRS Br. at 2, 6, defendants Bronfman, Russell, and Nancy Salzman ignore that they are charged with the other defendants in an overarching racketeering conspiracy and that evidence regarding DOS is admissible against them as proof of the enterprise and the pattern of racketeering charged in the superseding indictment.  In addition, and contrary to the defendants' assertions, the evidence against Bronfman, Russell, Nancy

---

[1]     By written motion dated January 9, 2019, defendants Clare Bronfman, Kathy Russell, and Nancy Salzman move for severance from other defendants.  (ECF Docket No. 275 (hereinafter "BRS Br.")  By written motion dated January 9, 2019, defendant Lauren Salzman also moves for severance from defendants Raniere and Mack.  (ECF Docket No. 267 (hereinafter "LS Br.")

Salzman, and Lauren Salzman is not "different in kind," BRS Br. at 15, than the evidence relating to DOS. To establish the charged racketeering enterprise, the government expects to offer evidence of, among other things, intimate relationships between Raniere and members of the "inner circle"; efforts of the "inner circle" to recruit and groom sexual partners for Raniere; acknowledgements of so-called "ethical breaches" and the taking on of "penances"; extreme dieting at Raniere's direction; and maintenance of "collateral"—all of which existed both within and outside of DOS and all of which is admissible against all defendants as direct evidence of the charged racketeering conspiracy.

The defendants conspired together, they were indicted together, and they should be tried together. Severing these defendants would require the Court to conduct a series of repetitive trials, two and possibly three times. The law strongly favors joint trials of defendants who are indicted together to avoid just the sort of unwarranted cost in time, resources, inconvenience to witnesses, prejudice to the government, and inefficiency that is invited by the defendants' motions.

BACKGROUND

On July 23, 2018, a federal grand jury in the Eastern District of New York returned a superseding indictment (the "Indictment") charging defendants with participating in a criminal racketeering enterprise (the "Enterprise") led by defendant Keith Raniere.

The allegations in the Indictment are summarized in greater detail in the Government's Memorandum in Response to the Defendants' Pretrial Motions filed on December 17, 2018 (ECF Docket Entry 248), which is incorporated herein by reference. Of particular relevance to these motions, each of the defendants in this case, including each of the moving defendants, is charged with participation in the same racketeering conspiracy. As alleged in the Indictment, Raniere and an "inner circle" of individuals, including the defendants, who were accorded "special positions of trust and privilege" with Raniere, agreed to conduct the affairs of the Enterprise through a pattern of racketeering activity. Members of Raniere's inner circle held high-ranking positions in one or more Raniere-founded organizations, including Nxivm and DOS. As alleged, the principal purpose of the Enterprise was to obtain financial and personal benefits for the members of the Enterprise by promoting Raniere and by recruiting new members into Nxivm and DOS. (Indictment, Docket Entry 50, ¶ 4.) By promoting Raniere and recruiting others into Nxivm and DOS, members of the Enterprise expected to receive financial opportunities and increased power and status within the Enterprise. (Id.) Among the means and methods by which the defendants participated in the conduct of the affairs of the Enterprise were the following:

- Promoting, enhancing and protecting the Enterprise by committing, attempting and conspiring to commit crimes, including but not limited to identity theft,

harboring of aliens for financial gain, extortion, forced labor, sex trafficking, money laundering, wire fraud and obstruction of justice;

- Demanding absolute commitment to Raniere, including by exalting Raniere's teachings and ideology and not tolerating dissent;

- Inducing shame and guilt in order to influence and control members of the Enterprise;

- Obtaining sensitive information about members and associates of the Enterprise in order to maintain control over them;

- Recruiting and grooming sexual partners for Raniere;

- Using harassment, coercion and abusive litigation to intimidate and attack perceived enemies and critics of Raniere; and

- Encouraging associates and others to take expensive Nxivm courses, and incur debt to do so, as a means of exerting control over them and to obtain financial benefits for the members of the Enterprise.

(<u>Id.</u> at ¶ 6.)

