MKM:TH/MKP/KMT

F. #2017R01840

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

     - against -

KEITH RANIERE,
CLARE BRONFMAN,
ALLISON MACK,
KATHY RUSSELL,
LAUREN SALZMAN and
NANCY SALZMAN,

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

Docket No. 18-204 (S-1) (NGG) (VNS)

THE GOVERNMENT'S MEMORANDUM OF LAW IN
RESPONSE TO DEFENDANT CLARE BRONFMAN'S
SUPPLEMENTAL MOTION TO DISMISS

RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Moira Kim Penza
Tanya Hajjar
Mark J. Lesko
Kevin Trowel
Assistant U.S. Attorneys
    (Of Counsel)

1

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................... 3

ARGUMENT .................................................................................................................................. 5

I.     Applicable Law ............................................................................................................ 5

II.    Discussion .................................................................................................................... 6

        A.     Section 1324(a)(1)(A)(iv) Is Not Facially Unconstitutional .................................. 7

        B.     Section 1324(a)(1)(B)(i) Does Not Raise First Amendment
              Concerns ................................................................................................................. 14

        C.     Sections 1324(a)(1)(A)(iv) and (a)(1)(B)(i) are not
              Unconstitutionally Vague or Discriminatory ....................................................... 16

PRELIMINARY STATEMENT

By letter dated December 7, 2018 (DE 233), defendant Clare Bronfman moved to supplement her motion to dismiss (DE 194) in light of the Ninth Circuit's December 4, 2018 decision in United States v. Sineneng-Smith, 910 F.3d 461 (9th Cir. 2018). In Sineneng-Smith, the Ninth Circuit held that 18 U.S.C. § 1324(a)(1)(A)(iv) is "unconstitutionally overbroad in violation of the First Amendment." 910 F.3d at 467–68. In Bronfman's letter, she urges this Court to adopt the Ninth Circuit's reasoning, conclude that the statute is facially invalid, and dismiss Racketeering Act 5A of the superseding indictment in the above-cited matter, which is premised on this statute.[1]

For the reasons set forth below, the government respectfully submits that the Court should decline Bronfman's invitation to employ the "last resort" of facial invalidation. See Los Angeles Police Dep't v. United Reporting Pub. Corp., 528 U.S. 32, 39 (1999). In Sineneng-Smith, the Ninth Circuit failed to heed the Supreme Court's admonition that courts "construe [a] statute to avoid constitutional problems, if the statute is subject to such a limiting construction." New York v. Ferber, 458 U.S. 747, 769 (1982). The court instead imposed an impermissibly broad construction on the statute, thereby inviting a constitutional confrontation and creating a circuit split. See DelRio-Mocci v. Connolly Props. Inc., 672 F.3d 241, 249 (3d Cir. 2012) (construing "encourage[] or induce[]" to "refer[] to conduct that causes someone to do

---

[1] As noted at oral argument before the Court on January 9, 2019, following the Sineneng-Smith decision, the government petitioned for rehearing en banc before the Ninth Circuit. The petition was denied on February 12, 2019. At the government's request, the Ninth Circuit has stayed issuance of the mandate until May 6, 2019. See United States v. Sineneng-Smith, 15-10614 (9th Cir.) (DE 124).

something that they otherwise might not do."); United States v. Tracy, 456 F. App'x 267, 272 (4th Cir. 2011) (rejecting facial overbreadth challenge to § 1324(a)(1)(A)(iv)). As set forth below, considered in its proper context, § 1324(a)(1)(A)(iv) applies primarily to conduct and encompasses little or no protected speech.

Moreover, Racketeering Act 5A alleges that Bronfman agreed that the alleged crime would be committed with the aggravated "purpose of financial gain." (Superseding Indictment ¶ 24 (alleging violation of 18 U.S.C. § 1324(a)(1)(B)(1), which increases the statutory maximum sentence where violation "was done for the purpose of commercial advantage or private financial gain")). Whatever the merits of the Ninth Circuit's holding as applied to § 1324(a)(1)(A)(iv), it is implausible that a "substantial" amount of protected speech is implicated by the aggravated version of the statute set forth in § 1324(a)(1)(B)(1). Accordingly, the Court should deny Bronfman's motion.

ARGUMENT

For the reasons that follow, the Court should deny Bronfman's supplemental motion to dismiss.

