UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

  - v. -

KEITH RANIERE, CLARE BRONFMAN, ALLISON MACK, KATHY RUSSELL, and LAUREN SALZMAN,

                    Defendants.

Case No. 1:18 Cr. 00204-NGG

**ORAL ARGUMENT REQUESTED**

**Date of Service: March 22, 2019**

# MEMORANDUM OF LAW IN SUPPORT OF ALLISON MACK'S MOTIONS TO SEVER FROM DEFENDANT KEITH RANIERE, PRECLUDE EXPERT TESTIMONY BY DRS. HUGHES AND GRASSIAN, AND DISMISS THE INDICTMENT

William F. McGovern
Matthew I. Menchel
Sean S. Buckley
Gabriela M. Ruiz
800 Third Avenue
New York, New York 10022
Tel: (212) 488-1200

*Attorneys for Defendant Allison Mack*

# **TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** .................................................................................................. 1

**ARGUMENT** .................................................................................................................................. 2

    **I.   The Court Should Sever Ms. Mack's Trial from That of Raniere** ................................ 2

        A.   Evidence of Sexual Exploitation of a Child and Possession of Child Pornography Is Inadmissible against Ms. Mack under Rule 403 ............................................................. 3

        B.   Ms. Mack Cannot Receive a Fair Trial Alongside Raniere .............................................. 4

    **II.  In the Alternative, the Court Should Strike the Child Exploitation Acts from the S2 Indictment** ......................................................................................................................... 7

        A.   The Child Exploitation Acts Are Unrelated to the Charged Enterprise .......................... 8

        B.   The Court Should Hold an Evidentiary Hearing Regarding the Admissibility of the Child Exploitation Acts Outside the Presence of the Jury ............................................ 10

    **III. The Court Should Preclude the Testimony of Dr. Hughes and Dr. Grassian** ............ 10

**CONCLUSION** .......................................................................................................................... 14

i

# **TABLE OF AUTHORITIES**

**Cases**

*Bourjaily v. United States*, 483 U.S. 171 (1987) .......................................................................... 13

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) ........................................................... 13

*H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229 (1989) ......................................................................... 8

*Kumho Tire Company, Inc. v. Carmichael*, 526 U.S. 137 (1999) .................................................. 13

*United States v. Bourne*,
 No. 08-CR-888 NGG VVP, 2011 WL 4458846 (E.D.N.Y. Sept. 23, 2011) .............................. 3

*United States v. Cardascia*, 951 F.2d 474 (2d Cir. 1991) ................................................................ 7

*United States v. Cunningham*, 694 F.3d 372 (3d Cir. 2012) ........................................................... 6

*United States v. Daidone*, 471 F.3d 371 (2d Cir. 2006) ............................................................. 8, 9

*United States v. DiScala*,
 No. 14-CR-399 (ENV), 2018 WL 1187394 (E.D.N.Y. Mar. 6, 2018) ....................................... 5

*United States v. Dowtin*,
 No. 10-CR-657, 2012 WL 7679552 (E.D.N.Y. Nov. 20, 2012) ................................................ 5

*United States v. Gallo*, 668 F.Supp. 736 (E.D.N.Y. 1987) ......................................................... 5, 7

*United States v. Gray*, 78 F. Supp. 2d 524, 532 (E.D. Va. 1999) ................................................... 3

*United States v. Guillen-Rivas*, 950 F. Supp. 2d 446 (E.D.N.Y. 2013) .......................................... 7

*United States v. Ham*, 998 F.2d 1247 (4th Cir. 1993) ............................................................ 3, 4, 6

*United States v. Indelicato*, 865 F.2d 1370 (2d Cir. 1989) ............................................................. 9

*United States v. Loughry*, 660 F.3d 965 (7th Cir. 2011) ............................................................ 3, 6

*United States v. Maisonet*, 1998 WL 335414 (S.D.N.Y. Jul. 1, 1998) ........................................... 5

*United States v. Minicone*, 960 F.2d 1099 (2d Cir.1992) ............................................................... 9

*United States v. Page*, 657 F.3d 126 (2d Cir. 2011) ...................................................................... 5

*United States v. Polanco*, 145 F.3d 536 (2d Cir.1998) .................................................................. 8

*United States v. Prunick*, 273 F. App'x 807 (11th Cir. 2008) .......................................................... 4

