Shapiro Arato Bach LLP

500 Fifth Avenue, 40th Floor
New York, NY 10110
tel: 212-257-4895
fax: 212-202-6417

www.shapiroarato.com

Alexandra A.E. Shapiro
ashapiro@shapiroarato.com
Direct: 212-257-4881

April 3, 2019

VIA ECF

The Honorable Nicholas G. Garaufis
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   *United States v. Raniere, et al.*, No. 18-cr-204 (NGG)

Dear Judge Garaufis:

      We respectfully request that the Court consider this letter in further support of Defendant Clare Bronfman's pretrial motions directed at the S-2 Indictment. While the Court did not request reply briefs, we respectfully submit that the government's opposition raises new arguments that require a response. As to the other points, we rely on our previous briefing.

**I.      The S-2 Indictment Should Be Dismissed[1]**

      **A.      Counts One And Two Do Not Adequately Identify The Statutes Under Which The Predicate Acts Or Underlying Offenses Are Charged**

      1.      The government ignores our arguments because it cannot refute them. It has never given any meaningful response to the principles of pleading articulated in our prior briefing. (*E.g.*, Dkt. 194 at 29-31). For example:

- "[W]here an indictment charges a crime that depends in turn on violation of another statute, the indictment must identify the underlying offense." *United States v. Pirro*, 212 F.3d 86, 93 (2d Cir. 2000) (op. of Gibson, J.) (citing treatises); *accord United States v. Thompson*, 141 F. Supp. 3d 188, 195 (E.D.N.Y. 2015).

- "If a single statute sets forth several different offenses, a pleading that does not indicate which crime the defendant allegedly committed is insufficient." *Descamps v. United States*, 570 U.S. 254, 272 n.4 (2013) (alterations omitted) (quoting treatise).

---

[1] The government concedes that any deficiency in any predicate act requires dismissal of the relevant RICO count. (Dkt. 458 at 2). It also concedes that the non-RICO count against Bronfman must be dismissed for lack of venue. (Dkt. 485 at 31).

- Courts apply these principles to indictments and dismiss counts that violate them. (*See, e.g.*, Dkt. 194 at 29-31 (citing *Thompson*, *Awan*, and *Rosenblatt*); Dkt. 257 at 4 n.4 (citing *Pemberton* and *Thomas*); Dkt. 458 at 4 nn.3-4 (citing a half-dozen other cases)).

The government's decision to say virtually nothing about these cases despite several rounds of briefing speaks volumes. *Descamps* is a Supreme Court case, and *Rosenblatt* and *Pirro* were Second Circuit cases, and yet the government does not even mention them (other than to quote *Pirro* approvingly, *see* Dkt. 485 at 14, 19). The government's failure to address our points directly shows that its understanding of the law is wrong. And its failure to propose jury instructions despite being challenged to do so (Dkt. 458 at 5) proves that Counts One and Two are hopelessly vague and prevent the grand jury or trial jury from rendering a coherent decision.

   2.   The government's defense of Count One is meritless. None of the cases that it cites actually considers and refutes our argument that a RICO conspiracy count cannot simply cite broad sections of the United States Code, spanning multiple crimes, but instead must identify the specific statutory provisions that the predicate acts violated or would have violated.

In *United States v. LaSpina*, 299 F.3d 165 (2d Cir. 2002), the Court held that an indictment must state "essential elements," but it did not hold or even suggest that an indictment of the sort returned here was sufficient. *Id.* at 177.[2] The same is true of *Hamling v. United States*, 418 U.S. 87 (1974), which held only that an indictment under 18 U.S.C. § 1461 need not define the term of art "obscene." *Id.* at 117-18. Neither case had nothing to do with specifying the statute that the defendant violated or intended to violate.

The government claims that *United States v. Glecier*, 923 F.2d 496 (7th Cir. 1991), and *United States v. Applins*, 637 F.3d 59 (2d Cir. 2011), somehow refute our argument (Dkt. 485 at 13-14), but we have already explained why these cases are beside the point (Dkt. 257 at 5-6). The government's discussion of *Glecier* and *Applins* confirms this, since it quotes inapposite statements about pleading "overt acts," pleading "specific predicate acts that the defendant agreed personally to commit," and "specify[ing] . . . predicate or racketeering acts" (Dkt. 485 at 14), which have nothing to do with our argument (Dkt. 257 at 5-6).

