```
1   UNITED STATES DISTRICT COURT
    EASTERN DISTRICT OF NEW YORK
2   --------------------------------x
    UNITED STATES OF AMERICA
3                                        18 CR 204(NGG)
              versus
4
    KEITH RANIERE, et al,                United States Courthouse
5                                        Brooklyn, New York
                                         April 4, 2019
6             Defendants.                11:00 a. m.
    --------------------------------x
7


8        TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
            BEFORE THE HONORABLE NICHOLAS GARAUFIS
9               UNITED STATES DISTRICT JUDGE


10                        APPEARANCES

11  For the Government:     RICHARD DONOGHUE
                            United States Attorney
12                          Eastern District of New York
                            271 Cadman Plaza East
13                          Brooklyn, New York 11201
                            BY:  MOIRA KIM PENZA, AUSA
14                               TANYA HAJJAR, AUSA
                                 MARK LESKO, AUSA
15

16  For K. Raniere:        BRAFMAN & ASSOCIATES
                            767 Third Avenue, 26th Floor
17                          New York, New York 10017
                            BY:  MARC AGNIFILO, ESQ.
18                               TENY GERAGOS, ESQ.

19                          DEROHANNESIAN & DEROHANNESIAN
                            677 Broadway, Suite 707
20                          Albany, New York 12207
                            BY:  PAUL DEROHANNESIAN, II, ESQ.
21                               DANIELLE SMITH, ESQ.

22  For C. Bronfman:       GERAGOS & GERAGOS
                            Historic Engine Company No. 28
23                          644 South Figueroa Street
                            Los Angeles, California 90071
24                          BY:  MARK GERAGOS, ESQ.

25
```

```
 1                      CONTINUED APPEARANCES

 2   For C. Bronfman:       HAFETZ & NECHELES, LLP
                            10 East 40th Street, 48th Floor
 3                          New York, New York 10016
                            BY:  KATHLEEN CASSIDY, ESQ.
 4
     For A. Mack:           KOBRE & KIM, LLP
 5                          800 Third Avenue
                            New York, New York 10022
 6                          BY:  SEAN BUCKLEY, ESQ.

 7   For K. Russell:        SHER TREMONTE, LLP
                            90 Broad Street, 23rd Floor
 8                          New York, New York 10004
                            BY:  JUSTINE HARRIS, ESQ.
 9                               AMANDA RAVICH, ESQ.

10

11

12

13

14

15

16

17

18

19

20

21   Reported by:

22   LISA SCHMID, CCR, RMR
     OFFICIAL COURT REPORTER
23   225 Cadman Plaza East, Room N377
     Brooklyn, New York 11201
24
     Proceedings recorded by mechanical stenography.  Transcript
25   produced by computer-aided transcription.
```

```
 1                THE COURT:  All right.  Everybody be seated, please.
 2           Appearances?
 3                MS. PENZA:  Moira Penza, Tanya Hajjar and Mark Lesko
 4      for the United States.  Good morning, Your Honor.
 5                THE COURT:  Good morning.
 6           Let's wait for the defendant.
 7                MR. AGNIFILO:  Thank you, Judge.
 8           (Pause in proceedings.)
 9           (Defendant Raniere enters.)
10                MR. AGNIFILO:  All right.  Good morning, Your Honor.
11      Marc Agnifilo, Teny Geragos, Paul DerOhannesian and Danielle
12      Smith for Keith Raniere, who is present in court.
13                THE COURT:  Good morning.
14                MR. GERAGOS:  Good morning, Your Honor.  Mark
15      Geragos, G-E-R-A-G-O-S, and Kate Cassidy for Clare Bronfman,
16      who is present.
17                MS. GROSSHANS:  Good morning.
18                THE COURT:  Good morning.
19                MR. BUCKLEY:  Good morning, Your Honor.  Sean
20      Buckley for Allison Mack, who is standing to my left.
21                THE COURT:  Good morning.
22                MS. HARRIS:  Good morning, Your Honor.  Justine
23      Harris and Amanda Ravich for Kathy Russell.
24                THE COURT:  Good morning.  Please be seated.
25           We have potential jurors coming in next Monday
```

1    afternoon and next Tuesday afternoon.  The questionnaires are

2    being printed, and the proceedings will be in the ceremonial

3    courtroom, the Jack B. Weinstein Ceremonial Courtroom on the

4    second floor of this courthouse.

5           And the -- we'll have two attorneys per defendant --

6    of the two attorneys per defendant -- sitting at counsel's

7    table, and everyone will be introduced.  We're going to place

8    card this event, so that everyone knows where to sit.  So

9    there's no question.

10          And we need a place for the marshals in connection

11   with Mr. Raniere.  We'll work that out with the marshals.

12          MR. AGNIFILO:  Yes, Judge.

13          THE COURT:  All right.  And you can check with

14   Mr. Reccoppa about how we normally do this in these

15   questionnaire cases, of which we have had many.

16          There's an issue regarding a motion for an anonymous

17   jury.  Who would like to speak to that?