ARGUMENT

All defendants except Keith Raniere and Allison Mack have sought severance pursuant to Federal Rule of Criminal Procedure 14 on various grounds. For the reasons set forth below, each of the moving defendants' arguments are without merit and their motions should be denied.

I.    <u>There Is No Basis Under Rule 14(a) to Sever Any of the Defendants</u>

  A.    <u>Applicable Law</u>

Rule 14 of the Federal Rule of Criminal Procedure authorizes a district court to grant a motion for severance "[i]f it appears that a defendant or the government is

4

prejudiced by a joinder."[2]  Fed. R. Crim. P. 14(a).  However, "[f]or reasons of economy, convenience and avoidance of delay, there is a preference in the federal system for providing defendants who are indicted together with joint trials."  United States v. Feyrer, 333 F.3d 110, 114 (2d Cir. 2003); see Zafiro v. United States, 506 U.S. 534, 537-39 (1993). Severance of properly joined defendants should be ordered "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  Zafiro, 506 U.S. at 537-39.

A defendant seeking severance has an "extremely difficult" and "extremely heavy burden" of showing that the prejudice from a joint trial would be so "severe" and "substantial" as to "amount to a miscarriage of justice."  United States v. Casamento, 887 F.2d 1141, 1149 (2d Cir. 1989); see United States v. Cardascia, 951 F.2d 474, 482 (2d Cir. 1991) ("The defendant must establish prejudice so great as to deny him a fair trial.").  The decision whether to grant a motion for severance is committed to the sound discretion of the trial judge and will not be disturbed on appeal absent a showing that a defendant was substantially prejudiced by a joint trial.  See Casamento, 887 F.2d at 1149.  However, "[i]n exercising this discretion, the Court must pay heed to the powerful institutional interests in judicial economy favoring joint rather than separate trials."  United States v. Henry, 861 F. Supp. 1190, 1199 (S.D.N.Y. 1994); see United States v. Rosa, 11 F.3d 315, 341 (2d Cir.

---

[2]    The moving defendants do not dispute that they are properly joined.  See BRS Br. at 25 (arguing that defendants may be misjoined, but only if the Court grants a pending motion to dismiss); LS Br. at 6.

1993) ("The principles that guide the district court's consideration of a motion for severance usually counsel denial.").  In those rare instances when a defendant establishes a high risk of prejudice, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice."  Zafiro, 506 U.S. at 539.

In the racketeering context, a motion for severance based on claims of "spillover" prejudice faces additional hurdles.  Characterizing arguments based on these claims in racketeering cases as "overstated if not entirely meritless," the Second Circuit in United States v. DiNome, reasoned as follows:

> [T]he government must prove an enterprise and a pattern of racketeering activity as elements of a RICO violation.  18 U.S.C. § 1962(c).  Proof of these elements may well entail evidence of numerous criminal acts by a variety of persons, and each defendant in a RICO case may reasonably claim no direct participation in some of those acts.  Nevertheless, evidence of those acts is relevant to the RICO charges against each defendant, and the claim that separate trials would eliminate the so-called spillover prejudice is at least overstated if not entirely meritless.

954 F.2d 839, 843 (2d Cir. 1992); see United States v. Triumph Capital Grp., Inc., 260 F. Supp. 2d 432, 438 (D. Conn. 2002) ("[I]n RICO prosecutions, there is little danger of prejudice from spillover evidence because evidence is generally admissible against all RICO defendants to prove the existence and nature of the racketeering enterprise and the relationship and continuity of the predicate acts which is needed to establish a pattern of racketeering."); see also United States v. James, 712 F.3d 79, 104 (2d Cir. 2013) (upholding denial of severance because purported spillover prejudice was caused by evidence admissible against complaining defendant to prove he was part of racketeering enterprise); United States

6

v. Diaz, 176 F.3d 52, 103 (2d Cir. 1999) (similarly upholding denial of severance when alleged spillover prejudice was caused by evidence that was also admissible against complaining defendants as evidence of the racketeering enterprise of which the complaining defendants were alleged to be members); United States v. Tellier, 83 F.3d 578, 582 (2d Cir. 1996); United States v. Bellomo, 954 F. Supp. 630, 650 (S.D.N.Y. 1997).