I. Applicable Law

"According to [the] First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a substantial amount of protected speech." United States v. Williams, 553 U.S. 285, 292 (2008). "[T]o prevail on [such] a facial attack" the defendant "must demonstrate that the challenged law either 'could never be applied in a valid manner' or that even though it may be validly applied to the [movant] and others, it nevertheless is so broad that it 'may inhibit the constitutionally protected speech of third parties.'" New York State Club Ass'n v. City of New York, 487 U.S. 1, 11 (1988) (quoting City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 798 (1984)). As the Supreme Court has explained, "the latter kind of facial challenge" – the kind raised by Bronfman – "is an exception to ordinary standing requirements, and is justified only by the recognition that free expression may be inhibited almost as easily by the potential or threatened use of power as by the actual exercise of that power." New York State Club Ass'n, 487 U.S. at 11.

The doctrine is "narrow." Id. The "'mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge.'" Williams, 553 U.S. at 303 (quoting City Council of Los Angeles, 466 U.S. at 800). Rather, a challenge based on the purported inhibition of third-party speech "will not succeed unless the statute is 'substantially' overbroad, which requires the court to find 'a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court.'" Id. (quoting City Council of Los Angeles, 466 U.S. at 801).

5

"[T]o maintain an appropriate balance" between First Amendment concerns and Congress's strong interest in regulating "conduct so antisocial that it has been made criminal," the Supreme Court "ha[s] vigorously enforced the requirement that a statute's overbreadth be substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." Williams, 553 U.S. at 292–93 (quoting Board of Trustees of State Univ. of N.Y. v. Fox, 492 U.S. 469, 485 (1989)).

A party challenging the facial validity of a statue faces "a heavy burden." Nat'l Endowment for the Arts v. Finley, 524 U.S. 569, 580 (1998). The Supreme Court has made clear that the overbreadth doctrine is "an exception to [the Court's] traditional rules of practice" that is "not casually employed." Los Angeles Police Dep't, 528 U.S. at 39–40. "Because of the wide-reaching effects of striking down a statute on its face at the request of one whose own conduct may be punished despite the First Amendment, we have recognized that the overbreadth doctrine is 'strong medicine' and have employed it with hesitation, and then 'only as a last resort.'" Id. (quoting Ferber, 458 U.S. at 769). An overbroad statute may be invalidated only if it is "not readily subject to a narrowing construction." Erznoznik v. City of Jacksonville, 422 U.S. 205, 216 (1975).

II.    Discussion

Section 1324(a)(1)(A)(iv), of Title 8 of the United States Code make it unlawful to "encourage[] or induce[] an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law." This statue is listed in 18 U.S.C. § 1961(F) and it forms the basis of Racketeering Act 5A, which alleges that:

> In or about March 2009, within the Northern District of New York and elsewhere, the defendant CLARE BRONFMAN, together with others, did knowingly and intentionally encourage and induce an alien, to wit: Jane Doe 3, an individual whose identity is known to the Grand Jury, to come to, enter and reside in the United States, knowing and in reckless disregard of the fact that such coming to, entry and residence was and would be in violation of law, for the purpose of financial gain, in violation of Title 8, United States Code, Sections 1324(a)(l)(A)(iv), 1324(a)(l)(B)(i) and 1324(a)(l)(A)(v)(II).

(Superseding Indictment ¶ 24).

On December 4, 2018 the Ninth Circuit issued its opinion in Sineneng-Smith, holding that the statute is "unconstitutionally overbroad in violation of the First Amendment." 910 F.3d at 485. The Ninth Circuit's analysis is premised on an expansive construction of the word "encourage," on which the court rested its conclusion that the statute criminalizes "pure advocacy on a hotly-debated issue in our society." Id. at 484. As set forth below, the Ninth Circuit's analysis is flawed and this Court should decline Bronfman's invitation to adopt it.

A.  Section 1324(a)(1)(A)(iv) Is Not Facially Unconstitutional

The Ninth Circuit's analysis proceeds from the faulty premise that the phrase "encourage[] or induce[]" as used § 1324(a)(1)(A)(iv) encompasses a substantial amount of protected speech relative "to the statute's plainly legitimate sweep." Williams, 553 U.S. at 292–93. The Ninth Circuit began by defining the terms, explaining that

> "encourage" means "to inspire with courage, spirit, or hope . . . to spur on . . . to give help or patronage to." Similarly, ["]induce[´] means "[t]o lead (a person), by persuasion or some influence or motive that acts upon the will . . . to lead on, move, influence, prevail upon (any one) to do something."