*United States v. Spicer*, No. 10-CR-657 SJ RML, 2013 WL 871952 (E.D.N.Y. Mar. 7, 2013) .... 6

*United States v. Spinelli*, 352 F.3d 48 (2d Cir. 2003) ..................................................................... 5

*United States v. Sturm*,
    No. 06-CR-00342-LTB2007 WL 601976 (D. Colo. Feb. 22, 2007) ...................................... 3, 4

*United States v. Urso*, 369 F. Supp. 2d 254 (E.D.N.Y. 2005) ........................................................ 5

*United States v. Welshans*, 892 F.3d 566 (3d Cir. 2018) ........................................................... 3, 6

*United States v. Yousef*, 327 F.3d 56 (2d Cir. 2003) .................................................................... 13

*Zafiro v. United States*, 506 U.S. 534 (1993) ............................................................................ 3, 7

**Rules**

Fed. R. Crim. P. 14(a) ................................................................................................................. 4, 5

Fed. R. Crim. P. 16 ....................................................................................................................... 11

Fed. R. Crim. P. 16(b)(1)(G) ........................................................................................................ 11

Fed. R. Evid. 104(b) ..................................................................................................................... 10

Fed. R. Evid. 104(c)(3) ................................................................................................................. 10

**PRELIMINARY STATEMENT**

On March 13, 2018, a Grand Jury returned Superseding Indictment S2 18 Cr. 244 (NGG) ("S2 Indictment" or "S2 Ind.") against Ms. Mack and her codefendants. Though the charges against Ms. Mack barely changed from the underlying Indictment, the S2 Indictment added disturbing allegations against Raniere, including two counts of sexual exploitation of a child and one count of possession of child pornography. (S2 Ind. ¶¶ 41, 42, 43). In addition, the S2 Indictment adds three new predicate racketeering acts to the RICO conspiracy charged in the underlying Indictment—Racketeering Acts Two, Three, and Four (collectively, the "Child Exploitation Acts"). The Child Exploitation Acts are unrelated to any of the allegations against Ms. Mack, including the alleged RICO enterprise. They simply restate the conduct alleged only against Raniere in Counts Three, Four, and Five of the S2 Indictment, and improperly recast that conduct as part of a pattern of racketeering activity in an unabashed attempt to taint the RICO conspiracy, and Ms. Mack, with such inflammatory conduct that in reality has nothing to do with the alleged conspiracy.

If the Court does not dismiss the charges against Ms. Mack in the S2 Indictment, which it should for the reasons set forth in Ms. Mack's motion to dismiss the underlying Indictment, *see* Dkt. 213 ("Mack Motion to Dismiss"), the Court must sever Ms. Mack from the trial of Raniere.[1] The Court should not allow evidence of Child Exploitation Acts before any jury that will judge Ms. Mack. As an initial matter, any evidence of the alleged Child Exploitation Acts would highly

---

[1] By this Motion, Ms. Mack renews the arguments presented in the Mack Motion to Dismiss, and incorporates them herein by reference. Ms. Mack also joins in the motion to dismiss filed by Clare Bronfman on this same date. *See* Dkt. 457. For the reasons set forth in the Mack Motion to Dismiss, as well as those filed by her co-defendants, Dkt. 192; Dkt. 193; Dkt. 196, Ms. Mack hereby moves the Court to dismiss Counts One, Two, Six, Eight, Nine, and Ten of the S2 Indictment. For those same reasons, if the Court is not inclined to dismiss the charges, Ms. Mack respectfully submits that in addition to the relief requested herein, the Court should direct the government to provide a bill of particulars.

and unfairly prejudice Ms. Mack, who has no connection whatsoever to these new predicate acts or the substantive counts against Raniere. Given the well-recognized inflammatory effect of such allegations, the Court should sever Ms. Mack from Raniere and order a separate trial.

In the event the Court orders that Ms. Mack should be tried jointly with Raniere, the Court should strike the Child Exploitation Counts as a matter of law because they are unrelated to the alleged Enterprise. In the alternative, the Court should hold an evidentiary hearing pursuant to Federal Rule of Evidence 104(c)(3) to assess the admissibility of the evidence underlying the conduct and the propriety of the inclusion of the Child Exploitation Acts at a joint trial. The government should be required to demonstrate to the Court and counsel—outside the presence of the jury—how it is that it will make a *prima facie* showing that the Child Exploitation Acts are part of the pattern of racketeering activity alleged in the S2 Indictment. Put simply, once such inflammatory evidence is presented to the jury, there will be no way to "un-ring" the bell in the very likely event that the government fails to make the necessary showing of relatedness to the charged enterprise. Accordingly, the Court should exercise its discretion and its authority as gatekeeper and make a preliminary ruling outside the presence of the jury on the admissibility of such evidence at trial.