Moreover, *Applins* was about whether a trial jury must unanimously agree on "which specific racketeering acts that the defendants agreed would be committed." 637 F.3d at 80. Issues of pleading were not before the *Applins* Court; the defendants apparently did not make our arguments; and the Court's pleading analysis (which, again, does not address our arguments) is not binding.[3] Regardless, the *Applins* indictment was much more specific than the S-2

---

[2] The defendant attacked the lack of "factual" detail in the indictment, not the legal ambiguity at issue here. Def.'s Br., 2001 WL 34314744, at *43-47; Reply, 2001 WL 34314743, at *31-33. Regardless, *LaSpina* is distinguishable because the defendant first challenged the indictment "in a post-trial motion," so the indictment was construed "liberally." 299 F.3d at 177.

[3] *E.g.*, *United States v. Giffen*, 473 F.3d 30, 44 (2d Cir. 2006) ("observations [that] are dicta . . . do not bind the district court"); *United States v. Crawley*, 837 F.2d 291, 292-93 (7th Cir. 1988) (Posner, J.) ("an inferior court[] is free to reject" appellate dicta); *Brown v. Keane*, 229 F. Supp.

Indictment. It did not merely state that the defendants conspired to engage in acts indictable under 21 U.S.C. § 841, which defines several offenses in paragraphs (a), (c), (d), (f), (g), and (h). Rather, it charged "possession with intent to distribute and distribution of more than 50 grams of cocaine base (crack) and marijuana, in violation of [21 U.S.C. §] 841(a)." Indictment, 2005 WL 5785408. Similarly, it did not merely state that defendants conspired to engage in acts indictable under 18 U.S.C. § 1512, which covers a multitude of crimes. (Dkt. 458 at 3). Rather, it charged "witness tampering, in violation of [18 U.S.C. §] 1512(b)(3)." 2005 WL 5785408.[4]

The government points to other cases that *Applins* "approvingly cited" (Dkt. 485 at 15), but these cases are not binding, persuasive, or applicable:

- The government misquotes *United States v. Crockett*, 979 F.2d 1204 (7th Cir. 1992), to make the indictment seem vaguer than it was,[5] and *Crockett* does not say whether the indictment cited multi-pronged statutes. The defendant apparently argued that it had to identify individual instances of conduct (which is not our argument), since the Court responded that pleading "specific predicate acts that have come to fruition" would make RICO conspiracy the same as a "substantive RICO charge." *Id.* at 1209.

- The government also mischaracterizes *United States v. Phillips*, 874 F.2d 123 (3d Cir. 1989). Again, the defendants did not discuss the statutes cited in the indictment. Their argument was that, even though the RICO conspiracy count "d[id] not allege specific *individual acts* of racketeering," the jury was limited to considering the individual acts charged under the substantive RICO count. *Id.* at 125, 128-30 (emphasis added).

- In *United States v. Sutherland*, 656 F.2d 1181 (5th Cir. 1981), the Court held the indictment was sufficient because "[a]lthough [it] d[id] not quote the Texas bribery statute," it "sufficiently track[ed] the language of that statute and in fact cite[d] the

---

2d 298, 305-06 (S.D.N.Y. 2002) (where appellate statement "arguably was not necessary to the result," district court should "make an independent analysis"), *vacated on other grounds*, 355 F.3d 82 (2d Cir. 2004); *Pernicone v. Ryan*, No. 86 Civ. 4498 (SWK), 1989 WL 4500, at *3 n.4 (S.D.N.Y. Jan. 17, 1989) (district court "not bound" by Second Circuit decision that "did not consider" a particular issue).

[4] The indictment cited a multi-pronged state statute when charging predicate murders, but as explained below, there is a distinction between pleading state-law predicates and federal-law predicates. Moreover, the indictment charged 53 overt acts, so it was far more specific than the S-2 Indictment. For similar reasons, the *Glecier* indictment was also far more specific, since it contained factual details absent here. *See* Br. for U.S. in Opp. To Cert., 1991 WL 11178164, at *13 ("[T]he indictment described the bribery scheme and identified the time period, the locations and courts, and the principal actors and their roles."); *see also id.* at *3-4.