18          MS. PENZA:  Yes, Your Honor.

19          THE COURT:  I think it's consented to, but I want to

20   hear about it.

21          MS. PENZA:  So not quite an anonymous jury, Your

22   Honor.  The Government is requesting that the jury, not that

23   the names be withheld from the press and spoken publicly until

24   after trial, which was done in the Shkreli case and which we

25   think is appropriate here, and so do the defendants.

```
 1              MR. AGNIFILO:  We did do it in the Shkreli case.  It
 2    worked fine.  And so we consent.  We agree to that, if the
 3    Court's comfortable.
 4              THE COURT:  Well, I think it would have to be made
 5    clear to potential jurors that their anonymity would remain
 6    until after the trial ends and that -- and then be made --
 7    potentially be made available to anyone who asks for it.
 8              Is that what you're driving at here?
 9              MS. PENZA:  That is the Government's position.  Yes,
10    Your Honor.
11              THE COURT:  That's your position, as well?
12              MR. AGNIFILO:  I'm sorry.  One second.
13              (Consults with Ms. Geragos.)
14              If I remember with Mr. Shkreli, it's Court's
15    decision after the trial.  I don't know that it's
16    automatically -- that the names are unsealed or whatever the
17    term would be -- automatically.  It think it's a decision
18    at -- at least we did with Judge Matsumoto.
19              THE COURT:  Well, I will tell you that my preference
20    would be to allow members of the jury to speak out if they
21    want, but I don't think that the Court ought to be in a
22    position to make that judgment for a juror.  The juror should
23    make that judgment for him or herself.
24              I would always recommend to the jurors that at the
25    end of the trial, whatever their verdict is, that they leave
```

1  the courthouse and they forget about what happened and go back

2  to, you know, their normal lives and not be subject to press

3  and other interference, if you will, with their normal life

4  activities.  And so that's just my view and that's what I'll

5  tell any juror who is in a situation like that.

6          So, if I grant an anonymous jury, it will be

7  anonymous, and it's -- the names of the jurors will not be

8  provided by the Court to anyone, whether before, during or

9  after the trial.  And if jurors want to, you know, speak to

10  the press or anybody else, they can do so.  So I'm going to

11  grant the motion for an anonymous jury.  That's number one.

12          And ironically, these anonymous juries sometimes are

13  granted in cases where there is -- there might be some danger

14  to jurors from -- in some way.  I'm not sure what it is,

15  but -- as well as the possibility of the press and other

16  interested individuals may try to access or approach jurors.

17          I think that this is the perfect -- this case is the

18  perfect example where there's -- it would appear there's no

19  actual danger to the jurors, but the idea that a juror, an

20  anonymous juror leaving the courthouse might be stopped by an

21  interested person or by the media, I think that's always a

22  possibility, within the rights of people expressing their

23  First Amendment rights.

24          But I also believe that this should be a

25  semi-sequestered jury, in order to protect the jurors from

1    unwanted interference when they come and go from the

2    courthouse.

3           So I'm going to grant the motion, and I'm going to

4    add to the Court's order that the jury will also be

5    semi-sequestered during the course of the trial.  So that

6    takes care of that.

7           Is there any objection?  I didn't ask if there was

8    an objection.

9           MR. GERAGOS:  No objection.

10          THE COURT:  Okay.

11          MR. BUCKLEY:  No objection, Your Honor.

12          MS. HARRIS:  No objection.

13          MR. AGNIFILO:  No objection.

14          MS. PENZA:  Your Honor, no objection right now.  We

15   do want to -- we will --

16          THE COURT:  Oh, I don't care what you think.

17          MS. PENZA:  I'm sure.

18          THE COURT:  I really don't, because it's usually the

19   Government that asks for a semi-sequestered jury, but in this

20   case, the Court wants a semi-sequestered jury, so we're going

21   to have one.  So don't bother bringing it up with anybody

22   unless you plan to go to the Second Circuit on it.

23          MS. PENZA:  Thank you, Your Honor.

24          THE COURT:  Okay.  Let's take it from there.  What

25   else do we have here today?

```
 1              MR. AGNIFILO:  So we'd like to get the Court's
 2     thoughts on a date for in limine motions.  We -- the
 3     Government has started providing 3500 material.  It seems to
 4     be doing it alphabetically.  We have, I don't know, A through
 5     G or something like that.
 6              So, I guess it's a two-part request:  One, we'd like
 7     a date when we will get the rest of the 3500 -- and I know
 8     these things are sometimes on a rolling basis.  That's part of
 9     the Court's order.  But the more 3500 we get, the better our
10     in limine motions would be.
11              THE COURT:  Where are we on 3500 material?  You want
12     a deadline?  I can always give you a deadline.
13              MS. PENZA:  We would prefer not a deadline, Your
14     Honor.
15              THE COURT:  Well, I understand.
16              MS. PENZA:  We are diligently working to produce it.
17              THE COURT:  Well, we have a trial date of --
18              MS. PENZA:  April 29th.
19              THE COURT:  -- April 29th.
20              MS. PENZA:  And so we have --
21              THE COURT:  Assuming we're going forward on
22     April 29th, I've already denied one motion for a month
23     extension of the trial date.
24              When will you have the 3500 material to the defense?
25              MS. PENZA:  I mean, we are continuing to roll it
```

 1    out.  We anticipate making an additional production tomorrow,

 2    and we'll continue to produce through next week, as well.  And

 3    then of course, that's what's currently in our possession,

 4    Your Honor.

 5            MR. AGNIFILO:  So my two cents, Judge, would be if

 6    we can get -- and I know that there's continuing interviews,

 7    so there's going to be more 3500 up until the trial and

 8    probably well into the trial.  That's what I expect.