The preference in favor of a joint trial is particularly strong where, as here, the defendants are alleged to have participated in a "common plan or scheme," United States v. Salameh, 152 F.3d 88, 115 (2d Cir. 1998), or where the defendants are "charged in the same conspiracy." United States v. Pirro, 76 F. Supp. 2d 478, 483 (S.D.N.Y. 1999) (collecting cases); see also United States v. Spinelli, 352 F.3d 48, 55 (2d Cir. 2003) (holding that joint trials are "particularly appropriate" when defendants are charged in the same criminal conspiracy). As the Supreme Court has observed, "[i]t would impair both the efficiency and the fairness of the criminal justice system to require . . . that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand." Richardson v. Marsh, 481 U.S. 200, 209-10 (1987) (detailing ways in which joint trials "serve the interests of justice").

B.    Discussion

Assessed against this demanding standard, the defendants' motions for severance should be denied. All six defendants are charged with participating in the same racketeering conspiracy. They are accused of engaging in the same pattern of racketeering

activity with the aim of promoting Raniere and recruiting others into organizations Raniere founded for financial and personal benefits.  See Indictment ¶ 16; see also United States v. Basciano, 599 F.3d 184, 205-07 (2d Cir. 2010) (stating a defendant's pattern of racketeering is properly identified by reference to all of the alleged conduct whether or not ascribed to the particular defendant); United States v. Pizzonia, 577 F.3d 455, 459 (2d Cir. 2009) (observing that object of racketeering "is to conduct the affairs of a charged enterprise through a pattern of racketeering, not to commit discrete predicate acts").

Defendants Bronfman, Kathy Russell, Nancy Salzman, and Lauren Salzman seek to be tried separately from defendants Raniere and Mack, claiming variously that they would be substantially prejudiced by a trial with their co-defendants in light of "spillover prejudice" from the DOS-related evidence presented against Raniere and Mack (BRS Br. at 21, LS Br. at 17-18), the complexity of the Indictment (LS Br. at 11), purported differences in culpability (LS Br. at 15), and potential conflict of defense theories (LS Br. at 16).  These arguments misapprehend the significance of being charged together in the same racketeering conspiracy.  To establish the defendants' participation in the charged conspiracy, the government must prove that each defendant conspired "to conduct and participate, directly and indirectly, in the conduct of the affairs of [the] enterprise" through the same pattern of racketeering.  See Indictment ¶ 15; Basciano, 599 F.3d at 207 ("the 'various criminal activities' of racketeering confederates are admissible against each defendant 'to prove: (i) the existence and nature of the RICO enterprise and (ii) a pattern of racketeering activity on the part of each defendant by providing the requisite relationship and continuity of illegal activities.'" ) (quoting DiNome, 954 F.2d at 844).

8

Claims of "spillover prejudice" fail because evidence of DOS is admissible against each of the defendants as proof of the existence of the Enterprise and as proof of the nature, purposes, and activities of the Enterprise. The defendants' arguments also ignore that that same evidence will be admitted against each of them in order to prove the racketeering conspiracy with which they are charged. Presenting this evidence in two or three separate trials would result in tremendous inefficiency, cost in time and resources, and hardship to witnesses. As such, the defendants have not met their "heavy burden" of showing substantial prejudice, and their motions should be denied.

1. <u>Defendants' Claims of "Spillover" Prejudice Relating to DOS Do Not Warrant Severance</u>

According to defendants Bronfman, Russell, and Nancy Salzman, severance is appropriate because a separate trial would "feature little or no evidence" about DOS because it is "totally unrelated to the charges" against them. (BRS Br. at 25.) Further, they claim, the evidence related to DOS is so "shocking" that it would "poison the jury against everyone sitting at the defense table." (<u>Id.</u> at 6.) While acknowledging that she was a member of DOS, Lauren Salzman also claims that she will be prejudiced by the specific sex trafficking evidence presented against defendants Raniere and Mack because a jury might "wrongly equate her membership in DOS with sex trafficking." (LS Br. at 5.)