Sineneng-Smith, 910 F.3d at 473 (citations omitted); United States v. Vargas-Cordon, 733 F.3d, 366, 380–81 (2d Cir. 2013) (noting that the Court's first task is "to determine whether the

7

language at issue has a plain and unambiguous meaning"). Based on these definitions, the Ninth Circuit apparently failed to discern any meaningful difference in the definitions, instead concluding that "the proximity of encourage and induce to one another does not aid our analysis." Sineneng-Smith, 910 F.3d at 474.

This was error. The word "induce" is prevalent in the criminal code, see, e.g., 18 U.S.C. §§ 2, 201, 373, 1512, 1951, 2242, 2251, and, in its common meaning, it indicates the action of overcoming the will or judgment of another. See, e.g., United States v. Krikheli, 461 F. App'x 7, 11 (2d Cir. 2012) (holding in Medicare fraud case that district court "accurately described the law" in instructing jury that "[t]o induce a person means to attempt to gain influence over the reason or judgment of that person"). The common understanding of "induce," in other words, is different than to "persuade" or to "convince."[2] Although one seeking to "induce" may use language to accomplish his aim, such language does not implicate the First Amendment. See, e.g., Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 502 (1949) ("[I]t has never been deemed an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed."); United States v. Rowlee, 899 F.2d 1275, 1278 (2d Cir. 1990) (affirming conviction under 18 U.S.C. § 371 and noting that defendants' "conduct was not protected by the First Amendment merely because, in part, it may have

---

[2] See, e.g., 18 U.S.C. § 2251 (criminalizing actions ranging from "employ[ment]" to "coerc[ion]" and distinguishing between "persua[sion]" and "induce[ment]" along that spectrum); 18 U.S.C. § 373 ("Whoever . . . solicits, commands, induces, or otherwise endeavors to persuade such other person to engage in such conduct, shall be imprisoned.").

8

involved the use of language."). The "inducement" of a criminal violation is not "pure advocacy on a hotly-debated issue in our society," Sineneng-Smith, 910 F.3d at 484, and is therefore not protected speech, see, e.g., Healy v. James, 408 U.S. 169, 192 (1972) ("[T]he critical line for First Amendment purposes must be drawn between advocacy, which is entitled to full protection, and action, which is not."); Columbia Broad. Sys., Inc. v. Democratic Nat. Comm., 412 U.S. 94, 193 (1973) ("[T]he First Amendment must therefore safeguard not only the right of the public to hear debate, but also the right of individuals to participate in that debate and to attempt to persuade others to their points of view."); Pro-Choice Network of W. New York v. Schenck, 67 F.3d 377, 395 (2d Cir. 1995) (en banc) (Winter, J., concurring) (discussing the First amendment's concern with the "right to persuade").

Tellingly, in Sineneng-Smith, the Ninth Circuit all but ignored the word "induce" and instead focused almost exclusively on the word "encourage." In so doing, the Ninth Circuit effectively nullified Congress's use of a well-understood term in order to engage in "fanciful hypotheticals," United States v. Stevens, 559 U.S. 460, 485 (2010). See Sineneng-Smith, 910 F.3d at 467 ("I encourage you to stay here."), 483 ("a loving grandmother who urges her grandson to overstay his visa, by telling him I encourage you to stay" (quotation marks omitted)), 484 ("I encourage all you folks out there without legal status to stay in the U.S.!").

Moreover, the Ninth Circuit failed even to reasonably construe the word "encourage." This is evident from the Ninth Circuit's parade of horribles, in which the court conflated the meaning of the word "encourage" with the use of the word "encourage." For example, it is contrary to the commonly understood definition of "encourage" to assert that the mere statement "I encourage you to stay here" constitutes "encouragement." Cf. Sineneng-Smith, 910 F.3d at 467. That statement on its own would no more "inspire with courage, spirit,

9

or hope . . . spur on [or] give help or patronage to" than the phrase "I induce you to stay" would "act[] upon the will" of another. See Sineneng-Smith, 910 F.3d at 473 (definitions used by Ninth Circuit). Perhaps those words could be understood as evidence of encouragement if, for example, the speaker also extended his arm to offer a sum of money or a key to an apartment; or places his hand on a gun in his waistband, such that the phrase could be understood as a threat. But the verb "to encourage" as used in the statute refers to a concept, and serves to identify a category of behavior that warrants punishment. The mere words – "I encourage you" – without more, would not meet the definition of "encourage" offered by the Ninth Circuit in Sineneng-Smith, and would not, even under that definition, be swept within the ambit of the statute. See Williams, 553 U.S. at 298–99 ("To be sure, there remains an important distinction between a proposal to engage in illegal activity and the abstract advocacy of illegality.").[3]