Finally, Ms. Mack moves to preclude the testimony of Drs. Grassian and Hughes or any other expert offered by the government. Preclusion is appropriate here because the government's notice is both untimely and insufficient as a matter of law.

## **ARGUMENT**

### I.   The Court Should Sever Ms. Mack's Trial from That of Raniere

The law is clear that allegations of sexual abuse and exploitation of children—including the creation and possession of child pornography—create a substantial risk of eliciting a visceral response of disgust and anger from potential jurors. For that reason, courts regularly sever child

pornography charges to be tried separately, even when those charges relate to the same defendant charged with other crimes. *See, e.g.*, *United States v. Sturm*, No. CRIM 06-CR-00342-LTB, 2007 WL 601976, at *4 (D. Colo. Feb. 22, 2007); *United States v. Gray*, 78 F. Supp. 2d 524, 532 (E.D. Va. 1999). The logic underpinning those decisions therefore applies with even greater force here, where Ms. Mack is not alleged to have had any involvement in, or knowledge of, the conduct underlying the child pornography and child exploitation counts against Raniere, or even in the Child Exploitation Acts that have been added to the RICO conspiracy. Accordingly, justice and fairness require that Ms. Mack's trial be severed from that of Raniere, and the Court should exercise its discretion to do so because a joint trial at which this evidence is offered unfairly would prejudice Ms. Mack and create a serious risk that a jury could not make a reliable judgment as to Ms. Mack's innocence. *See Zafiro v. United States*, 506 U.S. 534, 539 (1993).

### A. Evidence of Sexual Exploitation of a Child and Possession of Child Pornography Is Inadmissible against Ms. Mack under Rule 403

Under Rule 403 of the Federal Rules of Evidence, the Court may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *United States v. Bourne*, No. 08-CR-888 NGG VVP, 2011 WL 4458846, at *8 (E.D.N.Y. Sept. 23, 2011) (quoting Fed. R. Evid. 403).

Evidence of child molestation and possession of child pornography is highly prejudicial. *See United States v. Welshans*, 892 F.3d 566, 576 (3d Cir. 2018) (child pornography "elicits little more than a visceral response of disgust and anger"); *United States v. Loughry*, 660 F.3d 965, 972 (7th Cir. 2011) (child pornography is "the kind of highly reprehensible and offensive content that might lead a jury to convict because it thinks that the defendant is a bad person and deserves punishment, regardless of whether the defendant committed the charged crime"); *United States v. Ham*, 998 F.2d 1247, 1252 (4th Cir. 1993) ("no evidence could be more prejudicial than allegations

3

of child molestation"); *United States v. Prunick*, 273 F. App'x 807, 808 (11th Cir. 2008) (affirming grant of new trial because child pornography charges involved "disturbing" and "highly inflammatory" evidence and should have been severed); *Sturm*, 2007 WL 601976 at *4 (severing count because possessing child pornography "is particularly detestable and inflammatory conduct"). *United States v. Ham* is particularly instructive here because it involved two members of a recognized community.[2] The Court held that evidence of child molestation unfairly prejudiced two defendants who were not directly implicated in the conduct but would be prejudiced by highly prejudicial evidence against the community. 998 F.2d at 1254.

The government here has not alleged that Ms. Mack committed or even knew about the alleged crimes against children. In fact, the acts of child molestation allegedly occurred in 2005, two years before Ms. Mack ever met Raniere. Given the well-recognized prejudice that inures from allegations of sexual crimes against children and the fact that Ms. Mack is completely removed from those acts, any probative value of evidence relating to these crimes is substantially outweighed by the danger of unfair prejudice. This unfair prejudice is particularly likely under the circumstances here because Ms. Mack was part of the same community as Raniere. The Court therefore should find that any such evidence is inadmissible with respect to Ms. Mack.