[5] The indictment did not merely identify "general kinds of racketeering acts." (Dkt. 485 at 15). The government quotes the Court's description of "[p]aragraph six," but "[p]aragraphs seven through twelve listed [the acts] with greater specificity." 979 F.2d at 1208.

statute, thus leaving no doubt as to the nature of the 'racketeering activity' alleged in the indictment." *Id.* at 1197.  The indictment also contained significant factual detail about the bribery scheme.  *Id.* at 1197 n.12.  Here, by contrast, our argument is not about quoting statutes, and there is significant doubt about the nature of the activity alleged.[6]

The government also cites cases suggesting that RICO indictments need not plead the elements of state-law crimes charged as racketeering acts.  *See United States v. Orena*, 32 F.3d 704, 714 (2d Cir. 1994); *United States v. Bagaric*, 706 F.2d 42, 62 (2d Cir. 1983).  But whether or not the elements must be pled in the indictment (which is a separate argument, *see* Dkt. 458 at 7), these cases do not suggest that the indictment can leave the defendant to guess *which* state-law crime is charged.  Moreover, the pleading requirements for federal-law predicates are more stringent.  "RICO was not intended to incorporate the elements of the penal codes of the various states where acts of racketeering occurred, but only to provide general substantive frames of reference."  *United States v. Miller*, 116 F.3d 641, 675 (2d Cir. 1997) (citation and quotation marks omitted).  But while RICO's "references to state law are not to chapter and verse but are instead generic," RICO's "references to federal law are specific, citing various statutes by name or by United States Code title and section."  *Id.* (citation and quotation marks omitted).  *Orena* and *Bagaric* therefore do not apply to federal-law predicate acts.

For that reason, it is misleading for the government to argue that there is a "difference between direct charges of violations of federal and state laws and RICO indictments alleging those crimes as predicate acts."  (Dkt. 485 at 18 (quoting *United States v. Gotti*, No. S4 02 CR 743 (RCC), 2004 WL 32858, at *7 (S.D.N.Y. Jan. 6, 2004))).  *Gotti* is clearly wrong, since it cites *Orena*, *Bagaric*, and district court cases involving state-law predicates, and extends their reasoning to federal-law predicates without considering (or even mentioning) the Second Circuit's contrary analysis in *Miller*.  It is also absurd.  A RICO defendant charged with predicate acts of obstruction has as much need for specificity as a defendant charged with a single substantive count of obstruction.  The cases we cited do not magically become inapplicable just because there are enough predicate crimes to support a RICO charge.

Finally, contrary to the government's assertions, this Court did not "consider[] and reject[]" our argument in *United States v. Bronson*, No. 05-CR-714 (NGG), 2007 WL 2455138 (E.D.N.Y. Aug. 23, 2007).  (Dkt. 485 at 16-17).  As we have already explained, the defendant made an entirely different argument, so the Court had no occasion to consider our analysis.  (Dkt. 257 at 6).  Evidently, the government took the wrong lesson from *Bronson*.  It previously observed that "18 U.S.C. § 1512 sets forth more than 20 offense subsections with varying elements, none of which were identified in the *Bronson* indictment."  (Dkt. 248 at 29 n.9).  That was a fatal defect in the indictment, which that defendant apparently forfeited.  It is not an invitation to subject other defendants to the same unconstitutional pleading strategies.

---

[6] In a footnote (Dkt. 485 at 17 n.10), the government also cites *United States v. Tello*, 687 F.3d 785 (7th Cir. 2012), which relies on *Glecier*, *Crockett*, *Phillips*, and *Sutherland* and is inapposite for the same reasons.  *See id.* at 791-96 (defendant argued, as in *Phillips*, that the RICO conspiracy was limited to the specific acts charged in the substantive RICO count).

3.      The government's defense of Count Two is meritless as well. The failure to specify Underlying Offenses does not just violate the Sixth Amendment (Dkt. 485 at 18)—it also violates the Fifth Amendment, since Count Two does not disclose which of several possible Underlying Offenses the grand jury had in mind or bind the government to that Underlying Offense. (Dkt. 194 at 29-30; Dkt. 257 at 3-4 & nn.2-4; Dkt. 458 at 4 nn.3-4). Thus, even if the government's Rule 16 discovery and other disclosures provided adequate notice (Dkt. 485 at 26)—which they do not, since they do not clarify the ambiguities in the government's legal theories—that would not cure the Fifth Amendment violation. (Dkt. 257 at 6).