 9            But if we can get what they have now say by the

10    middle of next week, we can put our in limine motions together

11    in say four days, and maybe have something to the Court the

12    following Monday.

13            THE COURT:  How about Wednesday the 10th of April

14    for what you have now?

15            MS. PENZA:  Your Honor, there is like a technical

16    component to it, and I'm not sure we will be able to actually

17    get out all of it by the 10th.

18            THE COURT:  How about the 12th?

19            MS. PENZA:  The 12th, Your Honor.

20            THE COURT:  The 12th.

21            MR. AGNIFILO:  And then we can have our --

22            THE COURT:  How about your motions by the 17th?

23            MR. AGNIFILO:  That's fine, Judge.  That's very

24    good.  Thank you.  Perfect.

25            THE COURT:  Okay.  And that works for everybody?

```
 1              MR. GERAGOS:  The 17th works for us.

 2              THE COURT:  Okay.  That's on the in limine motions.

 3              What else do we have?

 4              MR. AGNIFILO:  We have a technical issue that I'll

 5    let the Government raise about some discovery that they

 6    provided, that we -- that we found and then have to give back,

 7    but I'll let the Government brief that one to the Court.

 8              MS. PENZA:  So Your Honor, as you are aware, we had

 9    had an issue regarding one of the discovery devices.  When we

10    had initially produced the device, we did not know that there

11    were child pornography images on the device.  We retracted all

12    of those.  They -- we then -- there was --

13              THE COURT:  Were there images in connection with

14    this case on the device?

15              MS. PENZA:  Yes, Your Honor.

16              We then -- we then reproduced the device.  We did

17    eliminate the folder that had the child pornography; however,

18    there were additional carved deleted files of that -- those

19    same images, I believe the same ones, in other locations on

20    the drive.

21              The FBI is working right now to create a new version

22    of the drive that has removed those deleted images, which we

23    will provide hopefully today to the defendants and receive

24    from them back the original drives that we had.  So it's the

25    second drive that we had given them.
```

1          The Government does want to raise the issue that we

2    put in our -- in our response to the defendant's motion.  In

3    particular, there have now been two assertions by defense

4    counsel regarding their ability to prepare on the predicate

5    acts related to child pornography.

6          THE COURT:  Yes.

7          MS. PENZA:  And so, the Government is obviously

8    concerned by those representations.  I understand that this

9    drive is something that they want to provide to their expert.

10   And so given that, we -- that concern is again raised, that

11   they may need additional time to prepare their expert for

12   those additional charges.

13         THE COURT:  I see.

14         MS. PENZA:  And so we want to make sure that we are

15   proceeding to trial with the defendant and his counsel saying

16   that they are, indeed, prepared to go forward on April 29th,

17   contrary to what they had put in two previous motions.

18         THE COURT:  All right.  Let me hear from Mr.

19   Agnifilo.

20         MR. AGNIFILO:  Yes, Judge.

21         I don't think we ever said that we couldn't be

22   ready.  I think the phrase I used is we were going to move

23   heaven and earth to be ready and we're still going to move

24   heaven and earth to be ready.

25         We have a very productive dialogue with the

1    Government around these matters.  I think what the Government

2    produced and then needed back was through mere inadvertence,

3    and we caught it.  We saw there was something on the drive

4    that should not be in the public sphere.

5              We contacted the Government.  We said, we have to

6    give this back to you.  We knew that would end up in some sort

7    of a delay in getting the drive, which is an important piece

8    of evidence in terms of these charges that were recently

9    indicted.

10             And here's my request -- and I think the Government

11   will work with us on this because they have been working with

12   us on this -- to the extent that we can front-load whatever

13   reports there might exist that relate to the alleged child

14   pornography charges, that -- getting that that sooner rather

15   than later would be very helpful to us.

16             And so we do have an expert.  The expert's been down

17   to the FBI.  The Government was very responsive when I asked

18   for dates.  They accommodated our dates.  Our expert went

19   down.  I expect they'll accommodate our other dates.

20             So as long as we're continuing to be as productive

21   as we've been -- and I think that will continue -- I fully

22   expect to be ready for those charges and all the charges on

23   the trial date.

24             So, it's a lot of work.  It's a lot of work being

25   done at the last minute, but this is what happens in trials

 1  and that's what happening here.  And the Government's been

 2  accommodating and responsive, and I'm sure we can get it done.