What the moving defendants ignore is that each of them is charged in a single racketeering conspiracy count which forms the core of the Indictment, and the evidence relating to DOS (among other evidence) is admissible against all the defendants as proof of the racketeering conspiracy they are all alleged in Count One to have joined. <u>See</u> <u>Bellomo,</u>

9

954 F. Supp. at 650 ("A RICO charge allows the government to introduce evidence of
criminal activities in which a defendant did not participate to prove the enterprise element."
(quoting Tellier, 83 F.3d at 582 (alteration omitted)).  For this reason, the defendants'
assertions that the allegations related to DOS are "unrelated to the charges" against them,
(BRS Br. at 21), or would not be admissible against them in a separate trial, are wrong.
Evidence of all the defendants' and their co-conspirators' misconduct is proof of the
racketeering enterprise as well as its methods and means, and thus is admissible against all
the defendants.

       Even if Bronfman, Russell, and Nancy Salzman were granted a separate trial,
the type of evidence they complain of would still be admissible against them to establish the
"existence and nature of the RICO enterprise" and "a pattern of racketeering activity on the
part of each defendant by providing the requisite relationship and continuity of illegal
activities."  Basciano, 599 F.3d at 205-07 (quoting DiNome, 954 F.2d at 843-44).  Indeed,
the jury charge given in racketeering conspiracy cases instructs the jury that, to find the
defendant knowingly joined in the charged racketeering enterprise, the government is "not
required to prove that each coconspirator explicitly agreed with every other coconspirator to
commit the substantive RICO offense, or knew all his fellow conspirators or was aware of all
the details of the conspiracy.  Rather, to establish sufficient knowledge, it is only required
that a defendant know the general nature and common purpose of the conspiracy and that the
conspiracy extends beyond his individual role."  See, e.g., Jury Charge in Baldassare Amato,
et al., 03-CR-1382 (NGG); see also Pizzonia, 577 F.3d at 459 (observing that object of

racketeering "is to conduct the affairs of a charged enterprise through a pattern of racketeering, not to commit discrete predicate acts").

Therefore, "[e]vidence at the joint trial of alleged co-conspirators that, because of the alleged conspiratorial nature of the illegal activity, would have been admissible at a separate trial of the moving defendant is neither spillover nor prejudicial." United States v. Rosa, 11 F.3d at 341; Triumph Capital Grp., Inc., 260 F. Supp. 2d at 438 ("[I]n RICO prosecutions, there is little danger of prejudice from spillover evidence because evidence is generally admissible against all RICO defendants to prove the existence and nature of the racketeering enterprise and the relationship and continuity of the predicate acts which is needed to establish a pattern of racketeering."). See generally Zafiro, 506 U.S. at 540 ("[A] fair trial does not include the right to exclude relevant and competent evidence."); United States v. Stewart, 590 F.3d 93, 123-24 (2d Cir. 2009) ("[T]he fact that testimony against a codefendant may be harmful is not a ground for severance if that testimony would also be admissible against the moving defendant tried separately." (internal quotation marks omitted) (alteration in original)); United States v. Nersesian, 824 F.2d 1294, 1304 (2d Cir. 1987) (stating that the government is "entitled to show the entire range of evidence of the conspiracy against each [co-conspirator]"). For these reasons, the defendants' claim of "spillover" prejudice relating to DOS does not provide a basis to order severance under Rule 14.