The Ninth Circuit's method of statutory interpretation in Sineneng-Smith is contrary to the Supreme Court's admonition that, "[w]hen a federal court is dealing with a federal statute challenged as overbroad, it should, of course, construe the statute to avoid constitutional problems, if the statute is subject to such a limiting construction." Ferber, 458 U.S. at 769. Rather than narrow the statute, the Ninth Circuit began with an impermissibly broad construction of the word "encourage," which the court then used to expand the common understanding of the word "induce." Far from undertaking to avoid the constitutional question,

---

[3] This false equivalence is also apparent from the court's citation to Williams. Sineneng-Smith, 910 F.3d at 475. Although the Supreme Court explained in Williams that the phrase "I encourage you to obtain child pornography" is protected speech, it did not suggest that such speech constituted "encouragement." Williams, 553 U.S. at 300. Indeed, the Court described this speech as "abstract advocacy." Id.

10

through this approach the Ninth Circuit panel invited an unnecessary and improper constitutional confrontation.

Properly understood in context, the word "encourage" means "to help." Indeed, the Ninth Circuit acknowledged that "[m]any other courts have concluded that encourage can mean 'to help,'" but the court simply ignored that authority. See Sineneng-Smith, 910 F.3d at 476 (collecting cases); see also, e.g., Tracy, 456 F. App'x at 72 (holding that § 1324(a)(1)(A)(iv) does not "make it illegal to encourage unlawful travel to another country. What it makes illegal is to encourage or to induce a non-citizen to come into this country, either directly or indirectly, 'knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law.'"); United States v. He, 245 F.3d 954, 957–59 (7th Cir. 2001) (approving jury instruction equating knowingly helped or advised with "encouraged"). And here, again, the Ninth Circuit employed flawed reasoning, asserting that "[t]o 'help' is not a helpful limitation in terms of excluding expression, because speech can help someone decide to enter or to reside in the United States." Id. at 477 (emphasis in original). But it is a false equivalence to assert that, in the common understanding, "to help" and "to help decide" mean the same thing. The former is a word connoting action.[4] The latter has several synonyms, including "persuade" and "convince." The Ninth Circuit's analysis might be relevant if the statute contained those terms,

---

[4] The Oxford English Dictionary defines the verb to "help" to mean "[t]o furnish (a person, etc.) with what is serviceable to his efforts or his needs; to aid, assist" or "[t]o add one's own action or effort to that of (another) so as to make it more effectual; to further the action or purpose of." Help, Oxford English Dictionary, http://www.oed.com/view/Entry/85740?rskey=pBGD9W&result=2&isAdvanced=false#eid.

11

but it is irrelevant to the construction of the word "encourage" in context.[5] See United States v. Cullen, 499 F.3d 157, 163, (2d Cir. 2007) ("Although we recognize in many English words there lurk uncertainties, to meet the fair warning prong an ounce of common sense is worth more than an 800–page dictionary." (citation omitted)).

The Third Circuit's construction of "encourage[] or induce[]" as used in § 1324(a)(1)(A)(iv) is instructive. See DelRio-Mocci, 672 F.3d 241. In DelRio-Mocci, the court concluded that the terms "encourage[] or induce[]" refer to "conduct" that is "substantial," i.e., "conduct that causes someone to do something that they might otherwise not do." Id. at 248. The Ninth Circuit rejected this construction on the ground that, in so holding, the Third Circuit "added a[] . . . substantiality requirement." Sineneng-Smith, 910 F.3d at 477. To the contrary, however, the Third Circuit reached this conclusion in light of the definitions of "induce" and "encourage." The court explained that:

> "Induce" is defined as "to move by persuasion or influence; to call forth or bring about by influence or stimulation; to cause the formation of; or to produce," and that word plainly refers to conduct that causes someone to do something that they might otherwise not do. . . . "[E]ncourage" is best defined as "'[t]o instigate; to incite to action; to give courage to; to inspirit; to embolden; to raise confidence; to make confident.'" These definitions demonstrate that the word "encourage," in the context

---

[5] In this flawed analysis, the Ninth Circuit also conflates "speech" with "protected speech" when it asserted that "speech can help someone decide to enter or to reside in the United States." For example, it is surely true that the sentence "I will give you a million dollars if you come to the United States" is "speech" and that such an offer might "help someone decide" to come to the United States. There can be no serious argument, however, that this offer made to an alien under the circumstances identified in § 1324(a)(1)(A)(iv) would constitute protected speech under the First Amendment.