### B. Ms. Mack Cannot Receive a Fair Trial Alongside Raniere

The Court should not force Ms. Mack to stand trial alongside Raniere, who is charged with two acts of sexual exploitation of a child and possession of child pornography. (S2 Ind. ¶¶ 41, 42, 43.) As set forth above, these new charges against Raniere are highly inflammatory and unfairly prejudicial if offered at a trial of Ms. Mack.

---

[2] Ms. Mack agrees with and incorporates the analysis of *Ham*, 998 F.2d at 1249–51, from Ms. Bronfman's renewed motion for severance, *see* Dkt. 454 at 5, and therefore will not repeat the arguments here.

4

Under Rule 14 of the Federal Rules of Criminal Procedure, the Court may sever trials if "consolidation for trial appears to prejudice a defendant . . . ." Fed. R. Crim. P. 14(a); *United States v. Spinelli*, 352 F.3d 48, 54 (2d Cir. 2003). Moreover, where the prejudice is "sufficiently severe to outweigh the judicial economy that would be realized[,]" the Court *must* sever the trials. *United States v. Page*, 657 F.3d 126, 129 (2d Cir. 2011). To assess prejudice under Rule 14, the Court may consider numerous factors including (among others) disparities in the amount or type of proof offered against the defendants and prejudice from evidence admissible against co-defendants but not against the movant. *United States v. DiScala*, No. 14-CR-399 (ENV), 2018 WL 1187394, at *20 (E.D.N.Y. Mar. 6, 2018) (quoting *United States v. Gallo*, 668 F.Supp. 736, 739 (E.D.N.Y. 1987)).[3]

Here, there is a vast disparity in the type of proof that the government will offer against Raniere and Ms. Mack; namely, the evidence of child exploitation and child pornography that courts across jurisdictions have found to be highly prejudicial. As explained above, such evidence is properly precluded as to Ms. Mack under Rule 403. As a result, Ms. Mack will be unfairly prejudiced by evidence that may be admissible against Raniere, but not against her. *See, e.g.*, *United States v. Maisonet*, 1998 WL 335414 (S.D.N.Y. Jul. 1, 1998) (Chin, J.) (severing trial of one RICO defendant from co-defendants charged in same RICO counts because "[e]ven though [he] [wa]s charged with the RICO counts, the conduct for which he [wa]s charged [wa]s markedly different from that for which his RICO co-defendants [we]re charged."); *United States v. Dowtin*,

---

[3] While this Court has previously declined to sever certain racketeering acts from other racketeering acts charged under a single count of a racketeering conspiracy, the Court did so because Rule 14 provides for severance of counts and "[a] predicate act of racketeering … is not a count." *United States v. Urso*, 369 F. Supp. 2d 254, 262 (E.D.N.Y. 2005). *Urso* is inapposite because Rule 14 explicitly provides for the severance of the defendants' trials. Fed. R. Crim. P. 14(a).

No. 10-CR-657, 2012 WL 7679552, at *5 (E.D.N.Y. Nov. 20, 2012) (magistrate judge recommendation for severance of two defendants from co-defendants in RICO conspiracy because "[e]ven if evidence as to violent acts committed in furtherance of the [charged] Enterprise [wa]s admissible [against the severed defendants] at a separate trial, it would not generate the level of prejudice that would result from a joint trial, which would likely be characterized by extensive testimony as to the numerous and extremely violent acts of co-defendants."), *adopted by United States v. Spicer*, No. 10-CR-657 SJ RML, 2013 WL 871952, at *1 (E.D.N.Y. Mar. 7, 2013).

Moreover, given the vast disparity in the type of proof and the lack of any allegation that Ms. Mack played any role, or had any knowledge of, the conduct alleged in the child exploitation and child pornography charges, a curative instruction would not be sufficient here. Sex crimes—especially those involving minors—are devastating to a criminal defendant's case. "Indeed, no evidence could be more inflammatory or more prejudicial than allegations of child molestation." *Ham*, 998 F.2d at 1252. Child pornography, too, "elicits little more than a visceral response of disgust and anger." *Welshans*, 892 F.3d at 576. It involves "the kind of highly reprehensible and offensive content that might lead a jury to convict because it thinks that the defendant is a bad person and deserves punishment, regardless of whether the defendant committed the charged crime." *Loughry*, 660 F.3d at 972; *see also id*. at 974 (collecting cases). Such evidence has a profound emotional impact on the jury—an impact that can easily be overlooked when considering the evidence in the abstract. "The hackneyed expression, 'one picture is worth a thousand words' fails to convey adequately the comparison between the impact of the . . . portrayal of actual events upon the viewer of the [pornographic evidence] and that of the spoken or written word upon the listener or reader." *United States v. Cunningham*, 694 F.3d 372, 387 (3d Cir. 2012). For that reason, courts routinely sever entirely—rather than rely on a limiting instruction—child

6

pornography charges from other alleged crimes even when those charges relate to the same defendant charged with other crimes.