The government relies heavily on cases allowing the government to prove facts different from those specified in the "to wit" clause of the relevant count of the indictment. (Dkt. 485 at 18-21). But in those cases, the "to wit" clause specified a means of committing the crime. *See United States v. D'Amelio*, 683 F.3d 412, 421-23 (2d Cir. 2012) (where indictment "charged a single course of conduct" involving enticement of minor, "to wit" clause identifying the internet as the "*specific means*" used did not preclude proof that he used telephone); *United States v. Bastian*, 770 F.3d 212, 221-24 (2d Cir. 2014) (no "plain error" where proof at trial "substitut[ed] a different weapon than that charged" in a "to wit" clause); *United States v. Agrawal*, 726 F.3d 235, 261 (2d Cir. 2013) ("to wit" clause specifying certain "means" of trade-secret theft was merely "illustrative" because the indictment "as a whole" identified various other means).

Unlike the defendants in those cases, we are not challenging the omission of a factual detail, such as the use of a certain mode of communication or weapon. The indictment must identify any Underlying Offenses for the charged crimes. (*E.g.*, Dkt. 194 at 29-31). The government's choice to place Underlying Offenses in "to wit" clauses does not change that rule. The government could not charge a defendant under 18 U.S.C. § 371 with "conspiracy to commit an offense against the United States, to wit, Crime X," and then try the defendant for conspiring to commit Crime Y. *See United States v. Vizcarrondo-Casanova*, 763 F.3d 89, 101 (1st Cir. 2014) ("[A]n indictment for violating section 371 by committing an 'offense against the United States' must specify the underlying offense that is the subject of the conspiracy.").

The government argues that each racketeering act provides notice of the "core of criminality" of each act, but it simply recites the allegations pled without explaining why they are the "core of criminality" (Dkt. 485 at 21-26) or addressing the ambiguities created by failing to specify the Underlying Offenses (Dkt. 458 at 6-7; Dkt. 194 at 27-28). Identification of any Underlying Offenses is an essential component of criminal pleading, so the "core of criminality" for any given crime must include the Underlying Offenses on which it relies. For example, in Act 8, it makes a considerable difference whether Bronfman is charged with transmitting funds with the intent to further (1) the forgery of a visa, *see* 18 U.S.C. § 1546(a), first paragraph; (2) the possession of materials that could be used to make counterfeit visas, *see id.* § 1546(a), second paragraph; (3) a visa applicant's impersonation of someone else or use of a fictitious identity, *see id.* § 1546(a), third paragraph; (4) the submission of false statements in a visa application, *see id.* § 1546(a), fourth paragraph; (5) the use of an identification document not lawfully issued for the possessor in order to satisfy a requirement of an employment verification system, *see id.* § 1546(b)(1); (6) the use of a false identification document for that purpose, *see id.* § 1546(b)(2); or (7) the use of a false attestation for that purpose, *see id.* § 1546(b)(3).

Finally, the government cites cases about pleading and proving the "specified unlawful activity" ("SUA") underlying a money laundering charge. (Dkt. 485 at 24 n.14).

- In *United States v. Martinelli*, 454 F.3d 1300 (11th Cir. 2006), the defendant was charged with laundering mail fraud proceeds, and the Court found that failing to instruct the jury on the elements of mail fraud was not plain error. *Id.* at 1310-12. The district court did instruct the jury generally on mail fraud; it just did not use instructions suggesting the defendant had to *commit* mail fraud, since he only had to "*know* the funds were derived from . . . mail fraud." *Id.* at 1311-12. And while the Court suggested otherwise, *id.* at 1312, courts do instruct juries on the elements of the SUA. (Dkt. 458 at 4 n.4). Most importantly, the Court did not suggest the SUA could have been left unspecified, as it is here. Mail fraud is a broad crime, but the statute does not define several distinct offenses.

- In *United States v. Cherry*, 330 F.3d 658 (4th Cir. 2003), the Court held that the indictment could identify the SUA as bank embezzlement in violation of 18 U.S.C. § 656, without pleading the elements of § 656. *Id.* at 667-68. But again, § 656 is not a multi-pronged statute, and the defendant did not argue that citing it left the SUA unspecified.

- In *United States v. Loe*, 248 F.3d 449 (5th Cir. 2001), the Court rejected the defendant's argument that a money laundering count could not simply refer to an earlier mail-and-wire-fraud conspiracy count as the SUA, but rather had to identify "which act of mail or wire fraud was the source of the funds." *Id.* at 468. Again, this argument requests factual detail, not legal clarity, and it is not the argument we are making. *See Quang Thanh Tran v. State*, 962 So. 2d 1237, 1245-46 (Miss. 2007) (distinguishing *Loe* on this ground).