 3          MS. PENZA:  Your Honor, if I may, frankly, that

 4  doesn't -- that doesn't satisfy the Government.  It doesn't

 5  sound like they're in a place to say right now.

 6          And in terms of front-loading the information

 7  regarding child pornography, Mr. Agnifilo knows that the

 8  alleged victim of the child pornography charges goes

 9  throughout this case.  I mean, there will be almost -- there's

10  very little evidence in this case that does not relate to that

11  victim.

12          And so, the Government is going to abide by the

13  Court's deadline.  We're going to produce everything.  But

14  given that, the Government is concerned that we are not

15  hearing a clear statement from Mr. Agnifilo and Mr. Raniere,

16  frankly, that they are ready to go.

17          And given that -- we understand that there are

18  jurors coming in.  We do understand that the landscape of this

19  case has changed dramatically, and may continue to change over

20  the coming days.

21          If that is the case, the Government does not

22  anticipate that our trial will last as long as we have

23  previously said to the Court, because we don't believe there

24  will be -- there won't be six defense attorneys

25  cross-examining witnesses, for example.

1          And so given that, the Government, you know, the
2     Government feels that there has not been a representation that
3     they will be ready on April 29th, and the Government believes
4     that it's important to have certainty right now.

5          THE COURT:  Well, let me cut to the chase on this.
6     You know, while the Court is reserving judgment for the moment
7     on the pending motions to dismiss and sever, I agree.

8          The Court -- the Court needs to know the answer to
9     the following questions.  And this is from each of the four
10    defendants:  Are you prepared for trial?  Pardon me.  Will you
11    be prepared for trial on the second superseding indictment on
12    April 29th, and if not, how much more time do you need to be
13    fully prepared for trial?

14         I think that's a really essential consideration for
15    the Court.  The Court wants to honor its objective of going to
16    trial April 29th, but not -- but not if I do not hear a
17    declaration, in effect, from each of the defendants' counsel,
18    on behalf of the defendants, that they're going to be prepared
19    to go to trial on April 29th.

20         So, of course, we'll start with you, Mr. Agnifilo,
21    because I agree with the Government, to the degree that there
22    needs to be an affirmative statement that based on what's in
23    the second superseding indictment, that you -- which is a
24    recent indictment -- that you will still be ready to go to
25    trial.

1          MR. AGNIFILO:  I'll be ready to go to trial, and I

2     mean, and I say that because I do need help from the

3     Government.  They have been giving me that help.  I'm going to

4     need to have my expert going to the FBI.  They have been

5     accommodating of that.

6          This little wrinkle with having to give the drive

7     back is not perfectly timed, but we can get through that.  I'm

8     told that I'm going to get a new drive soon.  Maybe today.

9     That would be wonderful.

10         But I'm going to make it work.  I mean, I have an

11    expert on retainer.  He's working for us.  He's given me an

12    assurance that in his opinion, that he has been doing this for

13    decades, he can get the work done that I need done by the

14    29th.  So I expect to be ready for trial.

15         My request -- and maybe I wasn't as clear as I could

16    have been.  I know who the person is in the photographs.

17    That's not the point.  I just believe that there's going to be

18    some sort of FBI reports in regard to that part of the FBI

19    investigation regarding the photographs, that if we could get

20    sooner rather than later, that would be helpful to me, but I

21    will be ready to go, representing Mr. Raniere on the Court's

22    trial date.

23         THE COURT:  Yes, Mr. Geragos?

24         MR. GERAGOS:  Thank you, Your Honor.  We will be

25    ready to go on the 29th.

1          THE COURT:  All right.

2          MS. HARRIS:  Yes, Your Honor.

3          You know in our March 22nd letter to the Court, we

4    indicated in connection with our renewal of our motion to

5    sever, enjoining the motion to sever Ms. Bronfman, that we did

6    advise that we were in plea negotiations with the Government,

7    and that the Government had indicated that given the pressure

8    of trial preparation and the fairly abbreviated schedule that

9    we have been on, that additional time would be beneficial to

10   conclude those negotiations.

11         And we'll say, given the Court's denial of the

12   motions that were made by counsel for Ms. Mack for an actual

13   adjournment of the trial date, I think substantial progress

14   has been made.

15         So I think that the Government's in a better

16   position to speak to, you know, that particular issue than --

17   we have, of course, been preparing for trial, but that's the

18   only aspect of this that bears as to Ms. Russell.

19         THE COURT:  Yes?

20         MR. BUCKLEY:  Yes, Your Honor.  Sean Buckley on

21   behalf of Ms. Mack.

22         THE COURT:  Yes.

23         MR. BUCKLEY:  As the Court is aware, we are the ones

24   who did file a motion for the continuance, and we recognize

25   that Your Honor has denied it.  Our motion was to permit us to

1    engage in what have been and what continue to be fruitful

2    discussions regarding potential resolution of this.