Courts have rejected similar arguments for severance in other racketeering cases. For instance, in United States v. Diaz, a defendant sought severance on the ground that although he was charged as part of a racketeering enterprise, the Latin Kings, the

11

admission of evidence of eight murders in which he had not participated caused him substantial spillover prejudice.   176 F.3d 102 (2d Cir. 1999).  The Second Circuit rejected the argument, as "the evidence in dispute [was] relevant to the charges against all RICO defendants because it tended to prove (1) the existence and nature of the Latin Kings and their RICO enterprise and (2) a pattern of racketeering activity on the part of each RICO defendant by providing the requisite relationship and continuity of illegal activities."  Id. at 103 (citing Dinome, 954 F.2d at 843-44).  The Second Circuit has also rejected arguments that a joint trial results in substantial prejudice because a jury may hear testimony of violent or disturbing behavior unrelated to a particular defendant.  See United States v. Spilleni, 352 F.3d 48, 55 (2d Cir. 2003) (rejecting a defendant's argument that substantial prejudice resulted from the failure to sever him from his co-defendant brother despite testimony "from prosecution witnesses [who] related in graphic detail [his brother's] violent and murderous criminal history, a history [the defendant] did not share").

The cases relied on by the defendants are not to the contrary.  (See BRS Br. at 17-18; LS Br. at 8.)  In United States v. Gallo, 668 F. Supp. 736 (E.D.N.Y.  1987), Judge Weinstein found severance appropriate after concluding that the 22-count indictment charging 16 defendants—with a racketeering count that alleged 72 separate predicate acts spanning over a period of approximately 20 years—imposed intolerable burdens on the court and the parties.  Id. at 740-44, 755 (noting that such complex cases resulted in the "already overburdened docket of the court reach[ing] a breaking point," and the delay in the administration of justice for other cases before the court).  The court granted severance

12

motions primarily in the exercise of its discretion to control complex criminal cases.  Id.[3]

Similarly, in Dowtin, the magistrate granted the defendants' motions for severance in a case

in which the indictment charged eleven defendants with racketeering and other crimes.

United States v. Downtin, 10 Cr. 657 (SJ) (RML), 2012 WL 7679552, at *1,

(E.D.N.Y. Nov. 20, 2012) (magistrate judge report and recommendation), adopted by United

States v. Spicer, 10 Cr. 657 (SJ)(RML), 2013 WL 871952 (E.D.N.Y. Mar. 7, 2013).  The

magistrate judge denied the motion to sever filed by one of the defendants, but granted the

motions filed by three others and recommended that they be tried together.  Id. at *3-*5.  In

doing so, the magistrate judge reasoned that one of the moving defendants, "who was not

charged with racketeering or racketeering conspiracy," would have been subjected to a

significant amount of prejudicial evidence regarding gang-related violence, including

murders and assaults, that would not have been admissible against him because he was not

part of the alleged organized crime enterprise.  Id. (emphasis added).

---

[3]     Lauren Salzman's request for severance based on the complexity of the charges in the Indictment, see LS Br. at 8, is meritless.  Lauren Salzman herself concedes that the Indictment "names only six defendants and seven total substantive counts," but argues that there are "various 'conspiracies within conspiracies' involving different groups of defendants . . . all of which necessarily involve varying legal standards."  Id. at 8-9.  There is no reason to believe that a jury would be unable to understand this case or the Court's instructions.  See DiNome, 954 F.2d at 842 (affirming denial of defendants' severance requests in a nine-defendant case based on a 78-count indictment where the trial lasted for sixteen months); Casamento, 887 F.2d at 1149 (holding that a trial's length and complexity did not substantially prejudice defendants because "the nature of the evidence and the legal concepts involved in the case were not extraordinarily difficult to comprehend," as they might be in cases involving "abstruse economic theories" or "technical statistical evidence and formulae").

In United States v. Maisonet, No. S3 97 CR. 0817 (DC), 1998 WL 355414, at *5 (S.D.N.Y. July 1, 1998), the court granted the severance motion of a defendant who was the "present or former attorney of nine of the 18 other defendants" in the case and whose representation "could place him in the difficult position of choosing between complying with his ethical obligations as a lawyer and violating those obligations to secure his own freedom." Id. at *5. The district court considered that the charges against the defendant related only to his disclosure of the identity of a confidential informant and lying to a federal judge and were therefore "markedly different" from his co-defendants, who were charged with murder and other acts of violence. Id. at *6. The court concluded that "[w]hile none of the . . . factors alone might warrant severance," severance was warranted when they were "considered in combination." Id.