> of this statute, <u>also refers to conduct that causes someone to do something that they otherwise might not do</u>.

<u>DelRio-Mocci</u>, 672 F.3d at 48–49 (emphasis added).

"The broader structure of § 1324(a) further supports reading" these terms as "sharing a common 'core of meaning' centered around" actions intended to assist an alien in violating civil or criminal immigration laws. <u>Cf.</u> <u>Vargas-Cordon</u>, 733 F.3d at 381 (construing term "harbors" in context of § 1324(a)). The first three subsections all plainly concern action, <u>i.e.</u>, "bring[ing]," § 1324(a)(1)(A)(i); "transport[ing] or mov[ing]," § 1324(a)(1)(A)(ii); and "conceal[ing], harbor[ing], or shield[ing] from detection," § 1324(a)(1)(A)(iii). It is entirely inconsistent with these provisions to interpret subsection (iv) as a provision directed primarily at speech. <u>See</u> <u>Sineneng-Smith</u>, 910 F.3d 461, 484 (suggesting that protected speech is "surely the most common form of encouragement or inducement within Subsection (iv)'s ambit.").

It is, by contrast, entirely consistent with the statutory structure to interpret subsection (iv) as a provision that prohibits acts intended to assist an alien in violating civil or criminal immigration laws that are not already covered under (i)-(iii). <u>See</u> <u>Virginia v. Hicks</u>, 539 U.S. at 124 ("[T]he overbreadth doctrine's concern with chilling protected speech attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from pure speech toward conduct." (internal quotation marks omitted)). For example, supplying a social security number to which the alien is not entitled, <u>United States v. Ndiaye</u>, 434 F.3d 1270, 1297-98 (11th Cir. 2006); "assisting a man to bring . . . three Chinese nationals through United States Immigration," <u>United States v. Fujii</u>, 301 F.3d 535, 540 (7th Cir. 2002); a border inspector improperly providing safe passage for an alien through a border checkpoint, <u>United States v. Figueroa</u>, 165 F.3d 111, 113 (2d Cir. 1998); providing false documents for citizenship

13

applications, United States v. Oloyede, 982 F.2d 133, 135-37 (4th Cir. 1992) (per curiam); providing an alien with a false passport and driving him across the border at a designated border crossing, United States v. Rabbani, No. 08-CR-118A, 2009 WL 1272276, at *2 (W.D.N.Y. May 7, 2009); or "devis[ing] a plan to recruit aliens . . . who would travel to the United States to be employed at [defendants] . . . stores," United States v. Calhelha, 456 F. Supp. 2d 350, 355 (D. Conn. 2006). So interpreted, subsection (iv) fits within, and furthers the purpose of, § 1324(a)(1)(A).

The "specter of unconstitutionality" that Bronfman raises is "largely illusory." United States v. Thompson, 896 F.3d 155, 163 (2d Cir. 2018). Bronfman cannot "demonstrate from the text of the law and from actual fact that a substantial number of instances exist in which the law cannot be applied constitutionally." Id. (internal quotation marks and alterations omitted). Because the statute properly construed does not implicate a "substantial" amount of protected speech "relative to the statute's plainly legitimate sweep," Williams, 553 U.S. at 292–93, "[a]pplications of the [statute] that violate the First Amendment can still be remedied through as applied litigation," Virginia v. Hicks, 539 U.S. 113, 124 (2003); Thompson, 896 F.3d at 165 n.9; Tracy, 456 F. App'x at 272 (holding that, "[a]lthough there may be some instances in which we might find that [§ 1324(a)(1)(A)(iv)] chills protected speech, we are unconvinced that the statute prohibits a substantial amount of such speech" and therefore "the statute is not invalid").

B. Section 1324(a)(1)(B)(i) Does Not Raise First Amendment Concerns

Even if the Ninth Circuit was correct in its construction of "encourage[] or induce[]," it failed to recognize the limiting effect of the aggravating factor set forth in § 1324(a)(1)(B)(i), i.e., that the defendant acted "for the purpose of commercial advantage or private financial gain." (See Superseding Indictment ¶ 24 (alleging violation of

14

§ 1324(a)(1)(B)(i)).  In Sineneng-Smith, the government argued that the presence of this aggravating factor was relevant to the court's overbreadth analysis, but the court rejected the argument in a footnote, asserting that, "[f]or the purposes of our overbreadth analysis, the commercial enhancement is irrelevant."  Sineneng-Smith, 910 F.3d at 471 n.5.