For these reasons, the Court should sever Ms. Mack's trial from that of Raniere.[4] *See*, *e.g.*, *United States v. Cardascia*, 951 F.2d 474, 482 (2d Cir. 1991) (holding that if the prejudice is "so great as to deny [the defendant] a fair trial," a court must order a severance); *Zafiro*, 506 U.S. at 539 (severance is appropriate where there is a "serious risk that a joint trial would . . . prevent the jury from making a reliable judgment"); *United States v. Guillen-Rivas*, 950 F. Supp. 2d 446, 457 (E.D.N.Y. 2013) (in considering severance, a court properly should consider, *inter alia*, the "prejudice from evidence admitted only against co-defendants.")

## II. In the Alternative, the Court Should Strike the Child Exploitation Acts from the S2 Indictment

If the Court declines to sever Ms. Mack's trial, the Court should strike the Child Exploitation Acts from the S2 Indictment and order that Raniere stand trial separately on Counts Three, Four, and Five of the S2 Indictment. The Child Exploitation Acts—each of which was alleged to have been committed only by Raniere without any assistance or involvement of anyone else in the alleged Enterprise—are not sufficiently related to the charged Enterprise (indeed, they bear no relation whatsoever) that they can be argued to be part of the pattern of racketeering alleged in Counts One and Two of the Indictment. Accordingly, the allegations contained therein and evidence in support thereof should not as a matter of law be presented to the jury.

---

[4] If severed, Ms. Mack anticipates that she will move to strike the Child Exploitation Acts from the Indictment and preclude any evidence related thereto. *See, e.g.*, *Gallo*, 668 F. Supp. at 752 (granting severance because a joint trial would raise serious evidentiary problems, as "[t]here would also be many instances where evidence admitted against one defendant would also be relevant as to another under Rule 401, but would be excluded as to the latter under Rule 403 in a separate trial of that defendant alone because its probative value would be outweighed by the danger of unfair prejudice.")

7

## A. The Child Exploitation Acts Are Unrelated to the Charged Enterprise

On the face of the Indictment, the Child Exploitation Counts have no relation to the charged Enterprise, let alone any relation to the other predicate acts. Instead, their inclusion in the RICO conspiracy is an improper effort by the government to attribute sporadic and isolated criminal acts allegedly committed by Raniere to the other alleged co-conspirators, including Ms. Mack, even though they have no relation to the charged enterprise. The Court need look no further than the face of the Indictment to establish this incongruity:

> The principal purpose of the Enterprise was to promote the defendant KEITH RANIERE, also known as "Vanguard," "Grandmaster" and "Master," and to recruit new members into the Pyramid Organizations. By promoting RANIERE and recruiting others into the Pyramid Organizations, the members of the Enterprise expected to receive financial opportunities and personal benefits, including increased power and status within the Enterprise.

(S2 Ind. ¶ 4.) How the allegations that Raniere individually exploited a minor and possessed child pornography shares a common goal or common victims with the Enterprise, or potentially could recruit others to join the Enterprise defies logic. This is particularly so where there is no allegation that any of the other alleged members of the Enterprise played any role in or had any knowledge of the conduct alleged in the Child Exploitation Acts. Accordingly, the Child Exploitation Acts should be stricken as they are not part of the alleged pattern of racketeering activity. *See, e.g.*, *United States v. Daidone*, 471 F.3d 371, 376 (2d Cir. 2006), 471 F.3d at 376 ("Requiring inquiries into horizontal and vertical relatedness places limits on the outer reach of RICO liability.")

The Supreme Court has held that criminal conduct forms a pattern of racketeering activity under RICO when it "embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989) (internal quotation marks omitted). The Second Circuit has further developed this requirement of

"relatedness," holding that predicate acts "must be related to each other ('horizontal' relatedness), and they must be related to the enterprise ('vertical' relatedness)." *United States v. Minicone*, 960 F.2d 1099, 1106 (2d Cir.1992). To show that the predicate acts are vertically related to the RICO enterprise, the government must establish (1) that the defendant "was enabled to commit the predicate offenses solely by virtue of his position in the enterprise or involvement in or control over the affairs of the enterprise," or (2) that "the predicate offenses are related to the activities of that enterprise." *Id.* (internal quotation marks and emphasis omitted).