Counts One and Two should therefore be dismissed for failure to specify the legal basis for the predicate acts and/or those acts' Underlying Offenses. (Dkt. 458, Points I.A-B).

    **B.**    **Several Predicate Acts And Count Eleven Are Inadequate Because They Fail To Plead Essential Elements Of Their "Underlying Offenses"**

Count One fails to plead the elements of its predicate acts; Count Two fails to plead the elements of its predicate acts' Underlying Offenses; and Count Eleven fails to plead the elements of its Underlying Offense, tax evasion. (Dkt. 458, Point I.C). As we have repeatedly explained, under *United States v. Dupree*, 870 F.3d 62 (2d Cir. 2017), this is a fatal deficiency that requires dismissal. (*E.g.*, Dkt. 257 at 7-8). While *Applins* suggests that the law is otherwise for RICO conspiracies, that is *dicta* (as explained above), and *Dupree* supersedes *Applins*. And while *Orena* and *Bagaric* suggest that RICO indictments need not plead the elements of state-law predicates, nearly every predicate here is federal. Moreover, these RICO cases do not apply to Count Eleven. Finally, the "to wit" analysis in *D'Amelio* and its progeny is inapposite because the elements of Underlying Offenses are not mere "means" of committing the top-level crime.

    **C.**    **Count Two, Act 11, Is Missing Essential Elements**

Act 11 is deficient because it does not identify the false statement or how it is false. (Dkt. 458, Point I.D). These facts must be pled in "charges of criminal falsity," *United States v.*

*Stringer*, 730 F.3d 120, 126 (2d Cir. 2013), and visa fraud is indisputably a type of criminal falsity. The government says this part of *Stringer* is *dicta* (Dkt. 485 at 25 n.16), but *Stringer* cites other Court of Appeals cases, including *Pirro*. *See* 730 F.3d at 126-27. Moreover, the government fails even to address our other cases. (Dkt. 458 at 8-9).

The government's cases do not help it. (Dkt. 485 at 25-26 & n.16). In *United States v. Imran*, No. 1:15CR259, 2015 WL 9008152 (E.D. Va. Dec. 15, 2015), the court did not consider any of the cases we cite, and the government provided an affidavit "specifically identif[ying] each of the . . . misrepresentations in detail." *Id.* at *2. In *United States v. Schwimmer*, 649 F. Supp. 544, 547 (E.D.N.Y. 1986), and *United States v. Upton*, 856 F. Supp. 727, 743-44 (E.D.N.Y. 1994), which relied on *Schwimmer*, the courts thought that the rule we describe applied only in perjury prosecutions, but *Stringer* says that the rule applies broadly to criminal falsity, and there is no logical reason to treat different types of falsity differently. In *United States v. Rigas*, 490 F.3d 208 (2d Cir. 2007), the indictment described specific falsehoods in great detail, which is why the defendants did not challenge the sufficiency of the indictment; rather, they argued there was a constructive amendment, which was not the case because the proved falsehoods were "necessarily implied by the specific allegations made" in the indictment. *Id.* at 225-30. The decision in *United States v. Bernstein*, 533 F.2d 775 (2d Cir. 1976), predates *Stringer*, and the government had "provided a bill of particulars which specifically identified the [false] statements," unlike here. *Id.* at 786. Finally, in *United States v. Kamdar*, No. 04-CR-156, 2009 WL 2407676 (W.D.N.Y. Aug. 5, 2009), the indictment did specifically identify certain false statements; the other false statements were "necessarily implied by the specific allegations made"; and the court found it significant that the defendant "elected not to request a bill of particulars," unlike here. *Id.* at *2-3. Here, we do not know which statements are false or why.

### D. Count Two, Act 1-A Relies On An Unconstitutional Statute

8 U.S.C. § 1324(a)(1)(A)(iv) is facially invalid for reasons we have already explained. The government argues that it can prove Act 1-A using § 1324(a)(1)(A)'s other subsections (Dkt. 485 at 22 n.13), but this is not permissible, since we do not know which subsections the grand jury relied on. The possibility that the government encouraged the grand jury to indict based on an unconstitutional statute is precisely why the statutory provisions at issue must be identified.