3            But other than that, we are similarly situated to

4    Ms. Harris and her client.

5            THE COURT:  Well, as to Ms. Russel and Ms. Mack,

6    it's the old story.  You need to be able to walk and chew gum

7    at the same time in this business.

8            And we have one defendant who's incarcerated, and so

9    I look very carefully at that kind of request, and I also look

10   at the difficulty of impaneling a jury, since we have already

11   sent notices to 500 potential jurors that I'm going to be

12   interviewing in mid-April, and if I interview them in

13   mid-April and tell them that they're going to have to come to

14   court and try a case in June and July, we're in a much

15   different posture than we would be if we're telling the

16   potential jurors that we're going to start the trial in April.

17   So it creates a complication.

18           But I think that my sense is that all of the

19   defendants can be ready to go to trial.  The defendant with

20   the greatest difficulty will be Mr. Raniere because there are

21   additional charges of significance against him in the second

22   superseding indictment, but I have Mr. Agnifilo's clear

23   declaration that he and his client will be ready to go to

24   trial.  And I also have Mr. Geragos, who is a recent addition

25   to Ms. Bronfman's trial team, and he's ready to go to trial.

```
 1    So I would ask everyone to redouble their efforts to be ready.
 2              Anything else on that?
 3              MS. PENZA:  Your Honor, I guess the only thing I
 4    would say is, we don't feel like it is crystal clear from Mr.
 5    Agnifilo.  We don't.  And we are concerned that we are in a
 6    position where Mr. Agnifilo wants the process to continue, and
 7    we get that.  And we are very actively working to do 3500, to
 8    get all of this done, while simultaneously engaging in all the
 9    other trial preparations, while engaging in plea negotiations
10    with other defendants.  We get that.  And we are doing our
11    best.
12              But I guess what we are -- what we put in our motion
13    is that, respectfully, if there is a two to three week
14    adjournment where the jurors are impaneled -- the jurors come
15    in on the day that we expect them to come in, then there is no
16    risk at that point that at the end of all of this,
17    Mr. Agnifilo -- Mr. Raniere says, you know what?  I didn't
18    stand up there.  Mr. Agnifilo stood up there, and he said that
19    it would be April 29th, and said he would be ready.
20              And so given that these are very serious new
21    allegations, given that there are two representations from the
22    defendant that they could not be ready, given that we are
23    not -- still not hearing we will absolutely be ready on
24    April 29th -- because I don't think Mr. Agnifilo can say that.
25    His expert hasn't even had the disc that he thinks is
```

```
 1   important for the expert to have.  I don't think we are

 2   actually getting a --

 3            THE COURT:  When will he have the disc?

 4            MS. PENZA:  We are currently working.  Like since

 5   he had it, we obviously -- there was a new problem brought to

 6   our attention yesterday, it is currently being worked on, Your

 7   Honor.  So we are --

 8            THE COURT:  This week?

 9            MS. PENZA:  No.  Right -- well, right now.  And so

10   we're hoping to --

11            THE COURT:  Here's --

12            MS. PENZA:  Yes.  By tomorrow -- I mean, we're

13   hoping to do it today or tomorrow.

14            THE COURT:  All right.  Let's take this one week at

15   a time.

16            Next Monday, after we appear before the venir, we'll

17   adjourn to this courtroom, and I will ask defendants' counsel

18   at large the same question that I just asked.  Let's see where

19   we are then.

20            And if we need to adjourn for a short period -- not

21   a month, but a short person period, it may become more

22   apparent after Mr. Agnifilo and his colleagues have reviewed

23   the materials that you're going to send them.

24            MS. PENZA:  Fair enough, Your Honor.

25            THE COURT:  So --
```

```
1              MR. AGNIFILO:  More than fair, Judge.  Thank you.

2              THE COURT:  Fair?

3              MR. AGNIFILO:  Yes.  Very much so.

4              THE COURT:  The idea that we would put the trial off

5    for a week or ten days, the actual opening of the trial, is

6    not something that would create an impression that we're just

7    pushing this case down the road.  A month is a different

8    story.

9              But I know that there are lots of moving parts here,

10   and I'm willing to work with you, but I'm not willing to hold

11   this case open until August.  Well, meaning that -- the end of

12   the trial in August, I don't think that that works for

13   anybody, and I think that it works -- and the injury is the

14   greatest for the person who's being detained.

15             So, you know, if next week, Mr. Agnifilo says we

16   need an extra week in order to get all of our materials in

17   order and have further meetings, and so forth, then I'll take

18   that into account.

19             But, I don't want to convey the impression that I'm

20   willing to just push this case, you know, into the fall or

21   some such thing.

22             MS. PENZA:  And nor does the Government want it

23   pushed into the fall or any such thing.  What the

24   Government -- what the Government wants is to know that Mr.

25   Raniere is going to have had full opportunity to prepare his
```

1    defense, so that after the trial, that's protected.

2                THE COURT:  Okay.  I heard you.

3                MS. PENZA:  Oh, no.  I'm sorry.

4                THE COURT:  There's more?

5                MS. PENZA:  No.  I just wanted to -- I did want to

6    raise one additional issue before we finish, but whenever you

7    want to hear it.