Here, unlike in Gallo, Dowtin, and Maisonet, each of the six defendants held important positions within the Enterprise. Severance is not warranted because evidence of each scheme will be important in proving the pattern of racketeering alleged against each of the defendants.[4]

---

[4]     Even if there were a significant difference between the allegations or evidence that will be offered against each defendant—which there is not—this would not provide a basis for severance because "differing levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials." United States v. Scarpa, 913 F.2d 993, 1015 (2d Cir. 1990) (internal quotation marks omitted).

The defendants' claim that the evidence relating to DOS has "nothing to do with them," BRS Br. at 22, and is uniquely "salacious and disturbing" BRS Br. at 23, is also factually inaccurate.  The evidence characterized by the defendants as solely "DOS-related," such as pledges of loyalty and sexual fidelity to Raniere, "breaches," "collateral," extreme dieting, and "penances," were not exclusive to DOS.  To the contrary, the government anticipates that at trial, it will establish that Bronfman, Russell, and Nancy Salzman were aware of, and routinely participated in, these practices.

As just one example, on June 19, 2014, a woman in a sexual relationship with Raniere sent an email to Nancy Salzman listing "goals" for her to "uphold caring for Keith above urges to abuse and indulge."  The physical goals included an extreme diet of "400-500 calories max" in order to "reach 95 lbs."  The email also specified certain "check ins," including the following:  "a.m. text with weight; p.m. text verifying I'm on track; phone call at night; weigh in Tuesdays and Fridays."  To this email, Nancy Salzman replied, "This is very good for the most part."  In September 2015, the woman sent a series of emails to Nancy Salzman expressing dissatisfaction with the compensation she was receiving as an employee of Nxivm.  Acknowledging that she had a personal relationship with Raniere, the woman stated:  "[I]f I knew that working here meant that unless I lost weight, was in good standing with KR, etc., my work with corporate would not be valued for what it is, and instead would be undervalued, that's a very different exchange than the one I think I'm under."  In a later email, the woman complained that she had attempted to "piece together" what she was owed "without ever understanding how Kathy [Russell] calculates my rate."  Nancy Salzman responded by telling the woman that she had benefitted by receiving

15

"individual personal training from Keith," a "personal interest free loan," and that Salzman had paid "for [her] gasoline."  Salzman also told the woman that her purported "breaches" were appropriately considered in calculating the woman's salary.

Similarly, the government will prove at trial that Bronfman, Russell, Nancy Salzman and Lauren Salman were themselves each in intimate relationships with Raniere and, at various times, undertook efforts to facilitate Raniere's access to other women.[5]  For instance, the government will prove that between approximately August 1, 2011 to September 1, 2018, Russell leased a property under an assumed name in Clifton Park, New York, at Raniere's direction.  The residence was used to house a DOS "slave" whose communications with Raniere feature significantly in the defendants' motion for severance. See, e.g., BRS Br. at 11, 14-15.

The government also expects to introduce evidence at trial that Bronfman and Nancy Salzman personally received emails from DOS "slaves" requesting the return of collateral.  As one example, on or about July 7, 2017, and on or about September 29, 2017, Bronfman received letters from separate DOS victims requesting the return or destruction of collateral, which included descriptions of the collateral, including nude photographs and videos.  Months later, in December 2017, Bronfman released a public statement

---

[5]    In arguing that she would be prejudiced by evidence of sex trafficking admitted against Raniere and Mack at a joint trial, Lauren Salzman ignores that she is specifically alleged to have engaged in trafficking a victim for labor and services and document servitude after confining a young woman to a room as punishment after the woman developed romantic feelings for a man who was not Raniere.

characterizing DOS as a "sorority," stating that it had "truly benefited the lives of its members, and does so freely.  I find no fault in a group of women (or men for that matter) freely taking a vow of loyalty and friendship with one another to feel safe while pushing back against the fears that have stifled their personal and professional growth."  Bronfman was also significantly involved in efforts to silence and intimidate DOS "slaves."  For example, and as described in greater detail in the government's motion regarding the defendants' assertions of attorney-client privilege, Bronfman and Raniere drafted letters addressed to DOS "slaves" that Bronfman and Raniere feared would publicly disclose the existence of DOS.  These letters were later sent to several DOS "slaves" by attorneys in Mexico.