        The government is not aware of any authority to support this aspect of the Ninth Circuit's analysis.  The aggravating factor in § 1324(a)(1)(B)(i) raises the statutory maximum penalty from five years' to ten years' imprisonment, see 18 U.S.C. § 1324(a)(1)(B)(i), (ii), and it must be alleged in the indictment and proven beyond a reasonable doubt to the jury, Apprendi v. New Jersey, 530 U.S. 466, 494 (2000).  It is therefore an element of the crime.  See id. (holding that if a "finding expose[s] the defendant to a greater punishment than that authorized by the jury's guilty verdict," it is an element that must be proved to the jury); see also United States v. Ruiz-Hernandez, 890 F.3d 202, 210 (5th Cir. 2018) ("[W]e review the [§ 1324(a)(1)(B)(i)] enhancement along with the underlying conviction itself for sufficiency of the evidence."); United States v. Calimlim, 538 F.3d 706, 714 (7th Cir. 2008) (same); United States v. Williams, 449 F.3d 635, 646 (5th Cir. 2006) ("The 'financial gain' fact is an 'element' of a separate, greater offense.").

        The presence of the aggravating element in § 1324(a)(1)(B)(i) dramatically reduces, and likely eliminates, the possibility that the statute encompasses protected speech.  Indeed, it is difficult to conjure even a "fanciful hypothetical" in which a speaker is acting for his own commercial or pecuniary interest, knows or recklessly disregards the fact that the alien has no status, and his speech is nevertheless protected by the First Amendment.  Any speech that satisfies the elements of the aggravated version of the statute is a far cry from the "[d]iscussion

of public issues" that "occupies the core of the protection afforded by the First Amendment." McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 346 (1995).

Moreover, the presence of the aggravating factor answers the Ninth Circuit's parade of horribles. See United States v. Kim, 193 F.3d 567, 577 (2d Cir. 1999) (contrasting acts undertaken for purpose of financial gain with those undertaken as a result of "feelings of charity or affection"). In the Ninth Circuit's examples, neither the "loving grandmother" nor the advocate for the reform of immigration laws is encouraging an alien to come to, enter or reside in the United States "for the purpose of commercial advantage or private financial gain," Sineneng-Smith, 910 F.3d at 483, 484, and none of their identified speech would be implicated by the statute.

Because a violation of § 1324(a)(1)(A)(iv) and (a)(1)(B)(i) implicates little or no protected speech, the court should deny Bronfman's motion to dismiss.

C. Sections 1324(a)(1)(A)(iv) and (a)(1)(B)(i) are not Unconstitutionally Vague or Discriminatory

Bronfman's perfunctory arguments that the statute is also unconstitutionally vague and discriminatory (DE 233 at 2) should be rejected for the reasons set forth above. Indeed, it is clear from the single paragraph she devotes to these two issues that they rest on the same faulty premises as her overbreadth argument. Both arguments rely on the Ninth Circuit's misinterpretation of the word "encourage" and its mistaken conclusion that the statute proscribes a "substantial" amount of protected speech, rather than conduct. (DE 233 at 2 (asserting, with respect to vagueness, that "'[e]ncouragement' takes infinite forms, including the commonplace, innocuous examples" set forth in the Ninth Circuit opinion, and with respect to purported viewpoint discrimination, that the statute prohibits "encouraging messages" to

16

aliens)). If the Court rejects the Ninth Circuit's analysis for the reasons set forth above, it should reject these conclusory arguments for the same reasons. If, on the other hand, the Court adopts the Ninth Circuit's reasoning, it need not address these arguments. See Sineneng-Smith, 910 F.3d at 485 n.15 (declining to address vagueness argument in light of overbreadth holding). These arguments provide no independent basis to grant Bronfman the relief she seeks.

## CONCLUSION

For the reasons set forth above, the government respectfully submits that the defendant's motion to dismiss is without merit and should be denied.

Dated:   Brooklyn, New York
         February 25, 2019

                                        Respectfully submitted,

                                        RICHARD P. DONOGHUE
                                        UNITED STATES ATTORNEY
                                        Eastern District of New York
                                        271 Cadman Plaza East
                                        Brooklyn, New York 11201

Moira Kim Penza
Tanya Hajjar
Mark J. Lesko
Kevin Trowel
Assistant United States Attorneys
    (Of Counsel)