One way to show that predicate acts are horizontally related to each other is to show that each predicate act relates to the RICO enterprise. *United States v. Polanco*, 145 F.3d 536, 541 (2d Cir.1998) ("A predicate act is related to a different predicate act if each predicate act is related to the enterprise.")

The "overall pattern requirement," of which relatedness is one component, is intended to be a safeguard against "the application of RICO to the perpetrators of 'isolated' or 'sporadic' criminal acts." *Minicone*, 960 F.2d at 1106 (quoting *United States v. Indelicato*, 865 F.2d 1370, 1383 (2d Cir. 1989)). Thus, a court must make a determination as to whether alleged predicate racketeering acts are sufficiently related to form a pattern. In order to form such a pattern, the alleged predicate acts "must be related to each other and to the enterprise." *Daidone*, 471 F.3d at 376.

Here, the government has failed establish how Raniere's role in the alleged Enterprise enabled him to possess child pornography and sexually exploit a minor, nor how these offenses are related at all to the activities of that enterprise. As such, the Child Exploitation Acts should be stricken.

9

### B. The Court Should Hold an Evidentiary Hearing Regarding the Admissibility of the Child Exploitation Acts Outside the Presence of the Jury

In the alternative, Ms. Mack respectfully requests that the Court conduct an evidentiary hearing outside the presence of the jury to determine whether the government has sufficient evidence to establish a *prima facie* case of relatedness to the charged Enterprise that would render such evidence admissible at a trial of Ms. Mack. The relevance of any such evidence necessarily turns upon whether other facts exist, including whether this conduct is in any way related to the pattern of racketeering activity alleged in the indictment and/or whether Raniere was enabled to engage in the conduct alleged in the Child Exploitation Acts solely by virtue of his position in the charged enterprise. *See* Fed. R. Evid. 104(b). As described above, the significant unfair prejudice Ms. Mack would suffer from the improper presentation of such evidence at trial—even if the Court subsequently strikes or instructs the jury related to such evidence—would be insurmountable, and justice therefore requires that the Court conduct a hearing to make a preliminary determination as to its admissibility of such evidence at trial. *See* Fed. R. Evid. 104(c)(3).

### III. The Court Should Preclude the Testimony of Dr. Hughes and Dr. Grassian

On February 25, 2019, the government filed its initial expert disclosure revealing that it intended to call Michael Welner, M.D. as an expert witness. *See* Dkt. 378. In this letter, the government outlined the topics of his proposed testimony, which included "how the actions of the alleged perpetrators within Nxivm and DOS compare to traits and practices of certain of the comparative groups and how such action can facilitate financial and sexual exploitation," "how families who are invested in the belief system of a group are affected and may lose their independence," and "how abuse of the dynamics of relationships of supervisor-supervisee, teacher-student and other relationships of authority facilitate financial and sexual exploitation." *Id.*

10

In addition, the government disclosed its intent to offer other, unnamed experts to testify as to:

(1) the "psychiatric and psychological effects of social, perpetual, and occupational isolation including deleterious defects on mental functioning, such as depression, obsessive thoughts, agitation, confusion and suicidal ideation and behavior;"
(2) the "behavior of victims of sex crimes including common misconceptions about victim behavior, such as why victims often delay reporting to law enforcement and others, why victims continue to communicate and maintain relationships with their assailants, and why victims often do not physically attack their assailants;" and
(3) the "psychiatric effects of lack of sleep and severe calorie restriction."

The government did not reveal the specific witnesses they intended to call on these topics, their opinions, or the bases for their opinions.

On March 15, 2019, nearly three weeks after the Court-ordered February 25 deadline for the government to make expert disclosures, the government informed the defendants that it no longer planned to call Dr. Welner and it would instead offer the expert testimony of Stuart Grassian, M.D. and Dawn M. Hughes, Ph.D. *See* Dkt. 429. In its letter, the government provided one sentence on what these experts would testify to – "Dr. Stuart Grassian to offer testimony on the subject of social isolation, and Dr. Dawn Hughes to offer testimony on the subject of the behavior of victims of sex crimes, as further described in the government's disclosure, dated February 25, 2019." Later that day, the Government provided defense counsel with the experts' CVs by email. Neither the government's letter nor its subsequent email contained any information regarding Dr. Hughes's or Grassian's opinions or the bases for those opinions. As such, the Court should preclude testimony from Drs. Hughes and Grassian in light of the government's untimely and insufficient notice.