\* \* \*

The Court should therefore dismiss all counts against Bronfman. If it does not, it should order a bill of particulars and sever her trial from Raniere and Mack's trial.

### II. Bronfman Is Entitled To A Bill Of Particulars

The government ignores our requests for particulars, not all of which are "duplicative" of our prior requests. (Dkt. 485 at 33). For example, we have now asked the government to particularize the false statements underlying the charges (such as visa fraud) and the basis for their falsity, and we have explained that the impending trial date makes this information essential. (Dkt. 458 at 12). The government's own cases show that we are entitled to these particulars. *See Bernstein*, 533 F.2d at 786-87; *Kamdar*, 2009 WL 2407676, at *3; *Imran*, 2015

WL 9008152, at *2.  Moreover, the government again concedes that we are entitled to know "the specific predicate acts within the scope of the conspiracy [in Count One], the specific statutory provisions they allegedly violated or would have violated, and any Underlying Offenses on which those purported violations rely," as well as "the Underlying Offenses left unspecified in Count Two."  (Dkt. 458 at 12-13).

### III.     Bronfman's Trial Should Be Severed From Raniere and Mack's Trial

Bronfman is entitled to a severance (Dkt. 454), and the government's opposition is meritless (Dkt. 485 at 27-29).  The government addresses virtually none of our analysis about unfair prejudice.  It argues that evidence of child exploitation, child pornography, and other sex crimes is relevant to the enterprise and RICO pattern, but we have already addressed this.  (Dkt. 454 at 6-7).  Courts sever RICO cases even where the predicate acts are relevant to all defendants (*e.g.*, Dkt. 311 at 3-5), and here, the sex crimes are irrelevant to Bronfman (*id.* at 6-7).

Try as it might, the government remains unable to explain why it would be allowed to introduce evidence of sex crimes at Bronfman's separate trial.  It argues that Bronfman had sex with Raniere and told another woman (whose visa she allegedly helped obtain by fraud) not to have sex with her husband.  (Dkt. 485 at 28).  But even if this is true, having sex and talking about sex does not suggest that Bronfman knew about sex *crimes* or that those sex *crimes* have any bearing on the government's case against Bronfman.  The government argues that the woman described above "was later recruited" into DOS (*id.* at 28), but again, it does not allege that Bronfman knew this or explain how this subsequent development has anything to do with what Bronfman allegedly intended or agreed to do.  The government also argues that "members of the charged enterprise . . . were aware of and facilitated Raniere's sexual relationship with underage victims" (*id.* at 27), but Bronfman clearly was not one of those members, because otherwise the government would have said so explicitly rather than resorting to vague innuendo.  Finally, the government argues that the alleged child pornography is related to the DOS acts because it resembles the photographs used as DOS collateral, and the victim allegedly was recruited into DOS.  (*Id.* at 12, 28).  But linking additional sex crimes to DOS does not link those sex crimes *to Bronfman*, who undisputedly did not know about DOS.

If Bronfman were tried separately from Raniere and Mack, the government would introduce evidence of her purported identity-theft and immigration-related crimes, and there would be no reason whatsoever to tell the jury about sex crimes that had nothing to do with her.  In addition to being irrelevant, that evidence would be excluded on Rule 403 grounds as unfairly prejudicial and inflammatory, just as it should have been in *United States v. Ham*, 998 F.2d 1247 (4th Cir. 1993).[7]  The recycled cases cited by the government do not involve sex crimes (let

---

[7] In *Ham*, there was evidence that child molestation was rampant, that the defendants knew about it, that one defendant committed a predicate act of kidnapping in order to molest the victim, that he authorized a predicate act of murder related to a rape, and that he authorized another predicate act of murder to silence someone who spoke out about the molestation.  *See id.* at 1250-1253 & n.4.  The evidence was closely tied to the RICO enterprise and pattern, and yet the Court of Appeals held that it was reversible error to admit it, even with a limiting instruction.

alone child pornography) or even remotely suggest that limiting instructions would cure the prejudice under these circumstances.  (Dkt. 485 at 29; Dkt. 311 at 8-9; Dkt. 454 at 2-6).

          Sincerely,

          /s/ Alexandra A.E. Shapiro

          Alexandra A.E. Shapiro  
          Fabien M. Thayamballi

cc:  All Counsel of Record (by ECF)