8                THE COURT:  We're not finished yet.  Go ahead with

9    your issue.

10               MS. PENZA:  So one of the additional things that the

11   Government wanted to raise is the issue of the privileged

12   materials.

13               So there are still approximately 22,000 documents

14   that appear -- that only our privilege team has access to

15   that, that were recovered from Ms. Bronfman's account.  There

16   are a significantly few number, but I think approximately 2000

17   documents from Mr. Raniere's account.  It may be less than

18   that -- that have not been provided -- and those documents

19   have not been provided to any other defendant.  So they have

20   only gone -- they have only gone to Ms. Bronfman or to Mr.

21   Raniere, respectively.

22               The Government has -- the Government is concerned

23   regarding our disclosure obligations.  We have received

24   consent from Ms. Bronfman's counsel to provide those to the

25   other defendants, and consent from Mr. Raniere's counsel to

1  provide those to the other defendants.  So we are going to

2  work towards a stipulation as to that.

3        But the Government does want to put a few things on

4  the record regarding these privileged documents.  So as Your

5  Honor knows, we have not -- we have not -- the Government has

6  not been able to review those documents.

7        In December of 2019(sic), the Government put in a

8  motion asserting that a number of the privileges that were

9  being raised by the defendants were improper.  That motion has

10  not been decided.

11        There were various motions in between that.  One

12  of -- there -- this is case, as we said a number of times,

13  where some of the -- these are not the normal types of

14  attorney/client privilege.  Some are.  But many of the

15  privileges being asserted are not the normal types of

16  attorney/client privileges that we see.

17        And so we have been in a problematic posture, the

18  Government, because we can't go one-by-one, and now that we

19  have had -- we have actually gotten to a place where we

20  provided I believe about five thousand documents to counsel

21  for Ms. Bronfman several weeks ago.  Counsel for Ms. Bronfman

22  said, I'm too busy with trial prep to review those documents.

23  And Judge Scanlon basically understood that.  She said, okay.

24  I understand trial prep.

25        It feels like unclean hands here, Your Honor.  So we

1    have Ms. Bronfman saying, "Ready for trial.  Ready for trial.

2    Ready for trial," but she hasn't had to review the documents

3    and is just getting to assert these fantastical privileges and

4    Government doesn't get to review the documents.

5                 THE COURT:  You want a decision on your motion?

6                 MS. PENZA:  We want a decision on our motion.

7                 THE COURT:  Okay.

8                 MS. PENZA:  And then if I may, Your Honor.  There is

9    one very -- there is one very key component.  We have asked --

10   our privilege team has made additional motions that the trial

11   team has not been privy to.

12                THE COURT:  I'm sorry.  This is before me or before

13   Judge Scanlon?

14                MS. PENZA:  Before Judge Scanlon.

15                THE COURT:  Oh.

16                MS. PENZA:  But there is an issue that is very ripe

17   now.  I mean, this is all very ripe.  We're at trial in less

18   than a month, and we haven't seen these documents.  And the

19   Government does have rights, too.  And so that's fine.  We're

20   going to meet our disclosure obligations, but of course, we

21   would like to review whatever documents we can prior to that

22   date.

23                So, one of the key issues that was raised by our

24   privilege team -- and we were not allowed -- Judge Scanlon

25   ruled that we cannot see the motion even in redacted form.

1    That being said, one of the things we understand was asserted

2    was that NXIVM is no longer an operating company and

3    therefore, has no privilege to assert.  And so the vast

4    majority of these documents would be NXIVM's privilege.

5            And so in our motion, we requested -- I understand

6    that NXIVM, says that they are still operating -- and the case

7    law bears out that they have the burden to do so, to show that

8    they are operating -- and to say, who is asserting privilege

9    on behalf of NXIVM?

10           And so the Government's concern is that it's Ms.

11   Cassidy and Ms. Bronfman who are asserting the privileges, who

12   aren't saying that this is, you know, who aren't -- and this

13   is a defunct company, and the Government is at a disadvantage

14   because we're not allowed to see the documents.  And so it's a

15   real problem now.

16           And the attorneys for NXIVM is clearly in direct

17   communication with defendants.  It seems that everything that

18   happens goes through them.  And so we have a real problem with

19   that because there are thousands -- over 20,000 documents that

20   the Government hasn't been able to review at all.

21           THE COURT:  I hear you.

22           MS. PENZA:  Just one last point, Your Honor.

23           THE COURT:  Of course.

24           MS. PENZA:  There is -- there are documents related

25   to one of the residences, and it's 8 Hale, and it's a

1    residence that people here now about, and it is a -- that is

2    where there was a recovery of the drive that had the child

3    pornography in it.

4         No one in this case has asserted any privacy

5    interest over that house.  There is no understanding from the

6    Government as to how NXIVM Corporation can be asserting

7    privilege over materials found -- over materials that would

8    otherwise be privilege in that house.