Even if the Court were to hold that certain evidence would not be admissible in a separate trial of certain defendants, severance is not the solution.[6]  Rucker, 586 F.2d at 902.  The Second Circuit has held that proper limiting instructions can cure or sufficiently limit any prejudice from evidence related only to co-defendants.  See United States v. Spinelli, 352 F.3d at 55 (noting that spillover prejudice may be remedied by limiting instruction); United States v. Miller, 116 F.3d 641, 679 (2d Cir. 1997) (same); United States v. DeVillio, 983 F.2d 1185 (2d Cir. 1993) (upholding denial of severance motion where

---

[6]    Although it is premature to consider the admissibility of specific enterprise or "other act" evidence highlighted by the moving defendants, see BRS Br. at 22, if the Court admits such evidence only against one defendant, there is no reason to believe a jury would be unable to follow a limiting instruction regarding such evidence.

17

appellants, who were charged in one burglary, moved to sever from defendants charged with racketeering, racketeering conspiracy, six other burglaries and an attempted murder and citing district court's "explicit limiting instruction that testimony [concerning violence] could not be used against" appellants).

2.    <u>Judicial Efficiency and Fairness Support a Joint Trial</u>

Fundamental principles of judicial efficiency and fairness also weigh heavily in favor of a joint trial for the defendants.   As set forth above, in order to convict the defendants of racketeering conspiracy, the government will have to establish, among other things, that (a) Raniere and his inner circle, including the defendants, comprised the Enterprise, which had specific identified purposes and means and methods; and (b) the members of the Enterprise engaged in a pattern of racketeering activity involving various crimes, including identity theft, harboring of aliens for financial gain, extortion, forced labor, sex trafficking, money laundering, wire fraud and obstruction of justice.  (<u>See</u> Indictment ¶ 6.)

The government expects to present voluminous overlapping evidence against the defendants, including substantial racketeering enterprise evidence, such as the testimony of former members of the Enterprise, victims and eye witnesses, as well as audio and video recordings.  Thus, denying the defendants' severance motions will serve a number of compelling interests, including conserving time and scarce judicial resources; preventing numerous witnesses and law enforcement agents from having to testify more than once; and avoiding giving an arbitrary advantage to certain defendants based on the order in which they are tried.

18

In addition, denying the defendants' motions will also avoid unnecessarily subjecting crime victims to having to testify more than once.  As the Second Circuit observed in affirming the denial of a severance motion in United States v. O'Connor, "much of the evidence, including virtually all of the disturbing testimony given by [the victim] about being abused and photographed by [Defendant 1] would have been admissible at a trial of [Defendant 2] alone.  And given the sordid nature of the case, it was appropriate to avoid unnecessarily subjecting [the victim] to the trauma of having to give her trial testimony more than once."  650 F.3d 839, 859 (2d Cir. 2011).

3.    No Defendants Have Articulated Antagonistic Defenses

Finally,  Lauren Salzman argues, without detail or explanation, that there is "undoubtedly a risk of conflict between" her defense and that of "Raniere and Mack."  (LS Br. at 17.)  To obtain a severance on the ground of antagonistic defenses, a defendant must show that the conflict is so irreconcilable that, "in order to accept the defense of one defendant, the jury must of necessity convict a second defendant."  Cardascia, 951 F.2d at 484.  As the Supreme Court has explained, however, there is no "bright-line rule" that mutually antagonistic defenses require severance.  Zafiro, 506 U.S. at 538.  To the contrary, the Second Circuit has consistently found that mutually antagonistic defenses do not require severance except in rare circumstances.  See United States v. O'Connor, 650 F.3d 839, 858-59 (2d Cir. 2011); In re Terrorist Bombings of U.S. Embassies in E. Africa, 552 F.3d 93, 132 (2d Cir. 2008); Diaz, 176 F.3d at 103-04 (upholding denial of severance for antagonistic defenses when one defendant testified that a second defendant committed a charged murder and a third defendant testified that two defendants had tried to kill him).