*First*, the government's disclosure of Drs. Hughes and Grassian is untimely. On February 22, 2019, the Court approved a pretrial schedule in which the government's expert notice was due February 25, 2019. *See* Dkt. 347. The disclosure of Drs. Hughes and Grassian and the withdrawal

11

of Dr. Welner took place weeks after this deadline, a delay which is particularly egregious in light of the fact that jury selection is scheduled to commence on April 8, 2019. Allowing the government to wait to serve expert notice on the eve of trial would obviate the purpose of Rule 16(b)(1)(G)—"to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." Fed. R. Crim. P. 16 advisory committee's note.

*Second*, the disclosure is insufficient. Rule 16(b)(1)(G) requires the government to "give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial." Fed. R. Crim. P. 16(b)(1)(G). This summary "must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." *Id*. Here, nothing in the government's disclosure gives any clue as to the "witness's opinions" or the "bases and reasons for those opinions." *Id.*

*Finally*, without proper sufficient notice, it is impossible to determine whether Drs. Hughes's and Grassian's testimonies would comply with Federal Rule of Evidence 702 or whether they would be relevant at all. Rule 702 outlines the district court's gatekeeping function with respect to expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

12

The party that proffers expert testimony bears the burden of showing that it is admissible. *See Bourjaily v. United States*, 483 U.S. 171, 172-73 (1987).

The trial court must also find that proposed expert testimony is both relevant and reliable prior to admitting it into evidence. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-90 (1993); *see also Kumho Tire Company, Inc. v. Carmichael*, 526 U.S. 137 (1999). Specifically, in *Daubert*, the Court held that the Federal Rules of Evidence "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. at 597. "*Daubert* applies to both defense and government experts." *United States v. Yousef*, 327 F.3d 56, 148 (2d Cir. 2003).

Further, Federal Rule of Evidence 403 applies with special force to expert testimony: "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595 (internal citations omitted).

Here, the government's barebones disclosure that Dr. Hughes may provide testimony "on the subject of the behavior of victims of sex crimes" and Dr. Grassian "on the subject of social isolation" provides no basis to determine whether the requirements of Rules 702, 401, and 403 are met in this case.

In sum, the government's disclosure is untimely and insufficient. Without further specificity as to Drs. Hughes's and Grassian's opinions and the bases for those opinions, Ms. Mack is not in a position to substantively challenge any testimony under Rule 702, 401, or 403, or to consider retaining (at this late stage) her own expert to counter or rebut Drs. Hughes's and

13

Grassian's potential testimony, and the purpose of Rule 16(b)(1) is seriously undermined. Accordingly, the Court should preclude Drs. Hughes's and Grassian's testimony.

## CONCLUSION

Ms. Mack respectfully requests that the Court dismiss Counts One, Two, Six, Eight, Nine, and Ten in their entirety, and Racketeering Acts Ten and Twelve specifically, of the S2 Indictment for the reasons set forth in the Mack Motion to Dismiss (Dkt. No. 213), Clare Bronfman's motion to dismiss filed on this same date (Dkt 457), as well as the previously filed motions of her co-defendants (Dkt. 192; Dkt. 193; Dkt. 196), in which she joins. If the Court does not dismiss the charges, Ms. Mack further requests that the Court: (i) direct the government to provide Ms. Mack with a bill of particulars; (ii) sever Ms. Mack's trial from that of Raniere; (iii) strike the Child Exploitation Acts or order an evidentiary hearing pursuant to Federal Rule of Evidence 104; and (iv) preclude the testimony of Drs. Hughes and Grassian.

Dated: March 22, 2019

                                              Respectfully Submitted,

                                              KOBRE & KIM LLP

                                              /s/
                                              William F. McGovern
                                              Matthew I. Menchel
                                              Sean S. Buckley
                                              Gabriela M. Ruiz
                                              800 Third Avenue
                                              New York, New York 10022
                                              Tel: 212 488 1200

                                              *Attorneys for Defendant Allison Mack*