9         We have spoken to -- we have tried to be

10   communicating with counsel for NXIVM for this.  We only

11   received a question yesterday from counsel for NXIVM, where

12   counsel said, well, I understand there may be privileged

13   documents in there.

14        The Government concedes that there are documents

15   that NXIVM would assert a privilege on those drives.  The

16   question is, was this privilege maintained?  Was the

17   confidentiality of this privilege maintained.  And there has

18   been no effort from anyone to assert that.

19        And so now, it's every category of these documents,

20   where the Government's hands have been tied and we haven't

21   been able to review them.  So those are the categories, Your

22   Honor.

23        THE COURT:  All right.  Thank you.

24        MR. AGNIFILO:  Can I offer just my suggestion on

25   this?  So counsel for NXIVM has been participating in the

```
 1   proceedings before Judge Scanlon, mostly by telephone because
 2   he's not based in the city.
 3              THE COURT:  Where is he?
 4              MR. AGNIFILO:  Mike Sullivan?
 5              MS. PENZA:  He's in Massachusetts, Your Honor.
 6              THE COURT:  He's in Massachusetts?
 7              MS. PENZA:  Yes.
 8              THE COURT:  All right.
 9              MR. AGNIFILO:  So this is something that -- I don't
10   know how Your Honor is inclined to deal with it, and we have
11   been talking about all these issues with Judge Scanlon at
12   great length.  No one other than the counsel for NXIVM can
13   tell the Government or us what, if any, position they have on
14   these NXIVM privileged documents.
15              We're all going in be in court on Monday and
16   Tuesday, anyway.  If it's such a pressing issue, we can figure
17   out -- maybe if we get in front of Judge Scanlon or if Your
18   Honor wants to deal with it, Your Honor.
19              THE COURT:  Why don't you contact Judge Scanlon and
20   ask to meet with her on Monday at some point in the afternoon
21   regarding this issue?
22              MS. PENZA:  Yes, Your Honor.
23              THE COURT:  And the Court will a provide Judge
24   Scanlon with a transcript of this proceeding, so she knows of
25   the Government's concerns.
```

1           MS. PENZA:  Yes, Your Honor.

2           THE COURT:  All right?

3           Yes, Mr. Geragos?

4           MR. GERAGOS:  Do you want me to talk with the clerk

5    about dates for agreed-upon for-cause challenges or strikes or

6    things like that, or try to meet and confer?  Is the 11th the

7    date you want that by?

8           THE COURT:  Well, the 8th and 9th, we'll have the

9    jurors in to fill out questionnaires.  I'm not sure when they

10   get the questionnaires.  (Confers with the law clerk.)

11          Traditionally, the Government has reproduced the

12   questionnaires.  Ms. Ward has been in charge of that -- in

13   your office.

14          And we're not going to interview -- the first thing

15   that has to happen is you can start with a first, let's say,

16   one hundred of the questionnaires, and you may have consensual

17   strikes on some of them.  Those that you have the strikes on,

18   they're consensual.  They're out.  But where both sides

19   believe that the individual should be interviewed or one side

20   thinks the individual should be interviewed, you know, send me

21   a list on that within 24 hours of receiving the questionnaire.

22          MR. GERAGOS:  Just as a practical matter, we'll get

23   it in a randomized order, so that we then can do that on a

24   rolling --

25          THE COURT:  You'll get that -- each questionnaire

1    will have a number on it.  So it will be in order of the --

2    starting with number one and going forward.  And so, you'll

3    receive, let's say the first 50 and then you can review them

4    and go over them, and then you'll see the next 50.

5              MR. GERAGOS:  Got it.

6              THE COURT:  And it will be on a rolling basis, but

7    we can start the following week with interviews in court, and

8    with follow-up questions that you provide to the Court.

9              Let's say the first day, we'll bring in 25 people or

10   maybe 20 in the morning and 20 in the afternoon, and I'll ask

11   follow-up questions, and if you want a sidebar because you're

12   not satisfied with the follow-up, we can do that, too.

13             So I generally interview one person at a time.  I'd

14   rather not have more than one person sitting in the jury box,

15   because I don't want to taint the next few with the answers

16   that the first person will likely be answering.

17             It's a slow process, but I'd like to get it all done

18   during the week of the 15th.

19             MR. GERAGOS:  Okay.  So, we'll meet and confer on

20   whether there are consensual strikes.

21             THE COURT:  Right.  That's exactly right.  We're

22   work all that out with the defense counsel.

23             MS. PENZA:  Yes, Your Honor.

24             MR. AGNIFILO:  Just one question.  In Your Honor's

25   experience, do you think this is the appropriate case, given

1    the issues, to give both sides more peremptories or no?

2            THE COURT:  I have to think about that because I'm

3    concerned that -- as to whether I'm going to have the 60

4    jurors that I need from whom to select 12 jurors and six

5    alternates.

6            MR. AGNIFILO:  All right.  Very good.

7            THE COURT:  But if you think there's -- if you want

8    to apply for that in writing, think about it.