19

"Mere fingerpointing among co-defendants does not require severance." Casamento, 887 F.2d at 1154 (internal quotation marks omitted); see also United States v. Villegas, 899 F.2d 1324, 1346-48 (2d Cir. 1990); United States v. Aquart, No. 06-CR-160 (JBA), 2010 WL 3211074, at *6 (D. Conn. Aug. 13, 2010); United States v. Schlegel, No. 06-CR-550 (JS), 2009 WL 3837305, at *4 (E.D.N.Y. Nov. 16, 2009). Such "finger-pointing" or blame-shifting is unlike the "rare" factual situation where one defendant has made a clear showing that he will call a neutral witness whose testimony will support a theory that is both inconsistent with the government's theory of the case and inculpates the moving defendant, making one defendant a "second prosecutor" of another. United States v. Copeland, 336 F. Supp. 2d 223, 224-25 (E.D.N.Y. 2004) (internal quotation marks omitted).

Lauren Salzman does not even attempt to demonstrate how any defense or testimony she expects to elicit would conflict with any defense theory put forward by Raniere or Mack, let alone conflict to such a degree that the "conflict alone indicate[s] that both defendants [are] guilty." Cardascia, 951 F.2d at 484. Indeed, she concedes that she is "not aware of the theories and strategies that Raniere and Mack may ultimately employ at trial, nor is she prepared to discuss the details of her own trial strategies." LS Br. at 14. Accordingly, her argument for severance fails.

20

II.     The Trial Schedule Set by the Court Has No Bearing On Severance

Lastly, defendants Bronfman, Russell, and Nancy Salzman claim that they should be severed from the other defendants because they have grave concerns that the trial date "is not feasible, and that they do not have sufficient time to prepare for trial in a manner consistent with their ethical obligations to their clients." BRS Br. at 23. Because, the defendants claim, Raniere does not consent to adjourn the trial date further, the defendants propose that two trials is the "appropriate means of accommodate their conflicting interests."[7] BRS Br. at 23. This claim is mooted by the Court's postponement of the trial date in this case to April 29, 2019, see Memorandum & Order, ECF Docket Entry No. 287, and, in any event, is meritless, since Raniere has not sought severance from his co-defendants.

---

[7]     The government notes that, despite Raniere's protestations, see Letter Demanding March 2019 Trial, ECF Docket Entry No. 280, Raniere's own conduct during the pretrial phase of this case reflects his acknowledgment of the complexity of this case and his own significant contributions to the length of the pretrial period. Raniere has filed or joined in voluminous defense pretrial motions, including motions to dismiss every count of the indictment in which he is charged (see ECF Docket No. 192, 194, 198, 200), among other motions (see ECF Docket No. 198), as well as a recent motion to suppress and request for a Franks hearing (see ECF Docket No. 269), and has asserted various disputed attorney-client privileges which are the subject of pending litigation and have not yet been resolved, all of which requires response from the government and careful review and adjudication by the Court, and has stated that he intends to make additional pretrial motions in the future. Therefore, Raniere's position regarding the trial date, as set forth in his letter, is undercut by his own contribution to the myriad pretrial issues that must be resolved before this case can be tried.

21

CONCLUSION

For the reasons set forth above, the government respectfully submits that the defendants' motions are without merit and should be denied.

Dated:      Brooklyn, New York
            January 23, 2019

                                    Respectfully submitted,

                                    RICHARD P. DONOGHUE
                                    UNITED STATES ATTORNEY
                                    Eastern District of New York
                                    271 Cadman Plaza East
                                    Brooklyn, New York 11201

Moira Kim Penza
Tanya Hajjar
Kevin Trowel
Assistant United States Attorneys
      (Of Counsel)

22