9            MR. AGNIFILO:  All right.  I will.  Thank you.

10            THE COURT:  And discuss it among yourselves.

11            MR. AGNIFILO:  Very good.

12            THE COURT:  All right.  We have another issue, don't

13    we, regarding counsel Counts 3, 4, 5 and 11?  Where are we on

14    that?  That venue is in the Northern District of New York?

15            MS. PENZA:  Yes, Your Honor.  The Government --

16            THE COURT:  As opposed to the racketeering acts that

17    are alleged in Counts, I guess, 1 and 2?

18            MS. PENZA:  Correct, Your Honor.  Yes.

19            So the Government consents to their dismissal

20    without prejudice, and we are in communication with the

21    Northern District about those charges being brought there.

22            THE COURT:  All right.  So let's do that now, then.

23            MS. PENZA:  Okay.

24            THE COURT:  Counts 3, 4, 5 and 11 of the Second

25    Superseding Indictment are dismissed without prejudice on

1    motion of the Government.  Okay?

2         Do we have anything else from the Government for

3    today.

4         MS. PENZA:  Just a few brief matters, Your Honor.

5         For the motion in limine date, the Government would

6    request that on that date, the defendants be required to make

7    any motions they intend to make under Rule 412(b), and the

8    Government would also request that date for motions pursuant

9    to Rule 414.

10        And we also would ask that by that date that the

11   defendants also raise whether they intend to assert any

12   defense of mental disease or defect or duress, or

13   attorney/client privilege, given the issues that we have in

14   not having received -- been able to review the privilege

15   issues that we have in this case.

16        MR. AGNIFILO:  We'll raise all those issues by then.

17        THE COURT:  All right.  The motion is granted.

18        Well, wait a minute.  Let me hear from everybody

19   else.

20        MR. GERAGOS:  There's no objection.

21        THE COURT:  Any objection?

22        MR. BUCKLEY:  No objection.

23        MS. HARRIS:  No objection.

24        THE COURT:  All right.

25        MS. PENZA:  Thank you, Your Honor.

```
 1              THE COURT:  Your application is granted.

 2              MS. PENZA:  Thank you.

 3              And then finally, the Government has still received

 4   no reciprocal discovery from the defendants.  We understand

 5   that they have stated publicly that they intend to put on a

 6   case.  We would ask that the defendants be required to produce

 7   any reciprocal discovery currently in their possession by the

 8   12th.

 9              MR. AGNIFILO:  That's agreeable.  That's agreeable.

10              THE COURT:  Anyone else?  Anyone object?

11              Mr. Geragos, you're smiling?

12              MR. GERAGOS:  Well, I'm just smiling because we

13   got -- we started to get the 3500 yesterday.  And so, it seems

14   like that's kind of a tight time frame, and obviously, if

15   something comes up, I'll bring it to the Court's attention.

16              MS. PENZA:  Reciprocal discovery is not tied to 3500

17   production, Your Honor.  We should have been receiving it all

18   along.

19              THE COURT:  All right.  Yes.  Your application is

20   granted.

21              And anything else from the Government?

22              MS. PENZA:  No, Your Honor.  Thank you.

23              MR. AGNIFILO:  Nothing else from us.

24              THE COURT:  Nothing else?

25              MR. GERAGOS:  No, nothing else from Ms. Bronfman.
```

```
 1              MR. BUCKLEY:  Nothing else, Your Honor. Thank you.

 2              MS. HARRIS:  Your Honor, just very briefly.

 3              THE COURT:  Sure.

 4              MS. HARRIS:  As the Court knows, there's a pending

 5     motion on behalf of Ms. Russell in the round of motions filed

 6     in January.

 7              There were additional issues that we --

 8              THE COURT:  Which motion is this?

 9              MS. HARRIS:  The motion to dismiss based on --

10              THE COURT:  Right.

11              MS. HARRIS:  -- in the grand jury.  Right.  I know

12     Your Honor has reserved judgment, reserved decision on that.

13              There were additional issues that we brought to the

14     Court's attention last night based on the first round of 3500

15     material that was produced to us, and to the extent we're

16     here, I just offer -- I know it's a lot of balls in the air, a

17     lot of issues on the plate for the Court as well as the

18     parties -- to the extent there is any oral argument or

19     questions that the Court has about that motion, we're

20     available.

21              THE COURT:  All right.  Thank you.  Thank you very

22     much.  All right.  Thank you, everybody.

23              Oh, and we will meet immediately after we meet with

24     the venir on Monday, so make a list of anything that you have

25     because we're getting closer to trial, and I would like to
```

1    resolve everything that's outstanding in the next few days,

2    particularly the motions such as the motion to dismiss on the

3    part of Ms. Russell.  We're going to get to it.  Thank you

4    very much.

5                MS. PENZA:  Thank you, Your Honor.

6                MR. AGNIFILO:  Thank you, Your Honor.

7                MR. GERAGOS:  Thank you, Your Honor.

8                (Proceedings concluded.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25